1          **UNITED STATES DISTRICT COURT**
           **FOR THE DISTRICT OF NEW JERSEY**
2
3   _____

    ATLAS DATA PRIVACY                    CIVIL ACTION:
4   CORPORATION, et al.,
                                          NO. 24-4037
5        v.

6   WE INFORM, LLC, et al.

7   _____

    ATLAS DATA PRIVACY                    CIVIL ACTION:
8   CORPORATION, et al.,
                                          NO. 24-4041
9        v.

10  INFOMATICS, LLC, et al.

11  _____

    ATLAS DATA PRIVACY
12  CORPORATION, et al.,                  CIVIL ACTION:

13       v.                               NO. 24-4045

14  THE PEOPLE SEARCHERS, LLC,
    et al.
15  _____

16  ATLAS DATA PRIVACY
    CORPORATION, et al.,                  CIVIL ACTION:
17
         v.                               NO. 24-4075
18
    DM GROUP, INC., et al.
19  _____

20

21            **MOTION AND STATUS CONFERENCE**

22                 **June 16, 2025**

23
           **Sharon Ricci, Official Court Reporter**
24              **Sharon.ricci.usdcnj@gmail.com**
                     **267-249-8780**
25  **Proceedings recorded by mechanical stenography; transcript**
        **produced by computer-aided transcription.**

1  ─────────────────────────

2  **ATLAS DATA PRIVACY**
   **CORPORATION, et al.,**                **CIVIL ACTION:**
3
        **v.**                            **NO. 24-4080**
4
   **DELUXE CORPORATION, et al.**
5  ─────────────────────────

6  **ATLAS DATA PRIVACY**
   **CORPORATION, et al.,**                **CIVIL ACTION:**
7
        **v.**                            **NO. 24-4096**
8
   **DELVEPOINT, LLC, et al.**
9  ─────────────────────────

10 **ATLAS DATA PRIVACY**
   **CORPORATION, et al.,**                **CIVIL ACTION:**
11
        **v.**                            **NO. 24-4098**
12
   **QUANTARIUM ALLIANCE, LLC,**
13 **et al.**

14 ─────────────────────────

   **ATLAS DATA PRIVACY**
15 **CORPORATION, et al.,**                **CIVIL ACTION:**

16      **v.**                            **NO. 24-4103**

17 **YARDI SYSTEMS, INC., et al.**

18 ─────────────────────────

   **ATLAS DATA PRIVACY**
19 **CORPORATION, et al.,**                **CIVIL ACTION:**

20      **v.**                            **NO. 24-4141**

21 **DIGITAL SAFETY PRODUCTS, LLC,**
   **et al.**
22 ─────────────────────────

23

24

25

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | CIVIL ACTION: |
| v. | NO. 24-4143 |
| CIVIL DATA RESEARCH | |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | CIVIL ACTION: |
| v. | NO. 24-4160 |
| SCALABLE COMMERCE, LLC, et al., | |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | CIVIL ACTION: |
| v. | NO. 24-4174 |
| LABELS & LISTS, INC. | |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | CIVIL ACTION: |
| v. | NO. 24-4176 |
| INNOVIS DATA SOLUTIONS, INC. | |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | CIVIL ACTION: |
| v. | NO. 24-4178 |
| ACCURATE APPEND, INC., et al. | |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | CIVIL ACTION: |
| v. | NO. 24-4256 |
| ZILLOW, INC., et al. | |

```
ATLAS DATA PRIVACY
CORPORATION, et al.,              CIVIL ACTION:

        v.                        NO. 24-4261

EQUIMINE, INC., et al.
```

```
ATLAS DATA PRIVACY
CORPORATION, et al.,              CIVIL ACTION:

        v.                        NO. 24-4269

THOMSON REUTERS CORPORATION,
et al.
```

```
ATLAS DATA PRIVACY
CORPORATION, et al.,              CIVIL ACTION:

        v.                        NO. 24-4292

MELISSA DATA CORP., et al.
```

```
ATLAS DATA PRIVACY
CORPORATION, et al.,              CIVIL ACTION:

        v.                        NO. 24-4324

RESTORATION OF AMERICA,
et al.
```

```
ATLAS DATA PRIVACY
CORPORATION, et al.,              CIVIL ACTION:

        v.                        NO. 24-4345

i360, LLC, et al.
```

```
1    _____

2    ATLAS DATA PRIVACY
     CORPORATION, et al.,              CIVIL ACTION:
3
           v.                          NO. 24-4380
4
     GOHUNT, LLC, et al.
5    _____

6    ATLAS DATA PRIVACY
     CORPORATION, et al.,              CIVIL ACTION:
7
           v.                          NO. 24-4383
8
     ACCUZIP, INC., et al.
9    _____

10   ATLAS DATA PRIVACY
     CORPORATION, et al.,              CIVIL ACTION:
11
           v.                          NO. 24-4385
12
     SYNAPTIX TECHNOLOGY, LLC,
13   et al.
14   _____

15   ATLAS DATA PRIVACY
     CORPORATION, et al.,              CIVIL ACTION:
16
           v.                          NO. 24-4389
17
     JOY ROCKWELL ENTERPRISES,
     INC., et al.
18   _____

19   ATLAS DATA PRIVACY
     CORPORATION, et al.,              CIVIL ACTION:
20
           v.                          NO. 24-4434
21
     E-MERGES.COM, INC.
22   _____

23

24

25
```

1    ─────────────────────────────

2    **ATLAS DATA PRIVACY**
     **CORPORATION, et al.,**              CIVIL ACTION:
3
            **v.**                         NO. 24-4609
4
     **NUWBER, INC., et al.**
5    ─────────────────────────────

6    **ATLAS DATA PRIVACY**
     **CORPORATION, et al.,**              CIVIL ACTION:
7
            **v.**                         NO. 24-4664
8
     **ROCKETREACH, LLC, et al.**
9    ─────────────────────────────

10   **ATLAS DATA PRIVACY**
     **CORPORATION, et al.,**              CIVIL ACTION:
11
            **v.**                         NO. 24-4949
12
     **BELLES CAMP COMMUNICATIONS,**
13   **INC., et al.**

14   ─────────────────────────────

     **ATLAS DATA PRIVACY**
15   **CORPORATION, et al.,**              CIVIL ACTION:

16          **v.**                         NO. 24-5600

17   **PROPERTYRADAR, INC, et al.**

18   ─────────────────────────────

19   **ATLAS DATA PRIVACY**
     **CORPORATION, et al.,**              CIVIL ACTION:
20
            **v.**                         NO. 24-5656
21
     **THE ALESCO GROUP, L.L.C.**
22   ─────────────────────────────

23

24

25

```
 1  ————————————————————————

 2  ATLAS DATA PRIVACY
    CORPORATION, et al.,          CIVIL ACTION:
 3
         v.                       NO. 24-5658
 4
    SEARCHBUG, INC.
 5  ————————————————————————

 6  ATLAS DATA PRIVACY
    CORPORATION, et al.,          CIVIL ACTION:
 7
         v.                       NO. 24-5775
 8
    AMERILIST, INC., et al.
 9  ————————————————————————

10  ATLAS DATA PRIVACY
    CORPORATION, et al.,          CIVIL ACTION:
11
         v.                       NO. 24-7324
12
    US DATA CORPORATION, et al.
13  ————————————————————————

14  ATLAS DATA PRIVACY
    CORPORATION, et al.,          CIVIL ACTION:
15
         v.                       NO. 24-8075
16
    SMARTY, LLC, et al.
17  ————————————————————————

18  ATLAS DATA PRIVACY
    CORPORATION, et al.,          CIVIL ACTION:
19
         v.                       NO. 24-8451
20
    COMPACT INFORMATION SYSTEMS,
21  LLC, et al.

22  ————————————————————————

    ATLAS DATA PRIVACY
23  CORPORATION, et al.,          CIVIL ACTION:

24       v.                       NO. 24-10600

25  DARKOWL, LLC, et al.
    ————————————————————————
```

```
1   _____

2   ATLAS DATA PRIVACY
    CORPORATION, et al.,              CIVIL ACTION:
3
          v.                          NO. 24-11023
4
    SPY DIALER, INC., et al.
5   _____

6   ATLAS DATA PRIVACY
    CORPORATION, et al.,              CIVIL ACTION:
7
          v.                          NO. 24-11443
8
    LIGHTHOUSE LIST COMPANY, LLC,
9   et al.
10  _____

11  ATLAS DATA PRIVACY
    CORPORATION, et al.,              CIVIL ACTION:
12
          v.                          NO. 25-237
13
    PEOPLEWHIZ, et al.
14  _____

15  ATLAS DATA PRIVACY
    CORPORATION, et al.,              CIVIL ACTION:
16
          v.                          NO. 25-1480
17
    FIRST DIRECT, INC., et al.
18  _____

19  ATLAS DATA PRIVACY
    CORPORATION, et al.,              CIVIL ACTION:
20
          v.                          NO. 25-1517
21
    GREENFLIGHT VENTURE CORP.,
22  et al.
    _____

23

24

25
```

```
 1  _____

 2  ATLAS DATA PRIVACY
    CORPORATION, et al.,              CIVIL ACTION:
 3
         v.                          NO. 25-1535
 4
    INNOVATIVE WEB SOLUTIONS,
 5  et al.

 6  _____

 7  Mitchell H. Cohen Building & U.S. Courthouse
    4th & Cooper Streets
 8  Camden, New Jersey  08101
    June 16, 2025
 9  Commencing at 9:57 a.m.

10

11  B E F O R E:            THE HONORABLE HARVEY BARTLE, III,
                            UNITED STATES DISTRICT JUDGE
12

13  A P P E A R A N C E S:

14      NEW JERSEY OFFICE OF THE ATTORNEY GENERAL
        BY:  KATHLEEN C. RILEY, ESQUIRE
15      124 Halsey Street, 5th Floor
        Newark, New Jersey 07101
16

17      BOIES SCHILLER FLEXNER LLP
        BY:  ADAM R. SHAW, ESQUIRE
18           ERIC M. PALMER, ESQUIRE
        30 South Pearl Street, 12th Floor
19      Albany, New York 12207
        For the Plaintiffs
20

21      PEM LAW LLP
        BY:  RAJIV D. PARIKH, ESQUIRE
22      1 Boland Drive, Suite 101
        West Orange, New Jersey 07052
23      For the Plaintiffs

24

25
```

*United States District Court*
*District of New Jersey*

1    **APPEARANCES:** (Continued)

2


3        MORGAN & MORGAN
         BY:  JOHN YANCHUNIS, ESQUIRE
4        201 N. Franklin Street, 7th Floor
         Tampa, Florida 33602
5        For the Plaintiffs

6

7        TROUTMAN PEPPER HAMILTON SANDERS LLP
         BY:  ANGELO A. STIO III, ESQUIRE
             MICHAEL C. SCHWARTZ, ESQUIRE
8            TIMOTHY J. ST. GEORGE, ESQUIRE
         301 Carnegie Center, Suite 400
9        Princeton, New Jersey 08543
         For the Defendants DM Group, Inc.; PropertyRadar;
10       Deluxe Corporation; RocketReach LLC .

11

12       CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
         BY:  JOHN E. MACDONALD, ESQUIRE
         100 Charles Ewing Boulevard, Suite 140
13       Ewing, New Jersey 08628
         For the Defendants Restoration of America, Voter
14       Reference Foundation LLC, and Accurate Append, Inc.

15

16       SEYFARTH SHAW LLP
         BY:  ROBERT T. SZYBA, ESQUIRE
         620 Eighth Avenue, 32 Floor
17       New York, New York 10018
         For the Defendant We Inform
18

19       RKW LAW GROUP
         BY:  MARK STICHEL, ESQUIRE
20       10075 Red Run Boulevard, Suite 401
         Owings Mills, Maryland 21117
21       For the Defendant E-Merges

22

23       GREENBERG TRAURIG LLP
         BY:  AARON VAN NOSTRAND, ESQUIRE
         500 Campus Drive, Suite 400
24       Florham Park, New Jersey 07932
         For the Defendant GoHunt

25

1    **APPEARANCES:**   (Continued)

2

3        GREENSPOON MARDER
         BY:  KELLY MAGNUS PURCARO, ESQUIRE
4        1037 Raymond Boulevard, Suite 900
         Newark, New Jersey 07102
5        For the Defendants Joy Rockwell Enterprises, Inc.;
         Accuzip; Amerilist; US Data Corporation; Searchbug;
6        Darkowl

7        FISHERBROYLES, LLP
         BY:  JASON A. SPAK, ESQUIRE
8        6460 Broad Street, #5262
         Pittsburgh, Pennsylvania 15206
9        For the Defendant Innovis Data Solutions, Inc.

10       RIKER DANZIG LLP
         BY:  OMAR MAROUF, ESQUIRE
11       One Speedwell Avenue
         Mooristown, New Jersey 07962
12       For the Defendant Melissa Data Corp.

13       BUCHANAN INGERSOLL & ROONEY PC
         BY:  SAMANTHA L. SOUTHALL, ESQUIRE
14       50 S. 16th Street, Suite 3200
         Philadelphia, Pennsylvania 19102
15       For the Defendants Zillow, Inc., and Zillow Group, Inc.

16       ZWILLGEN
         BY:  SUDHIR RAO, ESQUIRE
17       183 Madison Avenue, Suite 1504
         New York, New York 10016
18       For the Defendant Lighthouse List Co.

19       WOMBLE BOND DICKINSON LLP
         BY:  KEVIN J. MANGAN, ESQUIRE
20       1313 North Market Street, Suite 1200
         Wilmington, Delaware 19801
21       For the Defendant PublicNSA, LLC

22   **A L S O   P R E S E N T**: Larry Macstravic, Courtroom Deputy
                                   Ryan Rose, Judicial Law Clerk

23

24           (Further appearances of counsel are listed on sign-in

25   sheet, Attachment 1, to the docket minute entry.)

```
 1              (Proceedings held in open court before The

 2   Honorable Harvey Bartle, III, United States District Judge, at

 3   9:57 a.m.)

 4              THE COURTROOM DEPUTY:  All rise.

 5              THE COURT:  Good morning.  You may be seated.

 6         I think it would be helpful if we begin by just going

 7   over briefly the agenda for today since we have a number of

 8   items.

 9              The Court will first hear oral argument on the motion

10   to dismiss under Rule 12(b)(6) with respect to the pleading

11   issues, Iqbal, Twombly, Rule 8, and also the issue of

12   extraterritoriality.

13              The Office of the New Jersey Attorney General has

14   written to us saying that they didn't get the appropriate

15   certification under Rule 5.1 of the Federal Rules of Civil

16   Procedure on issues that they deem to be constitutional,

17   primarily the preemption issues, and I've given them additional

18   time for briefing, and that should all be completed by toward

19   the end of July.  I'll then hold oral argument sometime, I hope

20   shortly thereafter, to deal with those issues, but I thought

21   there was no reason to delay argument on the issues that I have

22   already identified.

23              Is there someone here with the Attorney General's

24   Office?

25              MS. RILEY:  Yes, Your Honor, Kathleen Riley.
```

1          THE COURT:  Maybe this is a good time, if you come
2     forward, I want to talk about this Rule 5.1 issue.  If you
3     could just come up to the podium.
4          Unlike many cases, the Attorney General has intervened
5     in a number of these cases.  So does your office expect to have
6     a notice on cases where you've already intervened?  And that
7     was the case here, but out of an abundance of caution I gave
8     you the extra time.
9          Are we going to have this each time or are you going
10    to follow the docket?
11         MS. RILEY:  We were previously given notice and we
12    intervened on the First Amendment and more explicit
13    constitutional issues, and I think our office became aware of
14    how many of these preemption issues impact the validity of the
15    statute.
16         So I think at this time we've confirmed with all the
17    dockets that this is the extent of our intervention.  That was
18    reflected in our letter that we filed last week.
19         THE COURT:  Right.  So if something else comes up,
20    you're going to expect a Rule 5.1 notice even though you've
21    already intervened in the case or are you just intervening for
22    specific issues?  Is that what you're telling me?
23         I just want to try to expedite these things so there's
24    no slip between the cup and the lip as apparently there was in
25    this situation.

```
 1          MS. RILEY:  Your Honor, I think our position is that
 2    it's the parties' obligation to let us know when they are going
 3    to be bringing up constitutional issues, including preemption.
 4    But that said, we will continue to monitor the dockets.
 5          THE COURT:  But of course now it's complicated by the
 6    fact that since you intervened in specific cases there have
 7    been new Atlas cases filed.  So presumably you're not on the
 8    docket on those cases, so as to those cases you're going to
 9    have to have I guess a 5.1 notice.
10          MS. RILEY:  Yes, Your Honor.
11          THE COURT:  So you're telling me that as to the cases
12    where you've already intervened you won't need any more 5.1
13    notices or you will?
14          Just so -- I just want to know what the rule is going
15    to be so we don't have this kind of a mishap in the future.
16          MS. RILEY:  I understand.  I think in terms of the
17    current motions to dismiss, we don't have any intention of ever
18    being on the dockets that were -- where we're already on the
19    docket.
20          THE COURT:  Because you're already there.
21          MS. RILEY:  Uh-huh.
22          THE COURT:  But how about in the future?  We need to
23    understand each other, that's what I'm saying, and all the
24    parties need to understand.  And I have no idea whether there
25    are going to be any additional issues, but I just want to find
```

1   out what the view of the Attorney General's Office is on that

2   so all the attorneys will know about it.

3              MS. RILEY:  I mean, so this issue is a little easier

4   in state court where we oftentimes parties will just email us

5   and we'll accept service.  I think we just expect and ask that

6   the parties notify us going forward.

7              THE COURT:  Okay.  So out of an abundance of caution,

8   the parties will -- if there are any additional issues, the

9   parties should be on notice.  And I think plaintiffs' counsel

10  maybe should -- if defendant files a motion that has a

11  constitutional issue, that maybe you ought to pick up the

12  telephone and call them and say you better file a 5.1 notice.

13             MR. SHAW:  Thank you, Your Honor, Adam Shaw for the

14  plaintiffs.  We will endeavor to do that.  In fact, we will try

15  to keep them informed of new cases that are filed so they are

16  aware of them even before there are motions.

17             THE COURT:  That will be very helpful.  Thank you very

18  much.

19             MS. RILEY:  Thank you.

20             THE COURT:  Then after we have the oral argument, I'm

21  going to have a status conference on the cases where

22  Rule 12(b)(2) cases have been filed related to personal

23  jurisdiction.  And then there have been a series of additional

24  Atlas cases filed and we need to talk about what the procedure

25  should be going forward with those cases, whether we should

1  stay them pending the argument in the court of appeals in July.

2  And that decision, maybe that will help simplify things, but

3  we'll talk about that at a later point.

4        MR. PARIKH:  Your Honor, Rajiv Parikh for the

5  plaintiffs.  Just in terms of those newly removed cases, we've

6  spoken I think to all of defendants' counsel.  I believe all of

7  them want to follow the same procedure, which includes them

8  wanting to join the 12(b)(6) motion today.

9        So I don't know whether Your Honor wants to do it

10 before the argument on that part, but I think the general

11 procedure all of them have agreed to is that they will join the

12 previously filed facial challenge, they will then -- if Your

13 Honor presumably adopts your former opinion, they will join the

14 appeal in the Third Circuit, and that they will join the

15 12(b)(6) motion today.

16       THE COURT:  See, the problem with that is -- well,

17 let's hold off on that because that relates to only a few of

18 the cases and I don't want to hold everybody else up while we

19 have the oral argument.  Anybody who wants to argue on the

20 12(b)(6) on the issues we've discussed are certainly free to do

21 that.

22       MR. PARIKH:  Okay.  Thank you, Judge.

23       THE COURT:  So is there anything else for the agenda

24 for today that we can think of that I missed?

25       MR. PARIKH:  I don't believe so, Your Honor.

1              THE COURT:  All right.  We'll start with the oral

2     argument on the motions to dismiss the complaints under

3     Rule 12(b)(6) for a failure to follow the pleading requirements

4     and also on the issue of extraterritoriality.

5              Mr. Stio, do you wish to proceed?

6              MR. STIO:  Good morning, Your Honor.

7              THE COURT:  Good morning.

8              MR. STIO:  Your Honor, Angelo Stio from Troutman

9     Pepper Locke.  I represent four of the defendants that have

10    joined into this consolidated motion to dismiss, DM Group

11    PropertyRadar, Deluxe Corporation, RocketReach.  I'll be

12    arguing the 12(b)(6) motion on behalf of the defendants.  There

13    may be other defense counsel who have briefed discrete issues

14    in their supplemental submissions, will follow.

15             THE COURT:  I'll hear from everybody.  And why don't

16    we break it down.  We'll talk about the pleading argument first

17    and then the extraterritoriality one second.

18             MR. STIO:  Absolutely, Your Honor.

19             So, Your Honor, the plaintiffs have filed 150

20    complaints and they're based on allegations that 19,000, give

21    or take, sent takedown notices to the defendants of different

22    sizes in different industries and the defendants continued to

23    make information available.

24             One of the main things in our motion is that the

25    complaints contain legal conclusions.  There are no facts

1    alleged as to the conduct of any specific defendant.  There are

2    no facts alleged as to a single violation of Daniel's Law, let

3    alone a violation of Daniel's Law as to 19,000 assignors.

4          THE COURT:  Well, don't the complaints say that

5    notices were sent to the defendants that the 19,000 are covered

6    persons under the statute and that the information continued to

7    be available and disclosed, haven't they said that?

8          MR. STIO:  They have said that, but that is a legal

9    conclusion.  And let me just -- the legal standard here, right,

10   is -- let's assume they're individual plaintiffs.  I'm an

11   individual plaintiff, I will plead that I sent the notice --

12         THE COURT:  Right, they've done that.

13         MR. STIO:  -- I will plead that I'm a covered person;

14   I will plead that after the ten-day period, as to me, the

15   notice was still there, so I'll do some due diligence, and then

16   I file a complaint.

17         Here, you don't have that.  Here, if you look at the

18   Atlas service terms, and it's page 5 of those service terms,

19   they make clear that notices are sent and we don't know whether

20   or not the entities have your information.

21         And if you look at their brief, their opposition

22   brief, which is completely transparent, they say we don't have

23   to allege a violation, we can figure it out during discovery.

24   Your Honor -- and that's on page 17 of their brief.

25         Your Honor, Daniel's Law does not relax the pleading

1  standards for a plaintiff, and I would submit to the Court

2  that --

3           THE COURT:  You said page 17.

4           MR. STIO:  Wait a minute.  I'll get you the page in a

5  second.

6           THE COURT:  Plaintiff's brief in opposition, the one

7  that was filed on May 5th?

8           MR. STIO:  Yes.  Give me a second and I'll give you

9  the specific page.

10           THE COURT:  Okay.

11           MR. STIO:  Yeah, top of page 17, Your Honor, after

12  footnote 10.  "There is no requirement that plaintiffs detail

13  that protected information in the complaints, which will be

14  provided in discovery.  The full extent of defendants'

15  violations is something that will be determined based on

16  discovery obtained from defendants, not the pleadings."

17           THE COURT:  Well, when you say the "protected

18  information," is the what, the home address and the unlisted

19  telephone number, correct?

20           MR. STIO:  Here's what I'm saying, Your Honor.  I'm

21  saying that --

22           THE COURT:  But isn't that what they're saying here?

23  The protected information is --

24           MR. STIO:  Is the name in conjunction with a home

25  address and the name in conjunction with an unpublished phone

1   number.

2          THE COURT:  Right.  But they do say that that

3   information was -- there was a request to remove that

4   information, correct?

5          MR. STIO:  Correct.

6          THE COURT:  And there was a notice from 19,000 people,

7   at least they say that, that said I'm Police Officer Jones from

8   Camden and please remove --

9          MR. STIO:  Hold on a second, Your Honor.  I don't mean

10  to cut you off.

11         THE COURT:  Go ahead.

12         MR. STIO:  The notice doesn't say that.  It doesn't

13  say I'm a police officer from Camden.

14         THE COURT:  Okay.

15         MR. STIO:  It doesn't say I'm a police officer.

16         THE COURT:  You're correct.  It would say I'm John

17  Jones, I'm a covered person, my home address is X Street in

18  Camden and my unlisted phone number is X, Y, Z, correct?

19  That's what it says?

20         MR. STIO:  It says either my home address or, a

21  separate notice, my phone number.  It wasn't put together

22  because that would make it too easy to identify the person.

23         THE COURT:  There's no rule that you can't send notice

24  separate.  In other words --

25         MR. STIO:  No rules like that.

1          THE COURT:  Okay.  So they say I'm a covered person

2    without saying I was a police officer or prosecutor or a

3    judge --

4          MR. STIO:  Yeah.  You figure it out, you guys figure

5    it out.

6          THE COURT:  Well, but there is some information about

7    covered, my protected information, and ten days has expired

8    since I sent the notice and it's still there.

9          MR. STIO:  But, Your Honor, they don't give an

10   allegation of a plausible violation.  And let me just give you

11   an example, Your Honor.  Nine plaintiffs file a complaint.

12   They're all named plaintiffs.  And they say takedown notice was

13   sent, covered person, ten days expired.  There has to be some

14   plausible allegation that the information -- I saw the

15   information continued to be disclosed.  It can't be we'll

16   figure it out during discovery.

17         THE COURT:  No, but they say there's a violation, they

18   say I sent the notice ten days ago, or whatever, eight, 15 days

19   ago, and it's still available.

20         MR. STIO:  They say that as to 19,000 people.

21         THE COURT:  Right.  Okay.

22         MR. STIO:  And they haven't -- the pleading

23   requirements require them to say as to Angelo Stio, his

24   information was still available; as to John Smith, his

25   information was still available; as to Judge Bartle, his

```
 1   information --

 2           THE COURT:  Right.

 3           MR. STIO:  They don't say that.  What they say is,

 4   well, there may be information about one person but we'll

 5   figure it out during discovery.

 6           THE COURT:  That's not what it says on page 17.

 7           MR. STIO:  No, but what it says on page 17 is we'll

 8   figure out the violations.

 9           THE COURT:  No, no, no.  It just says that there's no

10   requirement that plaintiffs detail in the complaint.  In other

11   words, that they -- they've given you that information.  I

12   think what -- I can ask them this for themselves -- right.

13           Well, how is that different than your typical

14   complaint in an automobile accident case?  Plaintiff X says she

15   was driving a car 35 miles an hour and Defendant Y runs through

16   the red light and injures me.  Now, does she have to attach her

17   medical records to the complaint to show what the extent of the

18   injuries were?

19           MR. STIO:  No.  But what -- I'll give you your

20   hypothetical.  Defendant X runs through a light and hits the

21   plaintiff.  Plaintiff files a complaint and it says Defendant X

22   hit me, I was injured; and by the way, Defendant X is a bad

23   driver and I have assignments from 19,000 people who I believe

24   Defendant X hit.  I don't know whether or not they have damages

25   but we're going to take discovery --
```

23

```
1              THE COURT:  That's a different issue.  You're getting
2    into assignments.  I don't know whether you can assign a tort
3    claim.
4              MR. STIO:  What I'm getting at here, Your Honor, is
5    there's a pleading standard, right?  The pleading standard is
6    you have to allege misconduct as to what they did wrong as to
7    each plaintiff and what each defendant did wrong --
8              THE COURT:  See, what you're --
9              MR. STIO:  -- but they don't do that.
10             THE COURT:  They do argue that each one is a viable
11   plaintiff, they do say that, and they're all covered persons,
12   the notices were sent.  Now, they do not identify the 19,000
13   people in the complaint, there's no question about that, and
14   they don't say I was a police officer in Camden or I was a
15   prosecutor in Mercer County or I was a judge in Camden County.
16   It doesn't go into that kind of detail.  But you have that
17   information now.
18             Didn't we talk about that early on?
19             MR. STIO:  We did talk -- Your Honor, I think we're
20   talking past each other.  I think you're talking about the
21   identity of the assignors.  I'm talking about if you look at
22   what is pled, they do not allege as to each individual assignor
23   that information was continued to be disclosed.
24             What they say is information was continued to be made
25   available.  We're not going to tell you whose, we're going to
```

1    go on a fishing expedition for 19,000 people.

2          THE COURT:  Well, let me go back.  You're not

3    complaining now that they didn't name the 19,000 in the

4    complaint, it didn't have 19,000 names, that would be how many

5    pages of a complaint.

6          Are you complaining about that now?

7          MR. STIO:  That's in my -- it is in my brief.  But the

8    issue is not the identities, the issue is --

9          THE COURT:  No, no, just so I'm clear, are you saying

10   that there's a pleading deficiency because 19,000 individuals

11   were not identified in the complaints, that it should have been

12   hundreds of pages long?  Are you saying that?

13         MR. STIO:  In the brief I'm saying that there is a

14   pleading deficiency.  There are no allegations as to the

15   assignors --

16         THE COURT:  I --

17         MR. STIO:  But just listen.  I'm going to get to your

18   point.

19         The identities, no.  Facts showing that those

20   individuals are covered people, yes.  The spreadsheet that they

21   gave us in federal court just had the name, I believe it was

22   the date of the assignment.  It doesn't say how they qualify as

23   a covered person.

24         THE COURT:  I just want to be clear.  You're not

25   complaining that they didn't identify by name the 19,000

1     individual assignors.  Is that an issue you're raising or not?

2           MR. STIO:  Okay.  Your Honor --

3           THE COURT:  Mr. Stio, are you complaining that they

4     didn't list them alphabetically, A to Z, 19,000 people in the

5     complaint, is that one of your arguments?  I want to clarify.

6           MR. STIO:  The argument -- no, Your Honor, it's not.

7           THE COURT:  So nobody is saying that they should have

8     identified 19,000 people in the complaint --

9           MR. STIO:  We're not saying --

10          THE COURT:  -- by name?

11          MR. STIO:  We're not saying that because we have the

12    names in the spreadsheet.  If they didn't give us the

13    spreadsheet, yes, we would be saying that.

14          THE COURT:  I understand that.  We talked about that

15    very early on.

16          MR. STIO:  Absolutely.  What we are saying is the

17    spreadsheet doesn't tell how the person is a covered person.

18    They didn't give us that information.  That's a pleading

19    deficiency.

20          They stand in the shoes of the assignors, and what

21    they have said in their brief is it's enough that we showed

22    there's an assignment, we don't have to plead anything else.

23          THE COURT:  But it isn't just that they said there are

24    19,000 people.  They did say they were covered people.  And the

25    statute, Daniel's Law, uses that term "covered persons," does

1    it not?

2         MR. STIO:  It does.  It's a legal conclusion.  It

3    absolutely is.  It's a defined term.  They have to plead facts,

4    they can't state legal conclusions.  That's what *Iqbal* says,

5    you ignore legal conclusions.  The whole complaint is legal

6    conclusions and it's done because it's an automated process.

7    They want to just deluge all these defendants with notices and

8    we'll figure it out later.

9         THE COURT:  The jury would have to answer the

10   question, would it not, as to whether someone is a covered

11   person?  A jury would have to answer that question, correct?

12   If we go to trial --

13        MR. STIO:  Yeah.

14        THE COURT:  -- and you say John Jones had nothing to

15   do with law enforcement, wants his name off the internet, that

16   would be a fact question for the jury, would it not?

17        MR. STIO:  The fact question for the jury would be

18   whether or not John Jones is a police officer.

19        THE COURT:  Is a covered person.

20        MR. STIO:  I think the jury instruction would be is he

21   a police officer, is he a judge, is he an investigator?

22        THE COURT:  A covered person is just a shortened

23   definition for prosecutors, judges, law enforcement, I think

24   child protection, and also immediate members of the family.

25   That's not unusual for statutes to have a shortened term, a

 1    definition.  It's just a definition --

 2            MR. STIO:  It's a legal conclusion.

 3            THE COURT:  No, it's a shortened definition.

 4            MR. STIO:  But if it's not a legal conclusion, why

 5    does it go to the jury?  I mean, it has to be decided.

 6            THE COURT:  It would have to go to a jury, are they

 7    covered person.

 8            MR. STIO:  But there's no plausible allegations.  What

 9    they're saying is this is a legal conclusion, covered person.

10    They don't say he's a police officer, he's a child

11    investigative service investigator, he's a judge.

12            THE COURT:  It's just a shortened way of saying I'm

13    included in this group, right?

14            MR. STIO:  I mean, I respectfully disagree.  I

15    understand what you're saying.

16            But what I'm saying, Your Honor, is if you look at the

17    allegations -- I mean, the way the statute works, covered

18    person provides a takedown notice; recipient gets it, they have

19    ten business days to comply.  After ten business days expires,

20    the covered person sees the information has not been disclosed.

21    That is not alleged there.  They just say it continues to be

22    disclosed, we'll figure it out later who it is.  They don't

23    give one example of here's on the internet, here's the

24    information.

25            And you know, there are a couple complaints where they

1  actually show a search tool, they black out everything.  They

2  don't even give the name of the individual plaintiff, which is

3  already a matter of public record, to show that the information

4  is being disclosed.

5        But they can't say, defendant, you're liable because

6  you posted the information to Judge Bartle, and therefore, you

7  probably posted it for 18,999 other people.  They have to

8  allege it as to each of the assignors.  And they stand in the

9  shoes of the assignor.  They have to plead a claim.

10       Now, they have relied on a case that actually proves

11 our point, and the case that they rely upon, Your Honor, is

12 the -- let me find it -- *MSP Recovery Services*.  They say,

13 well, that case, standing was decided, and all we have to do is

14 show there's an assignment, we'll figure out everything with

15 discovery.

16       That's not what *MSP* series says.  *MSP* involved three

17 separate motions to dismiss.  And before they decided that you

18 don't have to identify all of the assignees -- right? -- all

19 you have to identify is that this is a description of them.

20 And it involved a diabetes drug and payment under Medicare Part

21 C and D.  Right?

22       But the complaints alleged this is the drug, this is

23 how much my percentage, each of these people were overcharged,

24 this is how the overcharge was calculated.  None of that

25 factual detail or even plausible allegations is here as to any

```
 1   of the individual plaintiffs, let alone 19,000.
 2           What we're trying to avoid is a fishing expedition,
 3   and that's what's going to happen.  A, I don't know how the
 4   Court can rule on proportionality if they can say there has to
 5   be a violation because they have home addresses and we'll
 6   figure out whether they're for covered people.
 7           THE COURT:  Let's assume for the moment they had said
 8   X is a police officer, Y is a prosecutor, Z is a judge.  You
 9   still have a right to challenge that.  Simply because they say
10   it, you don't have to accept it, do you?
11           In other words, you're going to take discovery to find
12   out whether X is a police officer, whether Y is a prosecutor,
13   whether Z is a judge.  And maybe they're right.  We hope they
14   are if they tell you that.  But you're not bound by that.
15           MR. STIO:  But I'm focusing on the violation.  The
16   violation, right, is --
17           THE COURT:  No, but let's talk about -- you're
18   concerned about you don't have sufficient identity of these
19   people as to whether they're covered persons or authorized
20   persons.  You're saying -- they tell me John Jones is a covered
21   person, but you don't know whether that's so or not because you
22   say they don't identify whether John Jones worked as a police
23   officer in Camden, whether he was a prosecutor or a judge or
24   part of child protective services.  So you want that
25   information you say.
```

1          But even if they had given it to you, that doesn't end
2    the story, does it?  You have a right to determine whether he
3    was a Camden Police Officer or a prosecutor or a judge,
4    correct?
5          MR. STIO:  I agree with that, Your Honor.
6          THE COURT:  Well, then what's the problem?  You're
7    going to have that issue anyway.
8          MR. STIO:  So there are two issues here, right?  What
9    I've been talking about is have they pled a violation, right?
10   So I'll put that to the side.
11         Let's talk about the individuals.  They have to
12   plausibly allege a covered person status.  They have to.  They
13   have to do it because the pleading standard says you need to
14   allege facts, not legal conclusions, and you can't just
15   articulate the elements of a claim.  That's *Iqbal*.  They don't
16   do that.  They need to allege -- because Atlas stands in the
17   shoes of 19,000 people --
18         THE COURT:  That is correct.
19         MR. STIO:  Yeah.  And what the Court I think is saying
20   is, hey, we could figure it out, trust them, let them go on
21   this fishing expedition for 19,000 people.
22         But the purpose of a motion to dismiss is not only
23   just to get the whole complaint dismissed, it's also to narrow
24   the issues so that this proceeds efficiently.  And what we
25   can't have is we're covered persons, they're judges,

1    prosecutors, and they're family members; and by the way,

2    they're attempted definition is inconsistent with the language

3    of the statute, right, because they say it could be a family

4    member.  The statute says it has to be an immediate family

5    member in the same household.  That's nowhere alleged in the

6    complaint.

7           But leaving that all aside, Your Honor, they need to

8    plausibly allege that.  Now, that's one argument.  That's the

9    argument as to we need to know how is it a plausibly alleged

10   covered person status.

11          And I give the Court, yes, we got a spreadsheet, it

12   has the names, it doesn't say a status in these federal court

13   cases.

14          Now, my second argument, though, is different.  The

15   argument is you have to perform some due diligence and you have

16   to give me allegations of a violation.  You can't just say the

17   statute is violated.  Like, I don't know how you could come in

18   to file a complaint --

19          THE COURT:  Don't they say they gave you notice ten

20   days from the date, and then ten days have expired and the

21   information is still available?  That's a violation, isn't it?

22   Whether you think the statute is constitutional or not, put

23   that aside.  That's a violation of the terms of the statute,

24   isn't it?

25          MR. STIO:  That is the expressed parroted language of

1    the statute, yes.

2              THE COURT:  Okay.

3              MR. STIO:  But they don't do that on behalf of 19,000.

4    They don't say you violated it because on X date it was

5    publicly available through the website, through a mailing list.

6    What they say is -- they never said we looked -- we went back,

7    we looked on the website, we looked at the public available,

8    where we determined you had our information and you redisclosed

9    it.  They just say we'll figure it out, let us go on a fishing

10   expedition, and they can't do that.

11             THE COURT:  Okay.

12             MR. STIO:  I mean, the best example -- I won't use the

13   tort case.  Let's just -- you know, the six plaintiffs, named

14   plaintiffs say we sent a notice to X, Y, Z court, ten days

15   expired, the information was still available.  They don't say

16   we checked, they don't say where it was available.  They say in

17   their brief we'll figure it out through discovery.  You have to

18   give something more than just --

19             THE COURT:  Well, how about in a tort case

20   plaintiff -- the example you use -- sues X who ran the red

21   light.  Now, does the complaint have to say, well, did the

22   plaintiff really check whether it was X that ran the red light?

23   What information do you have to give in the complaint to

24   say that, you know, I'm really sure it was X?  You say it was

25   X --

1          MR. STIO:  I think, Your Honor -- and I apologize if

2     I'm not being clear.  You have to say plausibly "I was

3     damaged."

4          They don't say that as to one person, let alone

5     19,000.  Atlas stands in the shoes of all the assignors.  There

6     is nothing specific about any defendant or any of the

7     information that was disclosed, where it was disclosed.  All

8     they say is, well, it continued to be available, we don't have

9     to tell you the number of violations, we'll figure it out.

10          You can't get into court --

11          THE COURT:  Well, see, what was the purpose of the New

12     Jersey legislature?  It passed the statute to have the

13     protected information removed from the internet or from public

14     availability.  And why did they do that?  They did it because

15     of the threat of serious harm to the individuals who are

16     covered.  We all know the story of Judge Salas's son, who was

17     murdered.

18          The idea is to remove this information.  And while

19     that information is available, isn't there at least serious

20     anxiety among those who are protected individuals, covered

21     persons?  And so the longer that information is up there when

22     you requested it to be removed, the greater opportunity is that

23     you're going to be assassinated or threatened.  Isn't that

24     sufficient?

25          I mean, it seems pretty obvious as to what the damage

is. What was the legislature -- you don't have to say, you know, after that ten-day period expired I've been threatened three times and a bomb was left at my house. Is that the kind of damage you have -- what kind of damage are you talking about?

MR. STIO: Again, Your Honor, again, we're talking past each other. I'm saying a violation. They have to allege after the ten-day period I saw my information publicly available.

THE COURT: They can't simply say the ten days and the information is still there? They have to give you more detail, is that what you're saying?

MR. STIO: They have to give it on behalf of who's bringing the claim. Let me give you an example. If the complaint said Judge Salas sent a takedown notice, ten days expired, she checked it, and the information was still available -- Judge Salas. If I could just finish, please. Because Judge Salas's information was out there, there's got to be not this information for the 19,000 people. We're not going to tell you who it is and we're not going to tell you where it's available, discovery will figure it out. You would dismiss that complaint like that.

That's no different than what's happening here. They can't just take 19,000, throw it on the wall and say let's see what sticks. They've got to give plausible allegations. All

```
 1   we're looking for here is a fair litigation, and this is not
 2   meant as -- because you've been as fair and as down --
 3   even-handed as I've seen in a judge.
 4         But the way that this complaint is pled, they plead
 5   legal conclusions, they don't plead a violation.  And if you
 6   look at what they say is a violation, it's not.  They say --
 7   there's a violation pled in three paragraphs.  I would submit
 8   to the Court that when you look at them, it parrots the
 9   language.
10         Paragraph 31:  "Each defendant is an entity that
11   discloses home addresses or unpublished home telephone numbers
12   of covered persons."
13         Okay.  That parrots 56:8-166.1a.  It has to be as to
14   Angelo --
15         THE COURT:  But any good lawyer who drafts a pleading
16   is going to parrot the language of the statute that you claim
17   to have been violated.
18         MR. STIO:  Right --
19         THE COURT:  I mean, clearly --
20         MR. STIO:  -- but that alone is --
21         THE COURT:  -- you would be committing malpractice if
22   you didn't.
23         MR. STIO:  Right, but you have to add in plausible
24   allegations.  And if you look at *Iqbal*, if you look at *Twombly*
25   and you look at how massive those complaints were, they were
```

1    hundreds of pages.  The court still said, nope, not plausible,

2    because legal conclusions and generalized allegations don't do

3    it; you need some sort of plausibility.

4            And, Your Honor, *Iqbal* goes even further and what it

5    says --

6            THE COURT:  So let me go back.  So you're not saying

7    that the individual plaintiffs, when you say that there's a --

8    they don't have to talk about -- do they have to say how they

9    are damaged?

10           In other words, do they have to say I've had great

11   anxiety after the ten days expired or do they have to say I

12   received a threat or -- are you saying that?

13           MR. STIO:  They don't allege any damages.

14           THE COURT:  I'm saying do they have to.  You're saying

15   they're deficient.  Would they have to say, you know, I've

16   gotten migraines since then, I'm afraid to leave my house, I've

17   gotten a threat?

18           Is that what you're -- do they have to allege that

19   sort of thing?

20           MR. STIO:  Well, Your Honor, take a step back.  Right?

21   If you look at plausibility and you look at *Iqbal* says that the

22   court can use their own common sense and their history of --

23           THE COURT:  That's what I'm trying to do here, use my

24   common sense.

25           MR. STIO:  Yeah, I hear you.  Your Honor, if there's a

1  real concern here -- we've put it in our constitutional

2  challenge --

3         THE COURT:  We're not going to reargue that issue.

4         MR. STIO:  I'm not going to.  But I'm just telling you

5  this in the record that they started collecting this, Atlas,

6  these takedown notices ten months before they were sent and

7  they didn't send them out.  They waited.  And they waited

8  because they wanted to get 19,000.  So it's not plausible that

9  they can say I have all this emotional distress when for ten

10  months they didn't have it.

11         THE COURT:  Look, how about a negligence complaint?

12  You have two years to file your personal injury case and you

13  know who the defendant is and you don't do it until one year,

14  364 days later.  You can't argue, well, is she really suffering

15  emotional distress because she waited a year, almost two years

16  to file the complaint.  I don't think that's a valid argument,

17  the fact that they didn't --

18         MR. STIO:  Your Honor, again, they need to show as to

19  each plaintiff the information was there.  They don't.  They

20  just say it was disclosed by covered people, therefore, we're

21  included.  You can't do it that way.

22         Your Honor, the second issue is negligence.  The Court

23  found there's a negligent culpability standard.  They don't

24  allege it.  And they don't deny they don't allege it.  They say

25  we didn't have to do it because the standard was implemented

1    after we filed the complaint.

2         Courts dismiss complaints all the time for failure to

3    plead allegations of elements of a claim.

4         THE COURT:  Now, according to your view, would the

5    problem be solved if we just take the 30, 40 complaints, they

6    just add a paragraph, negligence?

7         MR. STIO:  No.  That's a legal conclusion.  You need

8    factual allegations.

9         THE COURT:  A lot of complaints in this day say that

10   -- the plaintiff in my automobile accident says the defendant

11   was negligent, he ran through the red light.  You would say

12   that the fact that they ran through the red light would be

13   sufficient.

14        MR. STIO:  No.  Duty, breach of duty, proximate cause,

15   damages for negligence.

16        THE COURT:  You have to allege that in a complaint?

17        MR. STIO:  You do.

18        THE COURT:  In other words, you can't say I was

19   driving 35 miles an hour and I was obeying the speed limit, I

20   was going the right direction, and the defendant runs through

21   the red light; I had a green light, it was a red light the

22   other way; ran into me at 90 miles an hour; I've suffered loss,

23   whatever.  And that's your prayer for relief.  You sue the

24   defendant, sir, that's not going to be enough.

25        MR. STIO:  As to one person, your statement of "I

```
 1   suffered loss," that would be enough.  We don't have that here.
 2   They need to say as to each individual --
 3         THE COURT:  Would that plaintiff have to say the
 4   defendant was negligent?  Would you be successful on a motion
 5   to dismiss that tort claim if the plaintiff didn't say
 6   defendant was negligent after saying everything else that
 7   happened?  So we throw that complaint out because they didn't
 8   use the word "negligence"?
 9         MR. STIO:  No, the elements of negligence.  Duty,
10   breach of the duty --
11         THE COURT:  You don't have to say, well, the defendant
12   had a duty.
13         (Simultaneous speakers.)
14         MR. STIO:  Let me give you --
15         THE COURT:  Well, he had a duty and, you know, the
16   proximate cause was his running through the red light.  You
17   have to use the word "proximate cause"?  Do you have to say
18   "and he was negligent"?
19         MR. STIO:  Let me give you a hypothetical then, Your
20   Honor.  And I don't mean to argue about --
21         THE COURT:  Let's talk about my hypothetical.  Would
22   that complaint be deficient?
23         MR. STIO:  It could be.
24         THE COURT:  Really?
25         MR. STIO:  Yeah.  What if the defendant is a fire
```

```
1   company and they're on their way to a fire, right --
2           THE COURT:  No, I'm not talking about -- I'm talking
3   about the case that I just talked about.
4           MR. STIO:  You just said anyone.  It could be a fire
5   company.
6           THE COURT:  Well, let's say it wasn't.  Let's just say
7   there are two private citizens, one driving 35 miles an hour
8   and the other one running through the red light at 90 miles an
9   hour and injures the plaintiff, would the complaint have to say
10  the defendant was negligent and that the defendant had a duty
11  not to injure me and the proximate cause of my injuries was the
12  fact that this guy ran through the red light at 90 miles an
13  hour?  Do you have to say that?
14          MR. STIO:  I would say that you would have to allege
15  proximate cause.
16          THE COURT:  Okay.
17          MR. STIO:  Well, Your Honor, let's give it
18  hypothetical facts.  Individual is driving, both their -- leave
19  out the fire.  Individual defendant.  Defendant is driving
20  35 miles an hour, hits me.  I say that I'm injured and my
21  injury is ALS.
22          Are you going to hold that complaint?
23          THE COURT:  Am I going to hold that complaint?
24          MR. STIO:  Yeah.  My injury is ALS.
25          THE COURT:  From the automobile accident?
```

```
 1            MR. STIO:  Yeah.
 2            THE COURT:  Well, I would have a lot of questions
 3  about it but --
 4            MR. STIO:  That's not plausible.
 5            THE COURT:  Well, you know --
 6            MR. STIO:  They don't even give us what the injury is.
 7  They just say -- look, they had covered people, they put one --
 8  they make home addresses and phone numbers available, we have
 9  to be part of it.
10            THE COURT:  All right.  Go ahead.
11            MR. STIO:  And I'm saying the pleading standards
12  cannot be relaxed as to a violation.  They don't plead a
13  violation.  And if you look at paragraphs 31, 45 through 52,
14  and 55, they don't allege other than legal conclusion.  They
15  parrot the statute.
16            THE COURT:  All right.  I beg to differ with you.  The
17  fact that they parrot the statute is good pleading.  If you
18  didn't parrot the statute, then you would be arguing, well,
19  they say something different than what the statute says and
20  throw it out for that reason.
21            MR. STIO:  The Third Circuit case of Connelly and
22  Iqbal said you need factual allegations, you can't just --
23            THE COURT:  You don't have to say the statute.  I
24  agree.
25            MR. STIO:  They don't have that here.  Negligence,
```

1    they don't plead negligence.  And they admit it.  They say

2    after the fact, well, you decided it after we filed it so we

3    don't have to replead.

4            Your Honor, I would submit that it happens all the

5    time.  Cause of action, you have not alleged all the elements,

6    you need to amend.  In fact, the last time we were here they

7    indicated that we're going to meet and confer and see if we can

8    amend to fix things.  They haven't done that.

9            They haven't done it because they get paid legal fees

10   if they are successful here.  And we don't think this complaint

11   is sufficient as to negligence at all, and they don't dispute

12   it.  They just say, well, it could be read to be negligent.

13   But they say look at the purpose of the statute, look at how

14   companies generally disclose information.  Those aren't

15   specific allegations or even plausible allegations as to any

16   defendant.

17           And I would submit here, sending 19,000 takedown

18   notices at once by email without getting any verification

19   whether or not they were even received, without any follow-up

20   as to whether or not information was taken down doesn't satisfy

21   the negligence standard that this court has established.

22           And, Your Honor, the third basis for our motion is the

23   notice itself.  And I think we talked about it a little bit and

24   I won't belabor it, but under *Carteret Properties*, they have to

25   give more than just I'm a covered person.  And *Carteret*

```
 1   Properties involved a New Jersey summary disposition statute.
 2   And that statute said written notice, three days of termination
 3   of a tenancy, specific reason for why you're terminating the
 4   tenancy.  Carteret Properties --
 5           THE COURT:  But they didn't give a sufficient specific
 6   reason.
 7           MR. STIO:  They did.  They said you breached the
 8   lease --
 9           THE COURT:  Yeah, but there was more required than
10   that.  But that's not the specific reason of the statute, just
11   saying you breached the lease.  The legislature clearly had in
12   mind that you had to say, how did you breach it.
13           MR. STIO:  That's not what the statute said, though.
14           THE COURT:  Well, it said you have to give the
15   specific reason.
16           MR. STIO:  No, it just said you have to specify the
17   reason for termination.
18           THE COURT:  Specify the reason.
19           MR. STIO:  Right.  Here, the legislature says you have
20   to say you're a covered person --
21           THE COURT:  But the court interpreted that to mean you
22   have to say why.  You didn't pay the rent, you were throwing
23   loud parties on Saturday night, you were disturbing the peace,
24   you had 18 people living in the apartment instead of two, you
25   had dogs and we don't allow dogs.  You know, there are all
```

1  kinds of reasons.

2          And I think that's how I read the case, that's what

3  the legislature was specifying.

4          MR. STIO:  I would look at *Carteret Properties* again

5  because they did say what the language -- what was the breach.

6  It was selling something in the front of the store when they

7  were otherwise not permitted to do so.

8          THE COURT:  Right.

9          MR. STIO:  And the Court still said that's not enough

10 when it's a legal notice and an exercise of right.

11         THE COURT:  Was that in the notice itself about

12 selling something -- they were selling newspapers or something

13 like that.

14         (Simultaneous speakers.)

15         MR. STIO:  Yeah.  My reading of it, it was, yeah.  I

16 would look at that again because what the court said is it

17 wasn't specific enough and you can't rely on legal conclusions.

18 Here, there's no information about covered persons.

19         THE COURT:  All right.

20         MR. STIO:  Your Honor, the next is sending the

21 request.  The statute says provide notice.  And what we've

22 briefed is that if the Court looks at the Daniel's Law service

23 terms for Atlas, Atlas controls the process of providing notice

24 from start to finish.  They draft the language as a notice,

25 they determine the email addresses of who receives the notice,

1    they determine when to send the notices and they have the

2    ability to batch and send them all at once.

3            THE COURT:  Does the statute say that the covered

4    person, I'll use that term, has to actually push the button and

5    send the notice?

6            MR. STIO:  The statute says that the covered person

7    has to provide the notice.

8            THE COURT:  Right.  But let's assume for a moment

9    you're a retired police officer in Camden and you hear about

10   this statute and you just don't have a lot of computer skills

11   but you were involved in a lot of high-profile cases while you

12   were a police officer, a lot of dangerous work, and you ask

13   your granddaughter, who's a lot more proficient with computers

14   than he is.  And he says, Suzy, I hear about this statute,

15   would you send this for me, here's what you've got to do,

16   you're the computer expert, you send it.

17           Wouldn't that be legal?  Would somebody who's a

18   retired police officer have to do all that himself when he can

19   get his granddaughter, authorize his granddaughter to do it?

20           MR. STIO:  You can do that.  In this case --

21           THE COURT:  That shouldn't be a problem, would it?

22   Should the case be thrown out because that happened?

23           MR. STIO:  The statute specifically provides for

24   authorized persons to send on behalf, it does.

25           THE COURT:  Right.  But even more informally, when

1    they say has to provide the notice, in your household your
2    granddaughter is over for a visit and you're talking and you
3    say, Suzy, will you do it for me?  Would the complaint be
4    dismissed if, after discovery, you find out the granddaughter
5    sent the notice for the grandfather?  Should I dismiss that
6    complaint because he had his granddaughter do it, he wasn't
7    really proficient with computers and all the rest of it?
8            MR. STIO:  Your Honor, that's not the situation here.
9            THE COURT:  I'm asking you whether in that case should
10   the complaint be dismissed?
11           MR. STIO:  I don't know.  I would need to know the
12   facts first.
13           THE COURT:  Well, I gave you the facts.  The
14   grandfather is up in years and he knows about the statute, he
15   was involved in a lot of high-profile cases, he's worried that
16   his address -- and there are a lot of criminals out there that
17   he knew and they may be coming after him, some of them
18   threatened to -- when he testified in court against them, they
19   said, boy, when I get out, you're my number one victim, we're
20   going to go for you.  And then the guy asked his granddaughter
21   to send the notice for him --
22           MR. STIO:  But does the guy write the notice?  Does
23   the guy pick the address?
24           THE COURT:  So he asks his granddaughter, here's what
25   you got to do.  And the granddaughter -- look it up, Suzy.

1   Maybe you're a lawyer.  Look it up, do me a favor, send the

2   notice to protect your grandfather.

3         MR. STIO:  Does the granddaughter say, hey, grandpa,

4   why don't you give me a bunch of the people, the names on the

5   force, and let's collect all those and send them?

6         THE COURT:  I'm talking about this individual case.

7   Should I dismiss that complaint?

8         MR. STIO:  I don't think you would because the statute

9   provides for an authorized person in that situation to send it.

10  Here --

11        THE COURT:  All right.  Go ahead.

12        MR. STIO:  If you look at the Atlas service terms,

13  Atlas disclaims that they're an agent for any covered person.

14  Look at page 4.  Look at the service terms.  Their argument is

15  we're no different than an email platform provider, we're no

16  didn't than a common mail carrier, and that is complete

17  nonsense.

18        A common mail carrier and an email platform don't

19  draft the notices, they don't pick out who the email addresses

20  are sent to, they don't have the ability to say when they're

21  going to send it or how they're going to deliver it.  And the

22  email platform and the common mail carrier don't have a

23  significant financial interest in creating circumstances to

24  facilitate non-compliance.  That is what exists here.

25        If you look at plausibility, they have not alleged

1  that they provide the notice, that's the language.  And

2  quickly, Your Honor, and you've been more than patient, I do

3  appreciate this, I want to just cover the damages and

4  causation.

5          THE COURT:  Go ahead.  We're not under the clock.  You

6  have as much time as you need.

7          MR. STIO:  Thank you.  I appreciate your patience,

8  though.

9          Your Honor, under New Jersey law and the common law,

10  which Daniel's Law is based upon, there is a proximate cause

11  requirement.  And we touched on this, but the plaintiffs do not

12  allege any specific defendant caused any individual plaintiff

13  or an assignor an injury.  Right?  So similar to the violation

14  statute.

15          They don't allege proximate cause.  They allege strict

16  liability, and on that basis alone the claim fails.  They say a

17  violation of the statute is enough, but that is mixing up the

18  damages and proximate cause.  So we would say there is no

19  causation.

20          Actual damages, there are no actual damages alleged.

21  You cannot say that a violation of the statute alone is actual

22  damages without the allegation that the information is not

23  otherwise publicly available with regard to a privacy statute

24  to the extent that this is determined to be a privacy statute,

25  which is up on Third Circuit appeal.

```
 1              As to liquidated damages, Your Honor, liquidated
 2    damages --
 3              THE COURT:  Well, isn't it enough to say you suffered
 4    that, you have to say exactly what your damage was?  You have
 5    to say I had anxiety or I got a threat?
 6              What would they have to -- when you say they haven't
 7    stated actual damages --
 8              MR. STIO:  They haven't stated any damages.
 9              THE COURT:  -- how would you state that?
10              MR. STIO:  They haven't alleged any damages.  They
11    just say you violated the statute, you're liable, pay me a
12    thousand dollars for each violation.
13              THE COURT:  Okay.
14              MR. STIO:  They could say after it I continued to have
15    anxiety or I continued to have emotional -- they don't say any
16    of that.  And they don't dispute it in their opposition that
17    they don't allege actual damages.  They just say, well, you can
18    read it in.
19              Again, Daniel's Law does not relax the pleading
20    standards here.
21              THE COURT:  Well, let's assume somebody trespasses on
22    your property.  There's a tort for that, isn't there?  You
23    trespass on somebody's property, you can sue them for
24    trespassing on your property.  It's common law, now, okay.
25              What do you have to allege in that kind of a case in
```

1    terms of damages?  Somebody keeps running across your property

2    and you want to -- you sue them for damages.  That complaint

3    would be you have to show -- what do you have to show on that?

4              MR. STIO:  You have to show the -- that there's some

5    harm or proximate injury.

6              THE COURT:  Right.  So you can't simply say I'm

7    injured as a result, you have to specify in the complaint, your

8    view?  You have to say it's either you ruined my grass or I

9    suffered from anxiety, you running across my property, you're

10   just interfering with my bundle of rights to keep everybody

11   out.

12             MR. STIO:  You have to give plausible allegations.

13   And in your hypothetical, my neighbor has a son who hits a

14   wiffle ball on my front lawn, runs and gets it and runs back

15   off.  They bring a claim.  That complaint is not going

16   anywhere.  You're dismissing that if they just say trespass,

17   damage.  Those are legal conclusions.  They need some facts.

18             THE COURT:  Okay.  Go ahead.

19             MR. STIO:  Your Honor, on liquidated damages,

20   liquidated damages have to be a reasonable forecast of a

21   provable injury.

22             THE COURT:  Would you agree that there are a lot of

23   statutes out there that do provide for liquidated damages?  A

24   lot of consumer statutes provide that because it's often hard

25   to prove more than liquidated damages.

1           The statute is violated so Congress or the legislature

2    wants to provide a remedy --

3           MR. STIO:  Right.

4           THE COURT:  -- to prevent this type of thing from

5    happening, and also recognizing that the legislature or

6    Congress has decided this is an injury.  It may be hard to show

7    how you've been injured, but it's a psychic injury.  We don't

8    want people to have to deal with this in society, and

9    therefore, we provide liquidated damages as your remedy.

10   Otherwise, if you didn't have that, the statute would be

11   meaningless in many cases and people would violate it with

12   impunity.

13          MR. STIO:  So here's where -- I understand what you're

14   saying and here's what I would ask the Court to consider.

15   There are statutory damages and there are liquidated damages

16   and they're two different things.

17          Under your scenario the government could have said

18   there are statutory damages.  They didn't.  They said there are

19   liquidated damages.  And you look at the state common law to

20   determine what that is.

21          THE COURT:  What's the difference between statutory

22   damages and liquidated damages?

23          MR. STIO:  Statutory damages are violation of the

24   statute results in damages.  Liquidated damages are this is a

25   reasonable approximation of the actual damages you would suffer

1    from an injury with regard to the statute.

2            THE COURT:  Well, isn't that what statutory damages

3    are, the legislature is deciding this is the damage you would

4    be entitled to -- what is a statutory damage -- the legislature

5    is trying to determine what damages you would suffer.  You're

6    going to have a tough time proving it, so we're going to say

7    this is the damage you're entitled to.

8            MR. STIO:  But the courts and the case law say they're

9    two distinct concepts.  What we're doing here is rewriting the

10   statute.  The statute doesn't say statutory damages, it says

11   liquidated damages, which have a complete different meaning

12   than statutory damages.

13           And I would agree with you in instances where the

14   legislature has said we want to prevent something, they say --

15           THE COURT:  Which they clearly want to do that here.

16           MR. STIO:  But they didn't.  They say liquidated

17   damages.

18           All I'm trying to do is enforce the statute as

19   written.  And when there's liquidated damages there, the court

20   says you look at the common law.  New Jersey common law says

21   liquidated damages must be a reasonable proximation --

22           THE COURT:  So you're saying that -- if you're correct

23   and that goes by the board, then you're saying that they have

24   to prove actual damages?

25           MR. STIO:  They have to allege actual damages.  They

1    didn't.  And they would have to prove some sort of actual

2    damages, yeah.

3            THE COURT:  All right.

4            MR. STIO:  And then, Your Honor, finally, punitive

5    damages.  With punitive damages you need allegations of

6    intentional or willful non-compliance.  The plaintiffs have

7    alleged, well, because there was a violation for many months,

8    we were entitled to punitives.

9            Your Honor --

10           THE COURT:  So they do say that the violation

11   continued for a period of time, more than just a few days after

12   the ten days expired.

13           MR. STIO:  Here's why I think that's incorrect as to

14   what their allegations --

15           THE COURT:  All right.

16           MR. STIO:  The notices here are sent in December and

17   the first few weeks of January.  They start filing these

18   complaints in the beginning of February.

19           THE COURT:  Right.

20           MR. STIO:  What you have here is, at best, a two- to-

21   three-week period.  That's not intentional, that's not willful.

22   Could it be a violation of the statute --

23           THE COURT:  You're saying the notice was only two or

24   three weeks prior to the filing of the complaint.

25           MR. STIO:  When they filed the complaint, yeah.

```
 1          THE COURT:  So you're saying the time period is too
 2  short from which one could infer willfulness, that's what
 3  you're saying?
 4          MR. STIO:  Yeah.  I also don't think they confer
 5  willfulness on the way that these were delivered here, but
 6  yeah.  If you just look -- what they allege here -- and I don't
 7  think they do, but what they, at best, is February 4th,
 8  February 5th information was available.  We're not going to
 9  tell you whose it was, we're not going to tell what it was,
10  we're not going to tell you how many people, but it was
11  available.
12          THE COURT:  Now, you also -- I don't know what -- I
13  think you may have covered it briefly, this business about
14  there's a presumption when something is sent by mail that it's
15  received and there's no presumption if it's done by email, is
16  that your -- that's your argument?
17          MR. STIO:  My argument there, Your Honor, is there can
18  be a presumption if it's done by email, but the cases that they
19  cite and all the cases have found it only after there is
20  evidence that, A, it's a reliable email delivery, emails have
21  been sent and have been received in the past.
22          THE COURT:  Right.  But isn't that -- that's
23  determined during the discovery period.  You can't tell that
24  from a complaint.
25          MR. STIO:  Well, if you're going to say we don't have
```

1  to comply with the statute because the specific statutory

2  language just says received.  They need to say the email system

3  was sent emails and they were received in the past, or they

4  have to say it functions as X, Y, and Z and is reliable.  They

5  don't say that.

6        All the cases that are in the brief talk about

7  advanced evidence that there's reliability to the system.  And

8  here --

9        THE COURT:  Is that in the complaint or is that later

10 on?

11       MR. STIO:  There's not a single case that they cited

12 that involves --

13       THE COURT:  No, I'm asking you, is this a pleading

14 requirement or is this something that is a matter of proof

15 later on?

16       In other words, you get into discovery and there's

17 talk about -- and there's no evidence that it was received,

18 that's one thing.  But does that have to be pleaded in the

19 complaint, all this information that you're talking about?

20       MR. STIO:  So under Daniel's Law, the statute

21 expressly says received.

22       THE COURT:  Right.

23       MR. STIO:  So I would say yes, Your Honor, it has to

24 be alleged.  They're saying we don't have to allege it because

25 there's a rebuttable presumption that --

```
 1          THE COURT:  Right.
 2          MR. STIO:  And I'm saying the cases you're relying
 3  upon to excuse you from this element, none of them were used at
 4  the pleading stage and all of them required evidence of a
 5  reliable email platform or emails from that platform that
 6  traditionally have been sent and received.  Nowhere --
 7          THE COURT:  The cases you cite, are they on a motion
 8  to dismiss?  I must say I don't know at the moment.
 9          MR. STIO:  No, I didn't cite any.  They did.  And I'm
10  telling you that none of those cases --
11          THE COURT:  How about the cases you cite?  Do you cite
12  any cases?
13          MR. STIO:  Let me look.
14          THE COURT:  I don't know whether they're at the motion
15  to dismiss stage or whether they're summary judgement stage or
16  what.
17          MR. STIO:  Your Honor, our arguments for this is just
18  these are the elements, this is what the statute requires, look
19  at the expressed language of the statute, they don't allege it.
20          THE COURT:  All right.  Well, we can check that.
21          MR. STIO:  Your Honor, unless you have questions for
22  me, I am grateful for your time and --
23          THE COURT:  Thank you.  And we'll hear from anybody
24  else who can further illuminate this on the defense side.
25          Yes.  Good morning.
```

```
 1          MS. PURCARO:  Good morning, Your Honor, Kelly Purcaro,
 2   I represent nine of the defendants that are before Your Honor,
 3   including two of the recently removed.
 4          I just wanted to take a moment to answer some of the
 5   questions that you had posed.  So you were talking about if
 6   there was an accident and someone was hit and what the
 7   allegations need to be and how that's different here.
 8          In a complaint like that -- I used to do personal
 9   injury back in the day -- you would say the date of the
10   accident in the complaint and you would give facts of what the
11   defendant did that give rise to the claim.
12          THE COURT:  Right.
13          MS. PURCARO:  In this case, in all of these cases
14   there's no date of accident, there's no date of receipt, and
15   there's no allegation of what the defendants did.  So this is
16   not a people search case.  I have --
17          THE COURT:  Well, it's not a question of what the
18   defendants did, it's the question of what they didn't do.
19          MS. PURCARO:  And when.  And when.  So if you'll
20   recall, when -- I think it was last May, I stood up here and
21   asked Your Honor to give us a list of the persons that
22   supposedly made the request because many of my defendants had
23   never received them.  And we had tried for months to get a list
24   of the people regardless if they're covered or not.  We don't
25   want to contact them, we don't want to send them postcards, we
```

1    don't want to give them mailers, right --

2            THE COURT:  And did you get that information?

3            MS. PURCARO:  And after Your Honor ordered that

4    information to be turned over, we received the information.

5            THE COURT:  Right.

6            MS. PURCARO:  That's why it's so important to allege

7    that the defendants received the notice.  Because of how these

8    notices were sent, they were sent in mass quantities -- and a

9    lot of my clients are small businesses and they get maybe 200

10   emails a week.  Now all of a sudden, midnight, New Year's Day,

11   19,000 or more emails are coming in, it shut down the system.

12   We didn't know who these people were, some of them -- and I

13   talked to dozens of defendants, some of whom could not afford a

14   defense, that said I don't know why I'm being sued, I never

15   received anything, what is this?

16           So that's why you have to allege what we did and what

17   the date is.  You cannot have a violation of Daniel's Law if

18   you've never received a request.  So you have to say when the

19   request was and then you have to say when the ten days

20   expired.

21           THE COURT:  Okay.  Did they --

22           MS. PURCARO:  So none of that is alleged here.

23           THE COURT:  All right.  I understand that they gave

24   you the names of the individuals, correct?  The assignors, the

25   covered persons, correct?

```
1            MS. PURCARO:  Sure, yeah.

2            THE COURT:  What other information did they give you?

3    Did they give you the date that they were sent?

4            MS. PURCARO:  No.  It was Excel spreadsheets with a

5    name and then sometimes one, two, three, four different

6    addresses.  So which one is the home address, we don't know.  A

7    name and maybe one phone number and no address.  The same name

8    four times with four different -- so nothing about the date

9    anything was received, nothing about which information was

10   requested, nothing about when it was requested.

11           And so by way of illustration, some of the -- this is

12   not an email case.  This is not an internet case.  We have 150,

13   180 cases out there.  Most of my clients are not people search

14   folks.  Some of them do mailers or business-to-business

15   marketing, so they don't offer a service where you can go on

16   the internet and put in someone's name.

17           So like I have one person who said to me I haven't

18   even mailed anything to New Jersey.  Like, who did I -- how is

19   there 19,000 people suing me?  What do I have to look at?

20   Which mailers?  On what date?  And I don't know because there's

21   no allegation of what you did and when.  It doesn't say the

22   date of the accident or that you hit me, right?

23           So if I'm someone that's a business that doesn't offer

24   people search, by way of example, and I have a complaint that

25   says we sent emails to you around this day for 19,000 people
```

1  and you're still disclosing -- that's what the complaint

2  says -- I can't tell my client what it is they did and when

3  they did it and what their exposure is here.

4         How many -- is it two people that I sent a postcard to

5  or is it 19,000 or is it did I send five?  Okay.  At least give

6  me one or two examples of the date I received something and

7  when the ten days expired and then how I violated it even

8  generally.  Like, you don't have to say exactly how the

9  defendant in your case was negligent in causing the accident,

10  right, but your example said he was going 90 miles an hour and

11  went through -- okay, so what did I do?  Is it because I still

12  have a list, like a do-not-call list internally?

13         Because disclosed, right, can also mean to have a

14  list, whether it's searched or not.  That's what the law says.

15         So if I -- am I being sued -- and is that negligent?

16  I don't know.  There's not enough facts here to say --

17  negligent, you can't even glean.  There's no facts.  So when I

18  talked to my postcard mailing company, I still can't say, over

19  a year and a half later, what it is you did that was wrong and

20  how to avoid doing it again because you never received anything

21  in the first place and you don't know who you mailed to that

22  you weren't supposed to mail to and you don't have phone

23  numbers in your system.

24         There's just not enough facts here to state a claim of

25  a violation.  Now, if it was just me and I sent a request for

1  my mom, and she worked for DYFS.  And I said, my mom doesn't

2  want you to use her address.  I could tell you that I sent that

3  email on X day, I got a return, a read receipt email so I know

4  they received it this day.  And then I looked on, you know, 12

5  days after the read receipt and my mom's address is still

6  there.  That's a violation.  Now we know what you did wrong.

7  And if it was 20 days after or if I sent you three requests or

8  whatever, okay, maybe you can glean negligence.

9          Like, this lady asked you how many times and you're

10  still publishing her information?  That might be negligent.  I

11  don't know.  Maybe it wasn't on midnight on New Year's Day.

12  And so, you know, negligence -- there are more extenuating

13  circumstances.

14          The point is that in this case there are not enough

15  facts to state a claim.  And so we don't have a date of

16  accident, we don't have speeding, we don't know what we did

17  wrong.  And everyone keeps saying about the people search.  And

18  listen, I don't want to be searched either.  I don't even --

19  whether you are a covered person or not, if you don't want

20  people to have your address, most of my clients say, okay, we

21  won't mail you a postcard then.  You don't have to get ten

22  percent off your landscaping, right, if you don't want it.  But

23  I have to know about it.

24          And these are not just people search, these are

25  business-to-business marketing, these are defendants that have

```
 1   a right.  And the plaintiffs have an obligation to allege all
 2   of the elements of the claim, and so you have to say we
 3   received a notice, you have to say when the ten days expired,
 4   and then you have to say at least generally something about
 5   some of the people, how we didn't do what we were supposed to
 6   do.  And it's just not here.  And so on the face of the
 7   complaints they fail.
 8          And I don't think it's appropriate or acceptable to
 9   this court or any court to just add a sentence and say, well,
10   negligent -- I think there needs to be some obligation of
11   counsel to look into the facts of each situation and have at
12   least some idea of what may have been negligent and to give us
13   some information about it.  That's the requirement.
14          You can't just simply add a sentence.  So I can't go
15   back to my postcard lady and say, well, you were just negligent
16   but you have no idea why.  And that's what we're dealing with
17   here, Your Honor.
18          THE COURT:  Thank you very much.
19          Anyone else?
20          MR. SZYBA:  Your Honor, I can address the issue of
21   extraterritoriality if the Court would --
22          THE COURT:  No, we're still dealing with pleading and
23   we'll get to extraterritoriality in a minute.
24          Good morning.
25          MS. SOUTHALL:  Good morning, Your Honor, Samantha
```

1   Southall of Buchanan Ingersoll & Rooney for Defendants Zillow

2   Group and Zillow Inc.

3          THE COURT:  Thank you.

4          MS. SOUTHALL:  So we talked a lot about implausibility

5   and for Zillow the issue is slightly different.  If you go --

6   there are two websites that plaintiffs identify in their

7   complaint as to the Zillow defendants, Zillow.com and Zillow

8   Group Inc.  When you go to Zillow.com, we see home display ads.

9   We all like it, we all search up things in our neighborhood,

10  places we might want to move when we're on vacation, but on

11  Zillow.com what is not disclosed is who lives in a house or who

12  owns a house, what is not disclosed is a phone number.

13         What you do see is the property's address, facts about

14  the property, price history, the tax history, recent sales.

15  Plaintiffs' complaint doesn't identify any people who live in

16  the houses, any phone numbers, and they can see it as much in

17  their opposition papers.

18         Zillow Group's website is the corporate website,

19  contains information about investor information, who works

20  there, things of that nature.

21         THE COURT:  But isn't all that a matter for discovery?

22  In other words, you tell us what your company does -- and you

23  may be absolutely right, I'm not challenging you on that.  But

24  doesn't that come after you deny the allegations and then you

25  take discovery and you move for summary judgement?

1          It's sort of -- I mean, I sympathize with any

2    defendant who says you've got the wrong party or it wasn't me

3    or -- I just don't -- we're not even in the same ballpark here

4    with what the statute's involved with, and that will come out

5    in discovery.

6          Now, I know that's expensive and the matter is

7    prolonged, but isn't that sort of the nature of the system, for

8    me to make a decision as to what your company does as opposed

9    to what other companies do.  And maybe you're absolutely right,

10   it just doesn't fit the situation here.

11         So how can I do that at this stage because I'm -- I

12   have to be limited by the four corners of the complaint.  And

13   what you're telling me is not in the complaint and it's

14   something outside the complaint really, isn't it?  It's like

15   you filing an affidavit and moving quickly for summary

16   judgement.  Saying, listen, this is what we do, and the

17   plaintiffs may not be able to contest it and you would be

18   entitled to summary judgement.

19         MS. SOUTHALL:  Typically that is the case.  But, Your

20   Honor, here, the only facts pled to my clients are here's your

21   websites, this is where you're making disclosures.  The website

22   is integral to their complaint, they have put it at issue, and

23   this Court can take judicial notice of the contents of the

24   website.

25         THE COURT:  But see, doesn't the Court have to be

1    careful about -- it's one thing if you're talking about an

2    undisputed -- a contract case.  An undisputed contract, the

3    plaintiff claims breach of contract, doesn't attach the

4    contract, the parties produce it, there's no dispute as to the

5    contract and I can look at that.  Or if it's a matter of

6    something of public record.  I mean, when is George

7    Washington's birthday, you know, something that nobody should

8    dispute.

9          But here, I mean, it may have your name on the

10   website, but how do I know that -- I mean, you tell me that's

11   the website but can I really without -- I'm not impugning your

12   integrity one minute, but how can I -- isn't that a slippery

13   slope for the Court to start doing that, to look at websites?

14   And it may have the name, maybe there's another website that

15   your company has and -- I mean, it's all -- as sympathetic as I

16   am with trying to get rid of nuisance cases or cases which have

17   no merit, it's really a -- I don't know that I can do that.

18         MS. SOUTHALL:  I hear what you're saying, but the two

19   breadcrumbs that these plaintiffs gave us were the names of our

20   two websites.  And in their opposition papers, plaintiffs don't

21   say, hey, this part is Zillow.com discloses names and

22   addresses, discloses names and phone numbers.

23         THE COURT:  And then, of course, you have the problem

24   I looked at the website today, I don't know what it said back

25   the day the complaint was filed.  I mean, it gets -- again,

1    without trying to impugn anybody's integrity, it really --

2          MS. SOUTHALL:  I hear you.

3          THE COURT:  It's a problem.  And as much as I

4    sympathize with what you're saying --

5          MS. SOUTHALL:  I hear you.  I mean, here's the issue

6    for our clients.  Discovery is going to be onerous.  There's

7    cases pending in North Jersey, plaintiffs have served 70-plus

8    document requests, tens of interrogatories.  It will be

9    incredibly expensive, incredibly onerous.  And if you're at the

10   wrong place at the wrong time, which is what happened with our

11   clients -- and plaintiffs haven't identified any facts to say

12   why we belong in this courthouse, why we violated the statute.

13         THE COURT:  Again, this is a little bit off the

14   subject of today.  If this is really so and that your company

15   is just -- you know, you pick up the telephone --

16         MS. SOUTHALL:  We tried.

17         THE COURT:  -- and try to work it out.  It just seems

18   to me if you're right, it really is kind of a waste of time for

19   everybody and a waste of the Court's time if the plaintiffs are

20   doing that.  So that will --

21         MS. SOUTHALL:  And we did.

22         THE COURT:  And whether or not we can maybe have a

23   procedure where a company like yours can file a quick motion

24   for summary judgement so that -- I mean, it's going to be a lot

25   of work for everybody, under the rules you can do it pretty

1    quickly and file your affidavit.

2         I'm not passing judgement on that, but I'm just trying

3    to -- because we all have to remember Rule 1, just, speedy, and

4    inexpensive determination of cases, a rule that's often

5    overlooked.  And as I say, if the plaintiffs are doing that,

6    maybe this is a ripe type of case -- certainly not going to

7    apply in every case because businesses are all different in

8    these 35, 40, 50 cases.

9         MS. SOUTHALL:  No.  And, Your Honor, I did pick up the

10   phone a year and a half -- or about a year ago.

11        One other thing on the list of the assignees that

12   plaintiffs have provided pursuant to Your Honor's order, I was

13   just looking at our list while sitting back there.  We had

14   16,000 before deduplication.  So the list of assignees that are

15   provided are not lining up with the list of assignees who are

16   at issue in this litigation.  That's just for me.  I'm sure

17   there are others in different situations.  So I think at a

18   minimum, each defendant needs to know who's bringing that claim

19   against them.

20        THE COURT:  I thought that was the purpose of our

21   conference many, many months ago --

22        MS. SOUTHALL:  So did I.

23        THE COURT:  -- that the plaintiffs would be providing

24   you with the names of the individuals sent notices or were

25   authorized, authorized somebody to send them on their behalf,

1  so that you would have the list of 19,000 or 16,000, whoever it

2  is.

3          And you're telling me you haven't gotten that?

4          MS. SOUTHALL:  No, no, I have the list.  But what I'm

5  saying is there's a difference in the list that was provided --

6  it's about 2,500 fewer people than who are alleged in my

7  complaint as having assigned --

8          THE COURT:  Well, the complaint doesn't give the

9  names, it says --

10          MS. SOUTHALL:  No, but it gives me numbers.

11          THE COURT:  So the complaint, 19,000 approximately.

12          MS. SOUTHALL:  Right.

13          THE COURT:  And you've gotten 16,000 --

14          MS. SOUTHALL:  Before deduplication.  I'm guessing it

15  will come down a little bit just --

16          THE COURT:  So you're talking about 16,000.

17          MS. SOUTHALL:  Right.  That's a significant delta.

18          THE COURT:  Right.  So you certainly could -- you rely

19  on the 16,000 -- there are not 19,000 in your case, there's

20  16,000?

21          MS. SOUTHALL:  One would hope.

22          THE COURT:  So what are you telling me?

23          MS. SOUTHALL:  I'm saying that at the end of the day,

24  my clients don't know -- as Ms. Purcaro said, we don't know

25  what we did, how we violated the statute and how we can fix it

1   going forward, and I think we're entitled to know that from the

2   complaints.  Thank you.

3           THE COURT:  All right.  Anyone else from the defense

4   side on this?  And then we're going to take a break, give the

5   court reporter a little break, and then we'll hear from the

6   plaintiff.  Then we'll have extraterritoriality after this.

7           Go ahead.  Good morning.

8           MR. SPAK:  Good morning, Your Honor, Jason Spak, I'm

9   with FisherBroyles LLP, and I represent a company called

10  Innovis.  Essentially, Innovis is in the same position as

11  Ms. Southall's clients, Zillow, which is that it has a website

12  that is listed in the complaint that is allegedly the locust of

13  telling the world that Officer Jane Jones lives at 123 Main

14  Street in Camden.

15          THE COURT:  Right, right.

16          MR. SPAK:  And if anyone affiliated with the court at

17  any time went to Innovis.com, it would find in 90 seconds that

18  that's not true.  You can't go to Innovis.com and find out

19  somebody's home address, nor could you find out their phone

20  number.

21          So -- and I understand what the Court just said to

22  Ms. Southall, which is maybe in a situation like that you file

23  a quick motion for summary judgement.  If that's what the Court

24  says that we have to do, we can do it --

25          THE COURT:  We can talk about that later.  I'm just

1    raising that now because we want to proceed in an orderly

2    fashion in these cases, there are a lot of them.

3         MR. SPAK:  Sure.  I just want to present as a

4    hypothetical for the purposes of why it's appropriate to grant

5    a motion to dismiss in a circumstance like this.  Suppose --

6    this is kind of like the negligent driver case.  Suppose

7    there's a series of class actions alleging that I represent a

8    class of New Jersey consumers who ordered coffee at a

9    restaurant and got saw dust and water.  And they went to

10   McDonald's up on Federal Street, saw dust and water.  They went

11   to Dunkin Donuts, saw dust and water.  They went to the

12   7-Eleven around the corner from the courthouse, saw dust and

13   water.  They also went to Anheuser-Busch company, St. Louis,

14   Missouri, saw dust and water.

15        The Court would say, wait a second, using my common

16   sense and judicial experience, I know that the Anheuser-Busch

17   company in St. Louis, Missouri doesn't even sell coffee, no one

18   would go to --

19        THE COURT:  Well, even assuming that is correct that I

20   can take judicial notice about Anheuser-Busch, I'm not sure

21   that I could take judicial notice of what your company does

22   because at least, as far as I'm concerned, it's not as well

23   known to me as the name Anheuser-Busch.

24        MR. SPAK:  Agreed.  That is the issue.  I would

25   submit, number one, they've put it at issue in the complaint --

```
 1              THE COURT:  By the way, I don't know whether
 2    Anheuser-Busch sells coffee or not.
 3              (Laughter.)
 4              MR. SPAK:  If it helps, in plaintiffs' response to
 5    Innovis's motion to dismiss, they cite more pages of our
 6    website.  And we, in our reply brief, refer back to those.
 7    There isn't any dispute, I don't think, between Plaintiff Atlas
 8    and my company about what it is that we do.  We alleged a lot
 9    in our motion to dismiss that we're a consumer reporting
10    company.  In their response brief they explain why as a
11    consumer reporting company they think that the Fair Credit
12    Reporting Act doesn't apply.
13              But the issue here, what does Innovis do and what does
14    their website say, is not in dispute.  They put it at issue in
15    the complaint, we referred back to it in our answer, they cite
16    pages of it as exhibits in their response.  I don't think this
17    is one of those cases where the Court has to be as weary as
18    they normally --
19              THE COURT:  So you're saying, as your predecessor
20    standing here said, that you say in some situations looking at
21    the website is going to make it obvious that this statute
22    simply doesn't apply to the situation, that you don't have home
23    addresses --
24              MR. SPAK:  Yes, Your Honor.
25              THE COURT:  You don't attach a home address with a
```

1   name and you don't attach a home phone number with a name.  So

2   that's the question, whether that can be done, taking into

3   account the limitations put on motions to dismiss by the

4   Supreme Court, the court of appeals and --

5           (Simultaneous speakers.)

6           MR. SPAK:  That's right.  I think it's an interesting

7   question of law in the sense that there's a lot of law that

8   says if you put something at issue in a complaint -- and Your

9   Honor gave the example earlier of an undisputed contract -- if

10  you put it at issue in the complaint, the defendant attaches it

11  in their motion to dismiss, can the Court consider it?

12  Everyone says yes.

13          THE COURT:  Of course.  I think that's pretty well

14  established, and the facts of which I can take judicial notice.

15          MR. SPAK:  Sure.  And the question is, is the website

16  like that or is it not like that?

17          And there isn't a ton of Third Circuit law on that

18  point, but we're both citing the same cases.  The lead case

19  from the Third Circuit is called *Victaulic.*  And I would submit

20  that if the Court reads those cases, they will find that in a

21  situation like this or in the Zillow case --

22          THE COURT:  That case from the Third Circuit says

23  what, *Victaulic*?

24          MR. SPAK:  They say that the reason to be careful with

25  websites that are listed in the complaint is if they are used

1   by the plaintiff to prove the plaintiff's allegations.

2          THE COURT:  And you're saying that case does permit a

3   court to take into account the content of a website on a motion

4   to dismiss under 12(b)(6)?

5          MR. SPAK:  Other way around.  The *Victaulic* case the

6   Third Circuit said if a plaintiff is using the plaintiff's own

7   website to prove the allegations in their --

8          THE COURT:  Oh, the plaintiff is using its own

9   website?

10         MR. SPAK:  Correct.

11         THE COURT:  Oh, well, that's different than this case.

12         MR. SPAK:  Right.

13         THE COURT:  We're talking about the defendant's

14  website.

15         MR. SPAK:  Right.  I tried to find every case in the

16  Third Circuit where there was a website at issue and cite it.

17  There aren't many, but there are a few --

18         THE COURT:  But was that on a motion to dismiss?

19         MR. SPAK:  Yes.

20         THE COURT:  So what happened?  The district court

21  obviously dismissed the complaint, so it went to the court of

22  appeals, and there was a discussion about the plaintiff's

23  website being something that the court could consider?

24         MR. SPAK:  I'm not being as clear as I should.

25  There have been a couple of district court cases in which

1  websites have come up, both plaintiffs' websites and defense

2  websites.

3          THE COURT:  This is on a motion to dismiss?

4          MR. SPAK:  On a motion to dismiss.  Because otherwise,

5  why bother to cite a case?

6          THE COURT:  Right.

7          MR. SPAK:  It's very easy to cite all these summary

8  judgement cases on a motion to dismiss.  Different standard, I

9  get it.

10          THE COURT:  Right.  That happens a lot.

11          MR. SPAK:  I've been guilty of it.  I learned the hard

12  way.

13          In some of those cases -- in one of those cases the

14  plaintiff cited the plaintiff's own website.  Defendant said,

15  hey, why does the plaintiff get to cite his own website to

16  prove his complaint against me?  That went up to the Third

17  Circuit.  The Third Circuit said, no me gusta, don't do that,

18  you can't allow a plaintiff to possibly fabricate a website and

19  then file a complaint based on it.

20          However, there are a couple of district court cases

21  that have not reached the Third Circuit in which a defendant's

22  own website or a website cited by the plaintiff and used as a

23  way of proving the claim, or I guess making out the facts of

24  the claim against the defendant, the Court was willing to take

25  a look at it and use it to rule on a motion to dismiss and

```
 1    grant the motion.

 2           THE COURT:  Grant the motion to dismiss?

 3           MR. SPAK:  Correct.

 4           THE COURT:  But looking at the plaintiff -- looking at

 5    the defendant's website which was cited by the plaintiff?

 6           MR. SPAK:  In one of those cases, yes.  Like I said,

 7    there's not a lot of law and I don't --

 8           THE COURT:  So plaintiff cites defendant's website in

 9    its complaint, defendant moves to dismiss, and the district

10    court says the website can be considered because the plaintiff

11    cited the defendant's website, and the district court dismissed

12    the complaint?

13           MR. SPAK:  In one of the cases that's right.  The

14    allegation was that the defendant had defamed the plaintiff and

15    did so in videos that were uploaded to the defendant's own

16    website.  And the district court looked at the website, looked

17    at the videos, said that's not defamation and dismissed the

18    complaint.

19           And like I said, there's -- it's a new area and I

20    wouldn't blame the Court for being weary, sheary, whatever

21    synonym you want to use, but I think in this case, especially

22    where they're citing pages of their own website in their

23    response brief or where Zillow is a household name and its

24    website is well known, the Court can go ahead and look at those

25    two websites, Zillow.com and Innovis.com and -- it will take
```

```
 1   90 seconds and you'll see -- any of you affiliated with the
 2   court will see you cannot find your name or your name or my
 3   name on Innovis.com.  Can't do it, can't find my address.
 4   That's all.
 5            THE COURT:  All right.
 6            MR. SPAK:  Thank you, Your Honor.
 7            MR. STIO:  Can I say just one thing?
 8            THE COURT:  Yes, and we've got to give her a break.
 9            MR. STIO:  Just on that point.  Footnote 7 of our
10   moving brief has two cases where courts have taken judicial
11   notice of a website cited in a complaint on a motion to
12   dismiss.  I can give you the cites if you want, but
13   it's footnote 7.
14            THE COURT:  Footnote 7.  Very good.
15            All right.  We're going to take a ten-minute break at
16   this point.
17            THE COURTROOM DEPUTY:  All rise.
18            (Brief recess taken from 11:33 a.m. to 11:44 a.m.)
19            THE COURT:  You may be seated.
20            All right.  We'll last hear from the plaintiff.
21            MR. PARIKH:  Thank you, Your Honor.  Rajiv Parikh on
22   behalf of the plaintiffs.
23            THE COURT:  Before you start, what about those recent
24   cases that were discussed here about the business and providing
25   the information about real estate and people, you can't get
```

1    somebody's name there if -- what about that?

2        MR. PARIKH:  Yeah.  So, Your Honor, the defendants

3    here are trying to narrow what it is that the law says which --

4    and kind of have the Court interpret the law in a way other

5    than what is written.  Business-to-business exchanges, in

6    addition to business and consumer exchanges are all covered by

7    Daniel's Law.

8        And so when we talk about Zillow Group, for example.

9    The reference to their website -- and if we look at the

10   paragraph in the complaint, which on the sample I'm looking at

11   here, which is I think is paragraph 33, it says:  Defendants

12   offer and engage in the disclosure of data and information

13   through one or more websites, applications, or mailing lists or

14   otherwise in New Jersey and to businesses and individuals who

15   operate or reside in New Jersey.  Those websites include -- and

16   then it has the website address.

17       So it's not -- it's not an allegation only that the

18   information is being disclosed through a public searchable

19   website.  As you've heard from the defendants, there are

20   multiple categories of businesses here.  There are ones that

21   are people search websites where you can go and find it.

22       But in the Zillow Group, for example, they have an

23   automated processing interface, an API.  So it's something that

24   allows realtors, for example, to be able to pull information

25   from Zillow's database that includes name and home address

1   information.  And that could be home address as a street

2   address or home address as latitude/longitude or a parcel

3   number or tax ID number, other things that identify the actual

4   home.

5            And so when the covered persons here sent their

6   notices, their non-disclosure notices to Zillow, the idea is

7   and the concept and the framing of the law is that Zillow then

8   needed to suppress that information and not make it available

9   and not --

10            THE COURT:  Suppress what?  Not the picture of the

11   house?

12            MR. PARIKH:  No.  Well, in some circumstances it could

13   be the picture of the house if there is other identifying

14   information there.  Because the definition of home address is

15   not only a street address, it could go beyond that.

16            But for purposes of the pleading standard and for this

17   motion, Zillow needed to no longer include the 19 -- you know,

18   who sent the individual non-disclosure address, needed to take

19   the name and home address and suppress that information and not

20   make it available through their API.

21            THE COURT:  But you go on the website -- I haven't

22   done it -- you're looking for a house in Camden County or a

23   particular township, so you can zero in and you can look at the

24   houses, correct?

25            MR. PARIKH:  Correct.

```
 1              THE COURT:  And you know what the address of the house

 2    is.

 3              MR. PARIKH:  Correct.

 4              THE COURT:  But they don't identify that it's owned by

 5    John Jones?

 6              MR. PARIKH:  On the public-facing website, that is

 7    correct, Your Honor.

 8              THE COURT:  So what -- do they have that information?

 9    In other words, the realtor goes on and looks at the house or I

10    go on, I want to buy a house in that area, I look at the house,

11    I guess I could take a picture, I know the address, then what

12    happens?  What further information could I get from Zillow?

13              MR. PARIKH:  Right.  So with respect to Zillow -- and

14    this is where I say they want to narrow the argument:  What

15    Zillow publishes on its website is not where they disclose

16    information in violation of Daniel's Law.  It is through a

17    computer application that they provide to individuals, and in

18    that computer application -- so I'll give an example, Judge,

19    that it's on information and belief from me.  I haven't looked

20    at the API for Zillow particularly, although we do have actual

21    evidence of non-compliance, otherwise we wouldn't have filed a

22    complaint.

23              But with respect to Zillow, let's assume I was a

24    realtor, Zillow offers services to realtors.  So if I want to

25    know in Toms River, New Jersey, where there might be some leads
```

1  of people who recently retired or who might want to sell their

2  home, they're going to provide me with the name of the home

3  owner, the address of the home, as well as maybe what the

4  property tax information is, other information like that.

5        THE COURT:  So let's start with the realtor looks on

6  the website and sees a house you say in Toms River, looks like

7  a great house.  I guess these are -- these aren't houses

8  necessarily for sale, these are just pictures of property?

9        MR. PARIKH:  In my example, I don't think the realtor

10  would even go to a website.  The realtor would go to a specific

11  computer software program or portal that Zillow offers, that

12  they can then log into to get that information.

13        THE COURT:  Let's just say they're talking about the

14  website that you cite, apparently, you see a picture of a

15  house.  And I like the house, it's great, it gives the

16  information of the house.  Now, maybe I want more information.

17  Would Zillow be able to provide that for me, provide who owns

18  it, I assume they could also tell you maybe what the taxes are,

19  I assume that's on the website, when it was last sold, what the

20  age of it is, how many rooms in the house, what the square

21  footage is and so forth.

22        But you're saying that Zillow would be able to provide

23  the name of the owner?

24        MR. PARIKH:  Not only that they could, but that they

25  do.

```
1              THE COURT:  They do.

2              MR. PARIKH:  Correct.

3              THE COURT:  So in that sense, they would be able to

4    link the name of the -- I'll call it the covered person -- with

5    a particular address?

6              MR. PARIKH:  That's correct.  And they do through this

7    API that they offer.  And Innovis similarly.

8              So when we cite the websites, Your Honor, I think a

9    lot of the defendants have gotten up here to say, well, if you

10   look at our website, you can't even find anything, but what

11   they don't say is that when you look at their website, the

12   website actually explains so much information about what amount

13   of information they have available, what data they provide and

14   what products they provide that --

15             THE COURT:  So in other words, you look at the

16   website, it wouldn't just show the picture of the house,

17   according to you, but they have a lot of other information to

18   say if you want more information about this beautiful house, we

19   have it for you, so you can log in or you call us or you do

20   whatever you have to do on the computer and you can -- you're

21   saying you can pull up the name of the owner?

22             MR. PARIKH:  That's right, Judge.  So -- like if we

23   go, for example, to the Zillow Group website -- I'm trying to

24   see if I can pull it up.  This is not a website that -- I think

25   as counsel said, you know, I'm going to show it to you here on
```

```
 1   my iPad, Judge, but it doesn't have a search function on this
 2   website itself, but it explains that, hey, we offer these
 3   tools, and so when you sign up with us you have a tool --
 4           THE COURT:  That you pay for --
 5           MR. PARIKH:  -- that you pay for, or whatever it may
 6   be, but we provide this information, including in this case,
 7   property information --
 8           THE COURT:  So they're doing it in a sense indirectly.
 9   They may not have it on the website, it's owned by John Jones,
10   but if you want more information about it, here's how you can
11   get it from us?
12           MR. PARIKH:  That's right.  And Innovis is similar,
13   Judge.  We agree, Innovis has products that are covered by
14   FCRA, but they also on their website advertise that they have
15   research lists, mailing lists, et cetera, that are not FCRA
16   covered.  So they're providing home address, phone number, and
17   name information as part of their non-FCRA covered products.
18           So when we reference their website, to the extent that
19   the Court wants to take judicial notice of those websites, I
20   don't think it actually provides the basis that the defendants
21   are saying to grant a 12(b)(6) motion.  I actually think it
22   creates more fact issues and supplements the allegations in the
23   complaint to say look at all of these products that Innovis
24   advertises and openly says, hey, we sell and can give you this
25   information.
```

1          When we look at other defendants, I think one of the

2   lawyers got up here earlier to say my client sends postcards,

3   they send mailings.  When you go to some of the websites on

4   those -- and I can use Mr. Stio's client, DM Group as the

5   example -- they actually have on their website the ability to

6   pull a data card, meaning a list, on law enforcement.

7          So they openly sell a list of home addresses of law

8   enforcement for marketing purposes, and that's one of the

9   verticals that they offer.  So when we talk about the websites,

10  it is not just because there are some defendants where people

11  search information is available, but it's because the services

12  that they offer and the depth of the services that they offer

13  are relevant to the claims here.

14         So if a defendant says we have information on 230

15  million Americans and we can sell you a list of law

16  enforcement, well, that is directly related to the allegations

17  in this case.

18         THE COURT:  All right.  We sort of got off --

19         MR. PARIKH:  Absolutely, Judge.  And I think that was

20  an important issue because underlying all of this, Judge, is

21  the idea of business-to-business transfers are covered.  And

22  while the arguments from the defendants are much about each of

23  the elements of the claims, they focus in specifically on the

24  notion that it's only places that you can go and search on the

25  internet.

```
 1          But we know from examples, Judge Wilkinson in Maryland
 2   was murdered by a litigant in his court who had a marketing
 3   business.  And we know obviously what happened in the Midwest
 4   this weekend with somebody that owned a security company.
 5          So the reason the law covers not just public-facing
 6   people search websites, but also business to business is
 7   because the bad actors here are all people.  Right?  The
 8   person, the lawyer who shot Danny Anderl was a lawyer, he was a
 9   litigant.  So he had a law firm.
10          So when we talk about business-to-business transfers
11   and access to information, the law is designed to suppress all
12   of that, that all of the businesses and associations that have
13   this type of information should no longer disclose it to create
14   the privacy and security rights that the law is designed to
15   affect.
16          THE COURT:  Go ahead.
17          MR. PARIKH:  So when we talk about -- and I think Your
18   Honor is spot on and I think Your Honor's questions this
19   morning really demonstrate that Your Honor understands that
20   each of the elements here have been satisfied.
21          And I don't want to -- I know we've had a lot of
22   arguments from defendants, I don't want to belabor all of the
23   points, but when we talk about each of kind of the elements of
24   the case, it is clear that the covered persons here are either
25   judges, prosecutors, law enforcement, or their families.  That
```

1   is a fact issue.

2          If someone is claimed to not be a covered person,

3   that's an affirmative defense that the defendants can raise and

4   we can have discovery on.  And if they say, oh, well, you know,

5   Suzy, who is the granddaughter of the police officer, doesn't

6   live at the same home address but put a request in, then they

7   may have an argument to say, well, Suzy is not a covered

8   person, she doesn't reside at the same address, and the case

9   against her would have to be dismissed.

10          In addition, when the defendants focus in on what they

11   call plausibility and pleading defects, they ignore so much

12   more in the complaint.  The complaint goes painstakingly

13   through details of what law enforcement unions Atlas was

14   working with at the time of filing, how it is that when people

15   sign up through the Atlas platform they have to provide

16   information about how they're a covered person.

17          So when we talk about whether or not the plaintiffs

18   and the assignors are covered persons, there are plenty of

19   allegations in the complaint, when read together and kind of

20   looked from a practical, pragmatic perspective as the law

21   requires, to demonstrate that we met that minimum pleading

22   standard.

23          I would also say, Your Honor --

24          THE COURT:  Let me ask you, you have supplied a list

25   of the individuals, the 19,000, 16,000, whatever it is, for

1  each case.  What about the position of each of those?  In other

2  words, whether John Jones -- we keep using him -- whether he

3  was a police officer, whether he was a prosecutor, whether he

4  was a judge, whether he was a family member and lives in the

5  same household.

6         What about all that information?

7         MR. PARIKH:  Yeah.  We're happy to provide all that

8  information, Your Honor.

9         THE COURT:  You have that all?

10        MR. PARIKH:  We do, yeah.  And we have -- you know,

11  forgive me because I don't recall -- I think the defendants

12  have said it's not in the lists that were provided to them in

13  the matters before Your Honor, but I know in other cases and

14  perhaps in state court we provided lists that had the name of

15  the individual, the information they sought to have redacted,

16  either their home address or phone number, the date of their

17  assignment, the date that their notice was delivered to the

18  defendant, and a general categorization.  Are they a law

19  enforcement officer, prosecutor, judge, child protective

20  services agent, or a family member.  And so we can readily

21  provide that information to the defense.

22        THE COURT:  It seems to me that we talked about this

23  many months ago and it would have made eminent good sense -- I

24  don't know whether we specifically talked about the jobs that

25  they held, but we certainly talked about the names, and it

1   would just seem to me to make a lot of sense to provide every

2   bit of that information to each of the defendants to supplement

3   your list.

4           I mean -- in other words, we're trying to -- as I made

5   reference to Rule 1, just, speedy, inexpensive.  And if that

6   information is all available, to forthwith provide it to each

7   of the defendants, just supplement your -- if you gave them the

8   list, just add another column.

9           MR. PARIKH:  We're happy to do that, Your Honor.

10          THE COURT:  So how soon can that all be done?

11          MR. PARIKH:  I would -- I mean, the production time,

12  Your Honor, I would say within weeks for -- you know, and it's

13  a specially curated list for every defendant.  This is not just

14  one mass list for everyone.  But I'm sure we can produce those

15  lists within weeks and we can do it on a rolling basis.

16          And I don't believe we had talked about this issue

17  back a year ago or more when we were dealing with the list.  At

18  that point it was, well, we need to know who the assignors are,

19  so we gave them that information; then in the remand discovery

20  we provided a bunch of other information to the defendants.

21          So we're happy to provide that information, it's

22  available, and we referenced the fact that we will provide all

23  this information once protective orders have been entered.

24  Your Honor has entered protective orders in all of these cases.

25          THE COURT:  We have done that, right?

```
 1            MR. PARIKH:  Yes, there are protective orders now in

 2   each of these cases.

 3            So to the extent that there's any issues there, that

 4   is something that is --

 5            THE COURT:  So you can provide the date that the

 6   notice was sent and the identification of the job.  Without

 7   saying maybe he was a sergeant in the Camden Police Department,

 8   you say law enforcement --

 9            MR. PARIKH:  Correct.

10            THE COURT:  -- or prosecutor.  When you say law

11   enforcement, you mean a police officer, detective; and you

12   would have a prosecutor title; and also judge and family

13   member?

14            MR. PARIKH:  That's right.  So it would be -- you

15   know, all the information we provided previously plus the date

16   that the notice was delivered and with the actual time, not

17   just the day, but I think a time stamp of when the notice was

18   delivered to the defendant, and then a general category, as

19   Your Honor said.  I don't know if we used law enforcement or

20   police officer, but something that essentially categorizes the

21   buckets of --

22            THE COURT:  It wouldn't just say law enforcement.  It

23   would write down --

24            MR. PARIKH:  Yeah.  No, I think what we had in the

25   list that we created, Your Honor, because we assigned a, what
```

1    I'll call quote/unquote title, a category to every assignor.

2          THE COURT:  What was the category?

3          MR. PARIKH:  I believe it was judge, prosecutor, law

4    enforcement, child protective services, and family member, I

5    think those were the five categories.  And so we can provide

6    that to each of the defendants for these cases.

7          And I believe we have not provided them with the date

8    that the non-disclosure request was delivered to them from the

9    covered person, so we can provide that in a --

10          THE COURT:  Well, that would go a long way to

11    alleviating the problems that we're talking about here.

12          MR. PARIKH:  Uh-huh.  Absolutely.  Happy to do that.

13    And we've done that in other cases.

14          So had this come up earlier -- and I apologize,

15    maybe --

16          THE COURT:  I am sorry that it didn't come up earlier,

17    that this wasn't done.  It would have saved a lot of people

18    time and expense.

19          MR. PARIKH:  It would have.  I don't know, Your Honor,

20    that that would have solved the problem.

21          THE COURT:  Well, there are a lot more other issues

22    than that, I agree.

23          MR. PARIKH:  Of course.  So I think on that end, Your

24    Honor, with respect to this notion that covered person is a

25    legal conclusion, I don't think that that's correct.  I think

1   Your Honor is right, that whether someone is a covered person

2   or not is a fact issue, it's not a legal issue.

3        While I understand that it is a legally defined term

4   within the statute, that happens in all kinds of other

5   circumstances.  And when we talk about the pleading standard,

6   one of the things that Mr. Shaw and I were talking about

7   actually, is that there's so many other cases where the

8   heightened standard, almost like the fraud standard that the

9   defendants are trying to apply here, wouldn't happen.

10        So for example, if there was a case of discrimination

11   against people based on national origin in a class action, are

12   the defendants saying that the national origin of every single

13   one of the potential class members has to be spelled out in the

14   class action case; or in a case where there are numerous

15   plaintiffs, like here, that the national origin has to be

16   spelled out; or is it sufficient for pleading purposes, for

17   12(b)(6) purposes to say these people were discriminated

18   because of their national origin by so and so.

19        Same thing when they talk about allegations and kind

20   of what I'll call, again, their request for their heightened

21   pleading standard with respect to the damages component of it.

22   If someone has a race discrimination or pregnancy

23   discrimination case, they don't have to articulate anything

24   other than the fact that they believe they were discriminated

25   against because of that status.

1      They don't have to say, well, here's the date of

2  conception and here's the date I gave birth, et cetera.  And

3  that's -- I mean, I know it sounds like an absurd example, but

4  that's essentially what the defendants are asking the Court to

5  impose here, and that is not what the law requires, especially

6  given the legislature's very clear intent that the law be as

7  liberally construed as possible to ensure that it is effective

8  and effectuates the very important public safety interests of

9  the highest order.

10      Just going through my notes here, Judge, just to make

11  sure I touch on some of the other large --

12      THE COURT:  What about the issue of liquidated damages

13  versus statutory damages?

14      MR. PARIKH:  Yeah.  So I think, Your Honor, these are

15  statutory damages.  I understand the statute uses the word

16  "liquidated damages," and I think Mr. Shaw may address some of

17  this with you as well, but these are statutory damages.  Right?

18  And this is an issue that was already litigated or raised

19  before one of the state court judges who interpreted it the way

20  that we have proposed, that a covered person simply has to

21  allege that there was a failure to cease disclosure or

22  redisclosure or that the defendant continued to otherwise make

23  the information available.

24      THE COURT:  What is that case?  Do you have the cite?

25      MR. PARIKH:  I will find you the specific citation,

1  Your Honor.  It's not a published decision, but I'll make sure,

2  if we haven't included the transcript already, that we get that

3  for you.  And it was touched upon by that court.

4        The other part of that, Judge, is that when the

5  defendants have talked a lot about the negligence standard here

6  -- and I know I'm jumping around, but I think these are all so

7  interrelated -- they're focusing in on -- A, they have this

8  factual error that they keep repeating over and over again,

9  that Atlas somehow amassed all these notices and blasted them

10 out.  That's just not correct, and in discovery they'll

11 actually understand what occurred.

12       But the negligence isn't only the binary issue of

13 getting the notice and then failing to comply with the notice.

14 We have in the complaint an extensive history of the passage of

15 Daniel's Law, why it was passed, even the federal Daniel's Law

16 and why that was passed.  The negligence here is the

17 defendants' failure to comply with the statute.  What actions

18 did they take or what did they not do from the lost passage in

19 2020?  In fact, we think it will be relevant to look at whether

20 they had anything for the CCPA, the California Privacy Act,

21 which went into effect in early 2020; did the defendants take

22 action to prepare for these things to be able to create a

23 compliance framework?

24       Remember, there are lots of data brokers, businesses

25 that engage in the sale of data, that were never sued because

1  they complied with the law.  They got these same notices, they

2  were delivered by Atlas, they in fact took the pragmatic step

3  of writing back to people and saying, you know -- into their

4  Atlas email accounts and saying received and your information

5  has been suppressed, or whatever it was.

6      And so the negligence here is not just about delivery

7  of the notice and then a failure to comply.  It's broader than

8  that.  And when you think about it from that framework and you

9  think about that in the idea of not just, you know, what was

10  the duty, where was the breach, which was the failure to comply

11  within ten business days, but then you think about proximate

12  cause and injury.

13      The continued publication of the information, the

14  failure to disclose the information, that is all related to the

15  injury.  But the proximate cause is related not just to their

16  failure to cease disclosure after receiving the notice, but

17  every act or omission that occurred in advance of that to

18  perhaps not follow the law, not be aware of the law, whatever

19  it may be.

20      And so those are all things that we believe are

21  appropriate for discovery, those allegations are spelled out in

22  terms of the history of Daniel's Law and going through exactly

23  what it is the defendants should have been aware of in detail

24  throughout the complaint.

25      With respect to the notion that there needs to be

1   specific allegations of a failure to comply or negligence for

2   every single one of the 19,000 assignors, that is not what the

3   case law supports, it is not what the pleading standard

4   requires.  What has happened in these cases, there are what

5   I'll consider to be three variations of the complaint.

6           There are complaints in which there is an actual

7   screenshot of a disclosure, even though it may be redacted.  I

8   know one of the defendants said, well, because it's redacted

9   the Court should disregard it, but that is a -- you know, when

10  we look at it practically and pragmatically again and with

11  common sense, that is a demonstration that that defendant

12  failed to comply with Daniel's Law on behalf of whoever -- you

13  know, usually the screenshot of non-compliance is lined up with

14  the sample takedown notice that's in the complaint.  Those are

15  different for every complaint.  Right?

16          So the sample takedown notice is an actual screenshot

17  of an email that was sent by that covered person, usually one

18  of the individual plaintiffs to that defendant, and then the

19  capture of the non-disclosure is that evidence.

20          We have additional evidence and ready to produce it in

21  discovery for other covered persons and assignors, individual

22  defendants, evidence.

23          Second iteration of a complaint, in most cases mailing

24  list cases, where if you try to put a copy of a mailing list

25  into a complaint you end up with a big, black box because it

1   literally is just the name and home address of the person and

2   you'd essentially be disclosing the information that you sought

3   to not disclose.  So in those mailing list cases, again, we

4   have alleged that there was a failure to comply with Daniel's

5   Law and that there was a negligent failure, or in every

6   complaint also willfulness, which is the higher standard within

7   the statute, as Your Honor knows, or reckless disregard for

8   their obligations and duties.  And so those are all allegations

9   in the complaint.

10          And those mailing list cases, again, we will produce

11  that information to them in discovery.  They can see from the

12  complaint that there are multiple instances where there's

13  allegations that that particular defendant failed to comply

14  with Daniel's Law by failing to cease the disclosure or

15  redisclosure of that information.

16          And then the last category, which is a very small

17  number, Judge, are some cases where we say upon information and

18  belief.  And so in those cases -- and we all understand what

19  plaintiffs' counsel and all counsel's Rule 11 obligations are.

20  In those cases we're affirmatively saying to the Court we have

21  reason to believe there are disclosures here, but we might not

22  have hard evidence or we may not have had hard evidence at the

23  time of the filing of the complaint, we may have obtained it

24  since then.  But the reasonable basis is the fact that that

25  defendant may advertise that it has billions of pieces of

1  information or it has the ability to microtarget people, or

2  whatever it may be for those businesses.

3        So when you look at those three iterations of the

4  complaints when we're talking about this grouping before Your

5  Honor, the standard here under 12(b) has been satisfied.

6  Right?  The defendants are on notice that they have failed to

7  comply with Daniel's Law, how they were a proximate cause, and

8  what the injury is.

9        One other thing I've heard --

10        THE COURT:  Now, Mr.  -- I think it was Mr. Stio said

11  that there are cases which differentiate between liquidated

12  damages and the statutory damages.

13        What about that?

14        MR. PARIKH:  Yeah.  I'm going to defer to Mr. Shaw on

15  some of that, Your Honor, but --

16        THE COURT:  All right.  Take --

17        MR. PARIKH:  But I think when you talk about

18  liquidated damages, the cases that he's talking about are

19  private contracts, construction, you know, what you would see

20  in a breach of contract case.

21        THE COURT:  These are not statutory, these are what's

22  in a contract?

23        MR. PARIKH:  Correct.  When you look at -- and I will

24  try to find the statute because I don't have it off the top of

25  my head, but I have seen in other circumstances the State of

```
1    New Jersey use the term "liquidated damages" for what would be
2    known as --
3              THE COURT:  In the statute?
4              MR. PARIKH:  Yeah, in a statute or in a regulation.
5    So I think the Department of Labor, for example, when they have
6    misclassification cases and they talk about that if you
7    misclassify someone as independent contractor you may be liable
8    for liquidated damages in the amount of $200 per violation, or
9    something along those lines.  So I have to find that and we can
10   provide that.
11             THE COURT:  Okay.
12             MR. PARIKH:  But that's essentially what Your Honor
13   was saying, which is these are statutory damages.  This is
14   where because it is so difficult to actually determine what the
15   damage would be -- and the reason the statute -- and I think
16   the proper interpretation of that specific cause at the statute
17   at issue here is that the legislature is actually saying that.
18   They're saying actual damages but in no event not less than
19   $1,000.
20             So in the case of someone who is physically harmed or
21   injured and there's a direct tieback to a defendant, perhaps
22   their actual damages would be significantly greater because
23   that may occur.  But at least what's being alleged here by
24   Atlas as the --
25             THE COURT:  Because it seems to me the statute is
```

1    certainly designed to cover the situation where a covered

2    person has not received a specific threat --

3           MR. PARIKH:  That's right.

4           THE COURT:  -- or hasn't been the subject of an

5    assassination attempt or a bomb threat.  Otherwise, you would

6    have to wait until you were threatened or there was an

7    assassination attempt before you could bring a suit.

8           MR. PARIKH:  That's right, Judge.

9           And you know, the stories that we put in the

10   complaints are to illustrate the harm.  I don't have to tell

11   Your Honor.  Your Honor knows it.  I think everybody in this

12   courtroom knows it.

13          But for the record, those illustrative examples are

14   real things that happened to the individual plaintiffs.  When

15   you talk to other law enforcement officers, they'll tell you

16   about folks who work in the jail, where inmates have access to

17   legal research systems in the jail law library, and they'll

18   just leave a Post-it note on the desk that says the name of a

19   corrections officer with their address.  They won't do anything

20   other than that.

21          But then what is the fear?  Does that corrections

22   officer now tell a spouse and kids to go stay with the

23   grandparents for a week because they're not sure what's going

24   to happen?  And that is the harm, it's that fear and that

25   threat that pervades all of this based upon what the

1    legislature says are these very, very narrowly tailored,

2    specific roles, judges, prosecutors, law enforcement, and their

3    family members.  And it's as a result of a tragedy.

4        So for each of those people -- if we look at just the

5    individual Camden Police Officer, right, that Your Honor talked

6    about earlier, if that individual has to go to a thousand

7    different data brokers and say, well, I sent my notices out to

8    you, but now I'm waiting for someone that I pull over or

9    somebody that I stopped in the street to say I'm going to get

10   you to be able to file a complaint, that's not what the law is

11   designed to do.

12       The law is designed to make sure that these --

13       THE COURT:  It's an anticipatory situation.  I

14   understand that.

15       MR. PARIKH:  That's right, Judge.  And Your Honor said

16   it perfectly in the decision, which is, you can't close the

17   barn door after the horse has left.  Right?  And that is

18   exactly what the defendants are asking the Court to do in the

19   way that they interpret and want the pleading standard to be

20   applied.

21       With respect to the notice component, Judge, Atlas did

22   not send the notices.  It would be like me putting something in

23   FedEx and saying that FedEx sent it as opposed to delivered it,

24   and that is the distinction here.  The complaint has

25   screenshots of what it is the covered persons do, how they do

1    it.  We haven't hidden the ball.  We've said they push a button

2    that says "send."  They can choose who they want to send it to

3    or they can send to all, absolutely the notices are uniform,

4    the notices satisfy the standard because it says specifically

5    I'm a covered person, I seek to enforce my rights under

6    Daniel's Law, it gives a citation to the statute, and it says

7    what information needs to be redacted.

8         And Your Honor is also correct -- and I think Mr. Stio

9    agreed to this -- which is that there is a presumption of

10   delivery when it comes to email.  It's rebuttable, but there's

11   a presumption of -- it's the mailbox rule.  We all know it.

12        And so that is why this notion that we don't allege

13   receipt is comical.  Right?  We talk about all, kind of the

14   detailed method of how it is that these are sent, we talk about

15   Atlas's delivery, we talk about them being batched to make

16   sure -- you know, even though the terms of service, which I

17   think is getting into discovery because they're explainable in

18   so many different ways, but even if Your Honor were to look at

19   those -- and I don't think you need to, but even if you were to

20   look at those, that is a baseline of Atlas telling its users,

21   hey, this is what we may or may not do and this is what we can

22   and cannot do.

23        It's not evidence of what actually happened or didn't

24   happen.  That is what discovery is for.  And so when we talk

25   about the emails having been sent and then talk about them

1   being delivered and then pivot to when we talk about the

2   defendants says, well, they don't say received, but the

3   complaint clearly alleges that there was a failure to comply

4   with Daniel's Law by ceasing disclosure.  And so implied in

5   that, very common sense is that they received it, because we

6   have a presumption that once it was sent it was received.

7          THE COURT:  And it would be pretty hard to say that

8   they actually received it because you don't actually know.  How

9   could you possibly know ahead of time whether they received it

10  or not?

11         MR. PARIKH:  Right.  And on that --

12         THE COURT:  There has to be a presumption, it seems to

13  me, at least at the initial stage -- and you're right, if they

14  say that during discovery they didn't receive it and then the

15  fact finder is going to have to make that decision.

16         MR. PARIKH:  That's right, Judge.

17         And you know, we have evidence -- and again, this gets

18  very far into discovery -- where we can provide them with

19  confirmations that came back from servers, and I'm sure there's

20  going to be expert witnesses that explain these things in a lot

21  more technical terms than I can.  But that is what discovery is

22  for.

23         The last piece, Judge, there was this notion of

24  punitives and, you know, the timing here.  So A, notices

25  started being delivered in mid December -- and each defendant

1    had different dates that notices were delivered to it.  The

2    first ten complaints were filed within the first week of

3    February.  The punitive component of this and the allegations

4    regarding and requests for punitive damages here, which again,

5    I think we've easily satisfied the pleading standard, it's

6    because the negligence goes back several years.  Right?  What

7    did the defendants do or not do starting when the law was

8    passed in November 2020 --

9            THE COURT:  Yes, but there's no obligation to remove

10   home addresses and unlisted telephone numbers until the notice

11   is sent.

12           MR. PARIKH:  I agree.

13           THE COURT:  Some people may not care or they're not

14   worried about it, they live on the edge or whatever.

15           MR. PARIKH:  That's right.  And I agree with Your

16   Honor.  And that's what discovery is for.  If we had a

17   defendant who knew about Daniel's Law and said, look, we don't

18   need to do anything with this, we're not going to prepare,

19   we're not going to do anything -- right? -- and then all of a

20   sudden they get the notices and now they're claiming, oh, we

21   couldn't comply, then I do think that we would have evidence to

22   say that they recklessly disregarded the law or willfully

23   failed to meet --

24           THE COURT:  Well, that's an interesting -- I'm not

25   passing judgement one way or the other on that.  But of course,

```
 1  as I say, there's no violation until the notice is sent so that

 2  the covered person is the one who has to take the initiative.

 3  It isn't up to the defendants to decide who was a law

 4  enforcement officer and then on its own initiative start

 5  purging its list.

 6          MR. PARIKH:  Correct.  I agree, Your Honor.  And that

 7  is the design of the law.  Right?  There are covered people in

 8  this state who have chosen, I'm sure, to not use their rights

 9  under the law, who are fine with their information being

10  available publicly, right, but --

11          THE COURT:  Or whether they're fine or not, they're

12  just not going to make the effort.

13          MR. PARIKH:  And we're not standing here saying the

14  defendants are obligated to remove that information.  Of course

15  not.

16          But with respect to the minimum pleading standard here

17  under 12(b)(6), we think we have alleged enough to say that the

18  plaintiffs could be entitled to punitive damages, to leave that

19  open.  If discovery bears out that that is not the case, then

20  I'm sure either there will be a summary judgement motion or the

21  plaintiffs won't pursue punitive damages against those

22  defendants.  So I just think from a pleading perspective, I

23  think we've satisfied the minimum.

24          The last piece -- and I think you heard this from

25  Ms. Purcaro, and perhaps from Ms. Southall and Mr. Spak -- they
```

1  said we can't even tell our clients what they did wrong.  Well,

2  I disagree.  Their clients received notices from covered

3  persons that said please stop disclosing my information --

4          THE COURT:  But to the extent that they were at sea

5  about this, if you are going to give them additional

6  information about the date, that would certainly enable them to

7  make some further determinations about that.

8          MR. PARIKH:  Yeah.  We could get started on that

9  immediately, Judge.

10         And what they knew and should have known from the date

11 they received the notice is that they needed to suppress and

12 remove that information.  That's what they needed to do.  And

13 it's their failure -- I think Your Honor said it, this isn't a

14 case of what somebody did do, it's what they didn't do.  They

15 continued to disclose the information when they weren't

16 supposed to.  And what they were supposed to do was suppress

17 the information, they didn't, and that is what gives rise to

18 the claim.

19         THE COURT:  Now, I'm just -- going back to the date of

20 this additional information.  How long would it take you to do

21 that?  Could you do that all within 30 days?

22         MR. PARIKH:  Absolutely, Judge.  We could do it for

23 every one of these defendants within 30 days.

24         THE COURT:  So that they would have to produce the

25 date that the notice was sent for each individual and the

1    category of covered persons.  In other words, law enforcement,

2    prosecutor, judge, family services or child services, family

3    member.

4          MR. PARIKH:  Right.  So I think, Judge, the way we

5    have to -- the way we would have to do it is because it's the

6    home address and phone number may have been delivered in

7    different notices, it would be basically a spreadsheet, but it

8    would have the person's name, the information they sought to

9    have not disclosed, the date of delivery of that notice, the

10   date of assignment, and then the category of covered --

11         THE COURT:  The date -- okay.

12         MR. PARIKH:  Right.  And then it would be -- so if I

13   had sent out -- to one defendant I had sent out four notices,

14   you know, one for my house, one for my beach house, my home

15   phone number, my cell phone number, there would be four lines

16   for me, it would have my name four times with each piece of

17   information, and then the specific delivery date for this.

18         THE COURT:  I understand.  Very good.  Well, that

19   would certainly alleviate a lot of concern.

20         MR. PARIKH:  Yes, we absolutely could get that done

21   within 30 days.

22         THE COURT:  All right.

23         MR. PARIKH:  Any other questions, Your Honor, before I

24   turn it over to Mr. Shaw?

25         THE COURT:  No.

```
 1          Mr. Shaw.
 2          MR. SHAW:  Thank you, Your Honor, Adam Shaw for the
 3   plaintiffs.  I think you guys covered it really.  I would just
 4   mention that statutory damages versus liquidated damages --
 5          THE COURT:  Yes, tell me about that.
 6          MR. SHAW:  We see this as the same as other statutes,
 7   like the TCPA when you send --
 8          THE COURT:  The TCPA?
 9          MR. SHAW:  Yeah, Telephone -- I forget the -- what the
10   acronym stands for.  TCPA, when you send a fax or a text to
11   someone who doesn't want it, the statute has statutory damages.
12          THE COURT:  Is it a federal statute?
13          MR. SHAW:  Federal statute.  FCRA has something
14   similar where you could get in the alternative statutory
15   damages or actual damages.
16          THE COURT:  Do they use the term "statutory damages"
17   as opposed to "liquidated"?
18          This difference that Mr. Stio has raised, is that
19   significant, whether the statute says statutory damages or
20   liquidated or --
21          MR. SHAW:  I have not seen that in federal statutes.
22   I know my colleague mentioned that there's a different place in
23   the New Jersey statute where they use that nomenclature.  But I
24   think he's trying to use those words and steer us down a
25   different path.  That's not what the statute talks about.
```

```
 1            THE COURT:  But what is that different path he's
 2    trying to steer us?
 3            MR. SHAW:  He's trying to steer us down this path of
 4    in private contracts sometimes you add the terms, that's what
 5    his cases talk about.
 6            THE COURT:  Now, contracts, the law is you can have
 7    liquidated damages, so long as it's not "a penalty."  That's in
 8    the private context.
 9            MR. SHAW:  Exactly.
10            THE COURT:  So the question is, are there state cases
11    which have held that a provision added by the legislature which
12    says statutory damages or liquidated damages has been held to
13    be a penalty or improper?  It seems to me the legislature can
14    set whatever damages it wants, I would think.
15            MR. SHAW:  Exactly.
16            THE COURT:  It's different than private parties
17    agreeing to liquidated damages which would be deemed a
18    penalty.
19            MR. SHAW:  Right.  And that's why we analogize it to
20    the Copyright Act, I think has a section where you could get
21    actual damages or statutory damages.  So in those circumstances
22    if you look at the case law, it says you specifically do not
23    need to prove actual damages.
24            THE COURT:  You're right about the Copyright Act.  I
25    think I've had a couple cases which involve that.
```

1          MR. SHAW:  And it's kind of in your idea, you said

2     about the trespass.  The legislature can create a statutory

3     damage that's meant to measure the type of harm that befalls

4     you and put a number on it and you don't have to come into

5     court.

6          Now, if they're trying to say something different, if

7     they're trying to say that it's somehow punitive and it's not

8     connected to the actual measure, that's a different kind of

9     claim.  That's not a pleading problem, that's them saying that

10    the amount of damages are somehow improper.  But that's

11    not --

12         THE COURT:  What you're really doing is attacking the

13    statute.  And is the statute unconstitutional because it sets a

14    penalty for some action?  Maybe if it were so high that it

15    would violate due process.  But you know, if it said instead of

16    $1,000, it said a hundred million dollars for each violation,

17    then you may run into some due process problems.

18         MR. SHAW:  Exactly.  That's the way I was thinking

19    about it, but I don't think that's what they've articulated

20    here and they haven't joined issue on that concept.  What

21    they've said is you haven't alleged it because you haven't

22    alleged actual damages.

23         And we tried to draw the distinction between actual

24    damages and statutory damages, and we say it's allowed.

25         THE COURT:  Okay.  Thank you.

```
 1          MR. SHAW:  As to punitives, I think we got down to the
 2   point where Mr. Stio admitted that he's not really saying we
 3   didn't allege it, what he's saying is 13 days or 20 days,
 4   whatever that period of time, if the notice is not enough, that
 5   maybe it is.  We think it is.  We think that you could be
 6   reckless in that time period, we think you could be wanton in
 7   that time period, and we should be able to educe proof of that,
 8   particularly when the statute says you can get punitive damages
 9   under certain circumstances.
10          And as to proximate cause, I think, you know, what
11   you're trying to do -- the concepts of proximate cause is
12   trying to link the defendant and the defendant's actions to a
13   particular group of plaintiffs and the particular harm that
14   happened to these particular plaintiffs, and we do that.
15          We do that in the complaint because we say these
16   particular defendants took these particular acts that impacted
17   these particular plaintiffs in this case, and that's the
18   connection for proximate cause.
19          I only want to address one other thing that my
20   colleague mentioned, which is a couple of counsel got up here
21   and said we didn't get notice, we didn't get notice, we didn't
22   get notice.  And I think what's going to come out in discovery
23   is the fact that they set up some system to protect themselves
24   against receiving notices.  I analogize it to like a moat.
25   They have a small business.  We want to set up protections so
```

1   that certain mail doesn't get to us.

2            Well, they dug a moat in front of their business.  We

3   send an email to them.  If that email falls into their moat and

4   then they say we didn't get it, that's on them, that's not on

5   us.  We've delivered it.  They say they don't know what to do,

6   they should be looking in their own moat.

7            Thank you, Your Honor.

8            THE COURT:  All right.  Thank you.  Now, I'll permit

9   some -- about something that hasn't been said before.  So I

10  don't --

11           MR. PARIKH:  Yeah, Your Honor, I'm sorry, I just

12  wanted to give you -- I know Your Honor had mentioned some

13  citations of places where liquidated damages may be used in the

14  statutes, if I can just give Your Honor those cites.

15           THE COURT:  Yes.

16           MR. PARIKH:  So there's N.J.S.A. 34:11-56a25, and

17  that's a lost wages statute.  There's also N.J.S.A. 34:11-4.10,

18  and 34:11-58.

19           Those are both where the statute says liquidated

20  damages are equal to 200 percent of the wages that were lost.

21  Again, labor regulations.

22           THE COURT:  Right.

23           MR. PARIKH:  And then another one is a wiretapping

24  statute.  It's N.J.S.A. 2A:156a-24, which talks about

25  liquidated damages.  And there's a case that assesses

1   liquidated damages under that statute called *Scott vs. Scott*.

2          THE COURT:  *Scott*, S-C-O-T-T?

3          MR. PARIKH:  S-C-O-T-T, *Scott vs. Scott*.  It's a

4   divorce action but there's a wiretapping component.  The

5   citation is 277 N.J. Super. 601, and that's a Chancery Division

6   case from 1994.

7          THE COURT:  It's not in the Atlantic?

8          MR. PARIKH:  I can find the Atlantic Reporter for Your

9   Honor and put it on the record after.

10          THE COURT:  All right.  Thank you very much.

11          All right, Mr. Stio, we're going to make it short,

12   please, because the time is --

13          MR. STIO:  Sure.  I'll just pick off a couple.

14          One, not a single one of those statutes was cited in

15   their brief.  I mean, if we're going to argue and do amendments

16   after the fact, I just think that that's improper.  But not a

17   single one of those.

18          I would direct the Court's attention to *Pichler vs.

19   Unite*, 542 F.3d 380, at page 392.  It's cited in our reply

20   brief.

21          THE COURT:  Right, Third Circuit.

22          MR. STIO:  Correct.  And it talks about the

23   distinction between statutory damages and liquidated damages

24   and it does so with respect to a statute.  And it says you need

25   to look at the common law on how liquidated damages are

 1  defined.

 2          THE COURT:  What law was that concerned with, federal

 3  law --

 4          MR. STIO:  It was the Driver's Privacy Protection Act.

 5          THE COURT:  Was it a New Jersey statute?

 6          MR. STIO:  No, it wasn't.  It was a federal law.

 7          THE COURT:  A federal law?

 8          MR. STIO:  Correct.

 9          THE COURT:  All right.  Thank you.

10          MR. STIO:  Second thing, Your Honor.  Mr. Parikh gave

11  you a lot of facts up here, a lot of plausible facts.  None of

12  them are in the complaint, and that's all we're asking for.  We

13  raise arguments; yeah, don't worry about it, we'll get to it in

14  discovery.

15          Now, they are actually arguing the *Conley vs. Gibson*

16  case, which basically said whether something could be a

17  violation could be determined in discovery.  *Iqbal* and *Twombly*

18  overruled that.

19          THE COURT:  Okay.

20          MR. STIO:  And all we're asking is to apply *Iqbal* and

21  *Twombly*.

22          Next, Your Honor -- I think you covered this, the

23  spreadsheet.  If we are going to get a new spreadsheet, the

24  stuff was --

25          THE COURT:  Right.  What I'll do is I'll enter an

1    order requiring that within 30 days.

2         MR. STIO:  And then on violations.  They plead

3    violations upon information and belief.  Mr. Parikh said that.

4    You cannot say you disclose the information of Judge Bartle,

5    therefore, you disclose my information.  The pleading standards

6    do not allow you to do that.

7         And Mr. Parikh said, well, if we had an ADA class

8    action, they wouldn't have to plead discrimination for every

9    plaintiff.  This isn't a class action.  They had the

10   opportunity to bring a class action.  They didn't because they

11   don't want to be in federal court.

12        They are an assignee of claims.  They need to stand in

13   the shoes of the assignors and they need to allege the

14   allegations.  And I know the Court is concerned about a real

15   long complaint.  That wasn't our choice.  It was their choice.

16   They filed this complaint the way they did so they could avoid

17   federal court.  Court should not relax pleading standards that

18   would be applicable to anyone else in the universe except for

19   covered persons.

20        They also talked about a negligence standard, a new

21   claim.  The negligence here is failure to take steps before any

22   notice was sent to comply with the act.  That is nowhere

23   alleged in the complaint.  And you can't make an amendment by

24   way of argument, by way of reply brief, by way of affidavit

25   after the fact.

1          So, you know, what we have here, we have group

2    pleading; we have, you know, ambush here, pleading.  You could

3    amend the complaint, tell us what your claim is.  They haven't

4    done it.

5          Last thing, no one is saying on the defense side that

6    you can't send a takedown notice anticipatorily, that the

7    person has to be injured before.  No one is saying that.  What

8    we are saying is the way the statute works, you send a takedown

9    notice, the ten days expire, and then you have some plausible

10   fact to show the disclosure or redisclosure was not complied

11   with.  They don't do that.  And they have the facts, according

12   to Mr. Parikh.  They don't plausibly allege it.  Put us on

13   notice of what we did.

14         And he got up here and he said, well, you know,

15   Zillow, you know, they make these products available.  That's

16   not in the Zillow complaint.  And the other FCRA company,

17   that's not in the complaint.  We need to be put on notice

18   through plausible allegations.  That's why *Iqbal* and *Twombly*

19   say take away legal conclusions, take away generalizations,

20   give us plausible facts.

21         THE COURT:  All right.  I think I understand now.

22   Thank you very much.

23         Now we're going to turn to extraterritoriality.

24         MR. SZYBA:  Thank you, Your Honor.  Good afternoon,

25   Rob Szyba for We Inform, The People Searchers, and Infomatics.

 1          THE COURT:  Right.

 2          MR. SZYBA:  The general concept of

 3    extraterritoriality, generally speaking, is that laws of a

 4    certain jurisdiction do not automatically extend to any and

 5    every jurisdiction all across the world, and Daniel's Law here

 6    should not do exactly that.

 7          To do that analysis, I want to direct the Court's

 8    attention to the actual statutory language itself of Daniel's

 9    Law.

10          The relevant provision states that:  A person shall

11    not knowingly, with purpose to expose another to harm, risk,

12    life, or property in reckless disregard of the probability of

13    such exposure, post, repost, publish, republish on the internet

14    or otherwise make available the home address or unpublished

15    home phone number of any covered person.

16          Covered person is defined as an "active, formerly

17    active or retired judicial officer, law enforcement officer, et

18    cetera, as well as any immediate family member residing in the

19    same household of that judicial officer or law enforcement

20    officer."

21          The statutory text of Daniel's Law expressly applies

22    to the conduct of the defendants.  It regulates the conduct by

23    people as to other people.  It doesn't attach to an item, it

24    doesn't attach to the protected person; it attaches to the

25    conduct of the defendants.  That's really the only way to

1    practically read that statutory text and that is the only way

2    to really read that statutory text within constitutional

3    limitations, due process limitations, commerce clause

4    limitations, et cetera, that makes really any sense.

5         Because of that, when you have a person or a company

6    or a defendant really that is outside of New Jersey, does

7    everything outside of New Jersey, has no connection to New

8    Jersey, doesn't do any business in New Jersey, that Daniel's

9    Law requirement does not reach them.

10        THE COURT:  But what if the information is available

11   to someone in New Jersey, sitting in Camden or Newark or Cape

12   May, can obtain that information from your defendant, not going

13   to Pennsylvania or California to get it, about a New Jersey

14   covered person?

15        MR. SZYBA:  That's not enough to extend Daniel's Law

16   to that entity.  Because realistically, any person in the world

17   with access to the internet can access anything on the

18   internet.

19        THE COURT:  Right.

20        MR. SZYBA:  So taking that approach would mean that

21   any law that pertains to the internet is subject to every law

22   in every jurisdiction.

23        THE COURT:  But there certainly are some New Jersey

24   cases which have applied statutes extraterritorially.

25        MR. SZYBA:  That's true.

1          THE COURT:  And there's some that haven't.  There's

2     some particularly in the employment context that don't.

3          But isn't the Daniel's Law more akin to those consumer

4     statutes?  One was a mortgage statute and one was another type

5     of consumer statute where the events took place outside of New

6     Jersey and the court said that applied to the New Jersey

7     resident that was subject of the illegality.

8          So don't we really have to wait until discovery to

9     really see what your company is all about and isn't it really a

10    fact-specific situation?

11         I mean, you're saying it doesn't have an office in New

12    Jersey.  How do I know that?

13         MR. SZYBA:  So --

14         THE COURT:  Again, without imputing your integrity,

15    you can tell me that.  Maybe you're entitled to a motion for

16    summary judgement right off the bat.

17         MR. SZYBA:  To answer some or all of those questions

18    one at a time.

19         THE COURT:  I know I threw a lot at you.

20         MR. SZYBA:  Employment statutes, I disagree that they

21    address extraterritorial application of the law, because every

22    time that a court has found that an employment statute applies

23    to something outside of New Jersey, there has always been a New

24    Jersey tie-in.  *Melvin versus Mobile Oil*, great example.  A New

25    Jersey employee working for a New Jersey company in a New

 1   Jersey office went to Japan, engaged in what was deemed

 2   protected conduct under the law.  That law was not violated

 3   until he came back sitting in New Jersey and his employment was

 4   terminated in New Jersey.

 5              THE COURT:  Right.

 6              MR. SZYBA:  Easy.  However, there was a paralegal that

 7   was sitting in Pennsylvania in one of the other cases.

 8   Everything was done in Pennsylvania, the office was in

 9   Pennsylvania, all the work was done in Pennsylvania, the

10   plaintiff lived in New Jersey and worked on New Jersey cases,

11   and the court held that was not enough.

12              In all of those cases that talk about

13   extraterritoriality in the employment context, there's always a

14   New Jersey connection.  The company is headquartered in New

15   Jersey, the employee worked some time in New Jersey, always.

16              THE COURT:  Right.  I understand.

17              But here, the plaintiffs, as far as we know, or the

18   assignors are all New Jersey residents, aren't they?  You may

19   have it.

20              MR. SZYBA:  I'm glad you asked because --

21              THE COURT:  Well, if that's so, doesn't that have to

22   wait for discovery?

23              In other words, it may be that a police officer from

24   Camden moved to Florida to retire -- and I don't know whether

25   we have any of those here in that situation, but it may very

1    well be as the case progressed, maybe the statute doesn't cover

2    that situation.  I don't know.  I'm not passing judgement on

3    that.

4            I guess my issue is, isn't your argument a little

5    premature?

6            MR. SZYBA:  No.  Here's why.  And I'm glad you raised

7    that example because it really illustrates the point.  Yes, the

8    law covers -- let's just use law enforcement officers as

9    shorthand for all the covered people at issue.  It covers law

10   enforcement officers.

11           That law enforcement officer retires, moves to Mexico,

12   no longer in Jersey.  Lives in Mexico, it's not a Jersey

13   address.  Marries someone in Mexico.  That's a spouse connected

14   to a covered person that lives at the same address.  That

15   person never lived, never stepped foot in, doesn't live

16   currently, has no connection to New Jersey, and yet under that

17   interpretation, if we took that interpretation and said the law

18   could apply based on the status of the plaintiff, it gets into

19   this bizarre result where the law is regulating people that

20   have nothing to do with New Jersey.  That's why the correct

21   result --

22           THE COURT:  Well, you may be right.  I would suspect,

23   without any proof, that that's a minority of individuals that

24   we're talking about.

25           MR. SZYBA:  It may be.

```
 1          THE COURT:  Most of them I would say -- again, it's an
 2   assumption.  Maybe I shouldn't make it.  But they're living in
 3   New Jersey, they're on active duty, so to speak, or maybe some
 4   of them retired and still live in New Jersey.  Maybe they moved
 5   from Camden to Ocean City.
 6          So doesn't that have to wait -- in other words, if
 7   these people live in -- in the example that you talked about,
 8   in Mexico, then I think you may have raised a real question as
 9   to whether or not the statute applies.  But if his brother,
10   who's a retired patrolman living in Camden, that's a different
11   situation.
12          MR. SZYBA:  You're right, Your Honor.  And this sort
13   of blurs the line between the arguments that we were just
14   hearing about, pleading standards and my argument, because
15   without any factual detail at all as to who the covered persons
16   might be, it is difficult to make these decisions.
17          THE COURT:  But it happened that you've received from
18   the plaintiffs a list of individuals who sent them notices, you
19   received the address and the phone number.  Now, you can't
20   always tell by the phone number because a lot of people, maybe
21   they lived in California and the area code is a California area
22   code but they're living in -- have a cell phone and living in
23   New Jersey and lived here for the last 40 years.  I mean, we
24   all have -- not ourselves, but have children or whatever live
25   one place and they moved and they still have a cell phone from
```

1    the other area.  So you get a call from it and they live in,

2    say, New Jersey and it's clearly a California area code but you

3    know they're living in New Jersey.

4            But you have all that information, so I assume, again,

5    that most of the addresses are going to be New Jersey

6    addresses.  There may be a few that are California or

7    Pennsylvania or New York or whatever.

8            MR. SZYBA:  So that's part of the issue.  Discovery

9    does not cure pleading standards.  That's number one.

10           Number two, we have only a slither of the information

11   you talked about.  We have names, we don't have addresses,

12   we don't know who's --

13           THE COURT:  You're right, discovery doesn't

14   necessarily cure it, but we also have to be -- you know, we're

15   practical people here.

16           MR. SZYBA:  Right.

17           THE COURT:  And these are very unusual cases.  And we

18   do have, as I repeated before, Rule 1, just, speedy, and

19   inexpensive determination of the cases.

20           So if you have the information early on and we dealt

21   with this months and months ago, to dismiss the complaints and

22   have them put this information in the complaint, I mean, isn't

23   it really a waste of time?  The pleading rules are designed to

24   give notice.

25           MR. SZYBA:  Right.

```
 1            THE COURT:  And I appreciate that and I think you need
 2   to know who the people are.  And I think the dates are -- and
 3   if you're going to get that information within the next month,
 4   to go through the contortions of dismissing complaints --
 5            MR. SZYBA:  I agree with you completely, Your Honor.
 6            THE COURT:  -- and your client is going to have to pay
 7   more money in terms of counsel fees.
 8            MR. SZYBA:  Right.
 9            THE COURT:  I mean, we have to be practical people
10   here.
11            MR. SZYBA:  I agree.  But here's the issue.  The issue
12   is -- let's assume that's all right, let's assume that we have
13   an active New Jersey law enforcement officer.  As I said
14   earlier, the statutory text suggests strongly, rather, that the
15   statute regulates the conduct of companies, the defendants.  It
16   doesn't attach the -- the statutory protections don't attach to
17   the information, which may be New Jersey information, and they
18   don't attach to the covered person.
19            THE COURT:  But you, yourself, said there's certain
20   cases in New Jersey where the plaintiffs were residents of New
21   Jersey and the conduct occurred outside of New Jersey.
22            MR. SZYBA:  Right.
23            THE COURT:  And to the extent that the assignors are
24   New Jersey citizens, doesn't that undercut your argument?  It
25   may be that he doesn't live here anymore or --
```

```
1          MR. SZYBA:  No.  My fundamental argument, Your Honor,
2    is that Daniel's Law does not apply to an outside entity,
3    someone who is completely foreign to New Jersey.  My
4    fundamental argument is that --
5          THE COURT:  But are you saying that the whole
6    statute -- we're talking about statutory construction now.
7          MR. SZYBA:  Right.
8          THE COURT:  How do you construe it?
9          MR. SZYBA:  My construction is that Daniel's Law in
10   its full form applies to any and every actor in New Jersey.
11         THE COURT:  Okay.  So in other words, the plaintiffs
12   have to be -- or the assignors have to be in New Jersey?
13         MR. SZYBA:  No, the defendants have to be in New
14   Jersey.  For the same reason --
15         THE COURT:  So in other words, the assignor could have
16   retired to Florida 20 years ago, and so long as the defendant
17   is in -- as you call in New Jersey, the statute would cover it?
18         MR. SZYBA:  Yes.  "In New Jersey" interpreted if they
19   couldn't be in New Jersey, do business in New Jersey, they
20   could have employees in New Jersey.
21         THE COURT:  Now, if that's correct, then it seems to
22   me I have to await discovery and I have to -- you say in New
23   Jersey, doing business here somehow in New Jersey.
24         MR. SZYBA:  Right.
25         THE COURT:  Well, that requires discovery, so your
```

1    motion is premature.

2           MR. SZYBA:  Well, not necessarily because none of

3    those facts are pled in the complaint, and they can't be.  So

4    even regardless of how much discovery we take, they cannot be

5    pled because they don't exist.

6           So at the pleading stage this issue is ripe because a

7    client such as mine, as to who none of those issues are true,

8    cannot be brought in on that theory.

9           So in other words, fundamentally New Jersey cannot

10   regulate the universe, the entire universe as to any and every

11   person in the universe cannot do it, and New Jersey says they

12   cannot do it.  My clients are out in the universe.

13          Your Honor can rule -- there is that jurisdictional

14   limit and there's no issue with that.  The New Jersey Supreme

15   Court has had no issue with that in other cases that have also

16   been --

17          THE COURT:  Right.

18          MR. SZYBA:  If the plaintiffs are required to plead

19   that my clients are a New Jersey entity, they can't, then I get

20   my motion to dismiss granted.

21          THE COURT:  All right.  Thank you.

22          Does anyone else want to speak to that issue as a

23   defendant?

24          Thank you very much.

25          MR. SZYBA:  Thank you, Your Honor.

1          MR. SHAW:  My colleague, Mr. Palmer, is going to speak

2    to this issue.

3          THE COURT:  Good afternoon.

4          MR. PALMER:  Good afternoon, Your Honor, Eric Palmer

5    for the plaintiffs.

6          So to begin with, I feel like the defendants here have

7    essentially kind of allotted the distinction between a

8    statutory question of extraterritoriality and a constitutional

9    question, as I think Your Honor was alluding to.  I think if

10   you focus on the statutory --

11         THE COURT:  That's all they're claiming here at this

12   point.

13         MR. PALMER:  Right.  And I think given that they

14   haven't raised any type of constitutional challenge, if you

15   focus on the statutory question in a way that's exclusively

16   limited to that and all we care about is really what the text

17   of the statute says, the issue is incredibly simple to resolve

18   because -- he just quoted the language of the statute.  The

19   statute does not contain any language whatsoever suggesting

20   that the person who is a defendant who is liable for a

21   disclosure must be a New Jersey entity or located in New

22   Jersey.  There's nothing in the text of the statute that

23   suggests that.

24         And the New Jersey case law that we've cited I think

25   is clear that in general New Jersey views the scope of the

1    extraterritorial scope of a statute as tethered to evil that

2    the statute is designed to address.  Here, that evil

3    transgresses different borders between different states.

4         And I think to the extent that there's a background

5    almost constitutional-like concern that they have here that

6    it's unfair because they have nothing to do with New Jersey, I

7    submit to Your Honor that they are -- what is alleged in the

8    complaints is that they have disclosed New Jersey specific

9    content, content that intrinsically references a location in

10   New Jersey, in the case of an address or an area code, an area

11   that is tethered to New Jersey inherently its nature, and they

12   have disclosed that with knowledge, whether actual or

13   constructive, that disclosing that after they have received

14   that notice ten days later would violate somebody's rights

15   under New Jersey's laws and expose them to a risk of harm in

16   New Jersey, assuming they are a resident there.

17        I think even if they had made the constitutional

18   argument, there would be no serious argument that an

19   extraterritorial application of the law to a defendant in that

20   position would be arbitrary or fundamentally unfair under the

21   due process clause.

22        So I think whether you want to look downstream to that

23   question or not or simply focus on the statutory question here,

24   this argument is a total non-starter, Your Honor.

25        THE COURT:  All right.  Thank you.

1           You may -- any response?

2           MR. SZYBA:  Thank you, Your Honor.

3           The question is not one of constitutionality of

4    Daniel's Law, it's the constitutionality of this Court's

5    interpretation of Daniel's Law.  So clearly this Court is not

6    going to take an unconstitutional interpretation of Daniel's

7    Law, one like if the information would be deemed -- if Daniel's

8    Law were to be deemed to attach -- if Daniel's Law were deemed

9    to attach to New Jersey information, that means that piece of

10   information, that New Jersey address, like any other item

11   that's regulated by New Jersey, as it travels around the world,

12   whoever touches it is now subject to Daniel's Law.  That is a

13   bizarre result and that is a bizarre result that simply does

14   not exist in any other framework of law anywhere.

15          It is not uncommon for items, like here the piece of

16   information, to travel across borders and be regulated by those

17   local laws.  Same thing with people.

18          So the New Jersey Supreme Court hasn't had any issue

19   with that.  Where there was a teacher and a student that went

20   to Germany, the teacher assaulted the student.  Even though

21   they were both connected to New Jersey, they both were New

22   Jersey residents, they had a teacher-student relationship in

23   high school, in a private high school in New Jersey, the New

24   Jersey Supreme Court's answer was that happened in Germany,

25   it's subject to their laws.  They spoke of it in terms of

1  jurisdiction, but it's clear the court has jurisdiction,

2  personal jurisdiction, because they were both residents of New

3  Jersey.  It really was a question of the extraterritorial

4  application of New Jersey law.  And that doesn't exist anywhere

5  else.

6          A popular example, fireworks.  I can drive to

7  Pennsylvania, load up my trunk with fireworks, perfectly legal.

8  I drive back to New Jersey, that might be a problem.  That

9  happens all the time with items.  Any item that's regulated, if

10  I go to a jurisdiction and interact with that item in a way

11  that's permissible under those local laws, that doesn't mean

12  I'm standing in Pennsylvania violating New Jersey law because

13  I'm buying some fireworks.  There might be some other issues,

14  maybe possession or something like that.

15          Historically these two states, along with New York and

16  Delaware, have had people engage in conduct regularly where

17  they go to the other state and engage in protected conduct.

18  Not dissimilar here.  If you take the home address and

19  telephone information, bring it to a jurisdiction where you're

20  allowed to interact with it, no issue.

21          The issue is once you interpreted Daniel's Law to

22  basically affix itself to that piece of information, you

23  necessarily wind up with a result that anywhere in the world

24  that information goes abroad, Mexico, China, Daniel's Law all

25  of a sudden springs up and anyone who touches that information

```
 1   is now liable under the plaintiffs' theory.  That can't be.  So
 2   it's not necessarily a constitutional argument that we're
 3   challenging Daniel's Law because there is an interpretation
 4   that this Court can engage in that is going to have no
 5   constitutional implications.
 6        What we're asking for is that the Court not interpret
 7   Daniel's Law in a way that transgresses those lines, that being
 8   that the information itself is determinative of whether
 9   Daniel's Law applies or that the covered person themselves is
10   determinative of whether Daniel's Law applies.
11        What is determinative from the statutory text is that
12   the person doing the disclosing has to be governed by Daniel's
13   Law, and the only way for them to be within the law is to be
14   within New Jersey or connected to New Jersey in some meaningful
15   way other than touching the home address information because,
16   as I said, that can't be the sole connector.
17        THE COURT:  All right.  Thank you.  We're finished
18   with the arguments and thank you all very much for your
19   persistence and your arguments here in this case.
20        Now we'll talk to the status conference, the 12(b)(2)
21   issues.  So some of you may not be involved in that, so you're
22   excused.
23        MR. STIO:  Thank you, Your Honor.
24        THE COURT:  All right.  Mr. Shaw and Mr. Parikh, I've
25   permitted discovery on the personal jurisdiction issues and I
```

1    know you have gotten answers to interrogatories and some

2    objections and you've also had some outstanding requests for

3    production of documents.

4          Where do you stand on that and what do you think

5    should be the next step?

6          MR. SHAW:  Thank you, Your Honor.  My colleague

7    Mr. Palmer is going to address this issue as well, if you don't

8    mind.

9          THE COURT:  That's fine.

10          MR. PALMER:  Thank you, Your Honor.  So we have had

11    sort of a group meet-and-confer per the defendants' request, my

12    understanding, and the ultimate -- and then some further

13    subsequent meet-and-confers on an individualized basis because

14    they found the kind of group discussion I think kind of too

15    awkward to handle.

16          I think that the overarching problem with what we have

17    gotten thus far is essentially just that they've kind of

18    assumed away the possibility of a Calder Effects Test basis for

19    personal jurisdiction here.  And you know, there the test sort

20    of works by saying, okay, question, did the defendant commit an

21    intentional tort directed at New Jersey and expressly aim their

22    tortious conduct at New Jersey?

23          And I think our position, which we tried to make clear

24    in those discussions, is essentially that here the disclosures

25    at issue are inherently forum specific, which the Third Circuit

1    said *Hasson* would be a great indicator that online activity is

2    in fact directed at a forum.  And I can give you the cite, if

3    necessary, but it's cited in their briefing.

4            THE COURT:  Right.

5            MR. PALMER:  And on top of that, the question also

6    raised by *Hasson* is whether they have knowledge that their

7    activity is directed at New Jersey.  And here I think there's a

8    lot in the both interrogatories and RFPs that go to the

9    question of whether they had sort of adequate knowledge that

10   subsequent disclosures after receipt of non-disclosure requests

11   would result in the violation of a New Jersey covered person's

12   rights under New Jersey law in New Jersey.

13           And I think when that sort of information is there,

14   it's fairly clear, I think for most of these defendants, that

15   personal jurisdiction has to exist because they're disclosing

16   forum-specific content with knowledge that it will constitute a

17   tort that affects somebody in a particular state.

18           Sort of on the exact same paradigm that applies in

19   most sort of privacy disclosure cases or cases involving

20   defamation or similar.  And I think if we were to kind of go

21   issue by issue through any of those, those are kind of the

22   recurring issues that arise on those.

23           So I think our overall request is basically just that

24   we would want to, you know, have some kind of an order

25   compelling responses that are relevant to their knowledge of

 1  the fact that they have received these requests and are

 2  disclosing in New Jersey.

 3          THE COURT:  Well, I think that we can't do today.  It

 4  seems to me that we have 16 or 17 cases and some of the

 5  defendants have responded more comprehensively than others

 6  on --

 7          MR. PALMER:  Indeed, yes.

 8          THE COURT:  -- you can put it that way, and so we're

 9  going to probably require a motion --

10          MR. PALMER:  We would be glad to put something

11  together on that.

12          THE COURT:  -- as to the deficiencies and then give

13  those defendants an opportunity to respond, and then I'll have

14  to rule.  Obviously, I was hoping that we could resolve all of

15  these informally, but that's obviously not going to be the

16  case.

17          And I haven't ruled -- I've looked at the documents

18  and I don't know whether there are deficiencies there.  So you

19  could combine your motion, not only request for -- to compel

20  answers to interrogatories but also documents.  And then it's

21  probably premature to make any decision about depositions

22  until we deal with this phase.

23          Mr. Shaw, you want to add anything?

24          MR. SHAW:  I was just going to add, Your Honor, we do

25  want to try to get to the depositions and we want to be

1  efficient about it and kind of keep a control date out there,

2  but at the same time, we have to get through this document

3  stuff first.

4          THE COURT:  The question is, when can you file your

5  motion?  How soon can you file your motion, which would have to

6  deal with the deficiencies?  And maybe there are different

7  deficiencies with different defendants, so you would have to be

8  specific; and then we give the defendants an opportunity to

9  respond and then it would -- after that would be the time to

10  consider depositions if you're going to need them.

11          MR. SHAW:  Two weeks, Your Honor.

12          THE COURT:  You want two weeks to file your motion?

13          MR. PALMER:  Yes, that would be totally fine.

14          THE COURT:  All right.  And then we'll give the

15  defendants two weeks to respond to your discovery motion.  And

16  I don't know if there's any other way to do it.  We can't sit

17  here today and go through each interrogatory and each answer

18  with all the defendants.

19          MR. PARIKH:  Your Honor, just two points on that.  So

20  happy to file the motion.

21          Would Your Honor prefer us to file kind of one motion

22  in all the cases and then identify the issues or do you want us

23  to file --

24          THE COURT:  I think you better do it one motion and

25  the general issues, and maybe there's a general deficiency in

*134*

```
 1   all of them, and then point out the specifics.
 2          In other words, if one defendant has completely
 3   complied, which that may not be the case, then you would only
 4   file it against the remaining defendants.
 5          MR. PARIKH:  Yeah.  There are, for example, none of
 6   the defendants -- the defendants have refused to provide a
 7   privilege log, for example.  So there are universal issues that
 8   we will try to address --
 9          THE COURT:  Yes, try to do that.
10          MR. PARIKH:  Okay.
11          THE COURT:  And then each defendant can respond and
12   deal with both interrogatories and the document request.
13          MR. PARIKH:  Okay.
14          THE COURT:  I think that's the only way I think we can
15   deal with that.
16          MR. PARIKH:  That makes sense to us, Judge.
17          THE COURT:  Anybody -- any of the defendants want to
18   comment on that issue?
19          MR. PALMER:  Thank you, Your Honor.
20          MR. VAN NOSTRAND:  This is Aaron Van Nostrand from
21   Greenberg Traurig, I represent GoHunt.  And I think we're fine
22   with the procedure that Your Honor laid out.
23          I would just say for my client -- and I don't speak
24   for any other defendant, just for my client -- we had a very
25   productive meet-and-confer last Wednesday and I didn't hear
```

1  anything about the Calder Effects Test, so this is the first

2  time I'm hearing about that today.

3          So if that's the basis for their arguments about why

4  my client is subject to personal jurisdiction, it should have

5  been raised at the meet-and-confer and not heard for the first

6  time in court or on a motion.

7          THE COURT:  Obviously in the next two weeks if

8  particular defendants can work out the issues with the

9  plaintiffs, then work it out, and then they won't be the

10  subject of the motion.

11          MR. VAN NOSTRAND:  Okay.  We'll continue to try to

12  work on that.

13          THE COURT:  I don't want to say you shouldn't continue

14  to try to work it out, but I just think we need to set some

15  deadlines here.  If everybody works it out, that's great.

16          MR. VAN NOSTRAND:  Yeah.  I filed the motion, I would

17  like the motion to be heard, so I'm happy to move on that

18  schedule and also continue to work in the meantime.

19          THE COURT:  And then once that's resolved, we can deal

20  with a deadline for production, if I order additional

21  production; and then we'll talk about depositions, whether that

22  would be necessary with respect to all of the defendants or

23  maybe just some.  But we'll have to see what they say in their

24  discovery responses.

25          MR. VAN NOSTRAND:  Sure.  And should we set a deadline

 1  today for the defendants to respond to the motion?  They're

 2  going to file in --

 3          THE COURT:  Yes, I said two weeks thereafter.

 4          MR. VAN NOSTRAND:  Two weeks thereafter, okay.

 5          THE COURT:  Yes, for any defendant who wants to

 6  respond, and then we'll see what happens.  All right.  That

 7  takes care of that.  Thank you.

 8          And then the final issue -- anybody else want to say

 9  something?  Come on up.  You may.

10          Yes, sir.

11          MR. RAO:  Good afternoon, Your Honor.  Sudhir Rao of

12  ZwillGen PLLC for Defendant Lighthouse List Company LLC.

13          THE COURT:  Right.

14          MR. RAO:  Your Honor, we think that sort of zooming

15  out, there's a bit of a methodological issue with

16  jurisdictional discovery, and that's the fact that, you know,

17  as my colleague Mr. Van Nostrand said, we've heard of the

18  plaintiffs' theory of personal jurisdiction for the first time

19  in court today.

20          In other words, the scope of appropriate

21  jurisdictional discovery flows directly from plaintiffs' theory

22  of jurisdiction, and we need to know as a threshold matter if

23  that theory of jurisdiction passes legal muster.

24          So we say --

25          THE COURT:  Well, they're going to set that forth in

1    their motion, what their theories are and so forth, and they're

2    going to tie that to the deficiencies in the discovery

3    responses; and then you will have an opportunity in your brief

4    to say that makes no sense, their theory makes no sense, and

5    therefore, you don't have to produce documents or provide

6    answers that go to that subject.

7           So that will all be teed up and in the motion papers,

8    won't it?

9           MR. RAO:  It will be teed up in a matter that's

10   totally divorced from the operative pleading.

11          THE COURT:  Well, then you can say that.

12          MR. RAO:  But the procedure that -- the path that

13   we're already on deviates materially from binding Third Circuit

14   precedent.  I have the *Aldossari* case where the Third Circuit

15   held, "A plaintiff cannot show up in court with bare

16   allegations and force defendants to start handing over

17   evidence," and yet that's exactly what the plaintiffs have

18   done.

19          The solitary boilerplate jurisdictional allegation in

20   the complaint fails to allege any facts supporting the exercise

21   of jurisdiction, but relevant here, essentially relevant here

22   is that it says nothing about the Calder Effects Test.  In

23   fact, it proposes a completely different theory.

24          The allegation is this court has jurisdiction because

25   the parties reside and/or conduct business in New Jersey, which

```
 1   is false as to our client, along with the covered persons, and
 2   the unlawful actions complained of herein occurred in New
 3   Jersey.  That is not a Calder Effects Test theory, that's a
 4   purposeful availment theory.
 5          And the plaintiffs are modifying their complaint,
 6   they're amending their complaint in real-time in court as of
 7   today, which I'm hearing for the first time.  So the correct
 8   procedure at this point is for plaintiffs to submit an
 9   opposition to our personal jurisdiction motion, which we can
10   then reply to, so that this Court can determine if plaintiffs
11   have even stated a valid theory of jurisdiction, even accepting
12   their allegations as true.
13          Because if they haven't, going back to Your Honor's
14   concerns about Rule 1, just, speedy, and inexpensive resolution
15   of cases, it makes very little sense for us to be embarking on
16   roving depositions concerning who knows what sort of theories
17   if the theory itself is fatally deficient.
18          Plaintiffs' theory needs to be tested before we can
19   go --
20          THE COURT:  You're talking about the theory of
21   personal jurisdiction, correct?
22          MR. RAO:  Correct.
23          THE COURT:  Now, the plaintiffs have moved -- you have
24   moved to dismiss?
25          MR. RAO:  Correct.
```

1          THE COURT:  And the plaintiffs now want discovery, and

2   you've given your reasons why these complaints should be

3   dismissed, correct?

4          MR. RAO:  Correct.

5          THE COURT:  And they want discovery related to that,

6   correct?

7          Are you saying that they're not --

8          MR. RAO:  I'm saying that they're not entitled to

9   discovery about a Calder Effects Theory that has not been

10  articulated in the complaint.  They need to articulate what

11  theory of -- how they have pleaded, a prima facie case of

12  jurisdiction, accepting all their allegations as true, they

13  haven't done that.

14         We've had no notice -- I have not had any notice until

15  today as to on what basis they think that our purported

16  contacts with New Jersey give rise to personal jurisdiction.

17  They need to articulate that, defend it, we need to then reply

18  and explain why we think that theory is deficient.  And at that

19  point, if they have stated a viable theory of personal

20  jurisdiction and if there's an incremental fact finding that

21  needs to be done in order to confirm if personal jurisdiction

22  lies over my client, then a narrow circumscribed period of

23  jurisdiction can recommence.

24         In our view, plaintiffs have already been given an

25  overly generous berth for jurisdictional discovery, but it's

1  premature in our view because we don't know if the theories

2  that they're advancing or trying to get discovery on are

3  viable.  In essence, they're using a single allegation as a

4  springboard to search for a theory.  That's not how personal

5  jurisdiction and motions to dismiss and jurisdictional

6  discovery ought to proceed.

7          THE COURT:  All right.  Let me see what Mr. Shaw has

8  to say about that.

9          MR. SHAW:  Thank you, Your Honor.  Adam Shaw for the

10 plaintiffs.

11         We went over this a couple months ago where we were

12 all sitting here, and I believe Mr. Rao was here, and we said

13 how are we going to deal with the motions?  And we all talked

14 about defendants making personal jurisdiction motions, and Your

15 Honor said you were going to allow for discovery requests to be

16 made.

17         In response to those -- I'm not even sure, we might

18 have even done it before we received the things.  That's what

19 we all talked about.  So this idea of undoing that doesn't

20 comport to Rule 1, Your Honor's orders, or the way we've been

21 doing these things.

22         That's the procedure we set up specifically so that we

23 could get the discovery.  We even went over -- counsel stood up

24 and said it should only be five requests for interrogatories,

25 and we went through that, and Your Honor said please be

1  focused.

2          So we followed Your Honor's orders.  You said we were

3  getting discovery, we issued very narrow, focused discovery,

4  and now we're trying to go through that.  We tried to meet and

5  confer with them.

6          If they're now saying to us that they agree the Calder

7  Test is applicable and we get discovery for that, then we won't

8  need to move to compel.  The idea that they're just hearing it

9  for the first time shouldn't undo the process.  We've explained

10 it to them during the meet-and-confer process.  It's the

11 basis -- they even reference it in their motion papers, cases

12 that deal with the Calder Test.

13         So they made the motion for personal jurisdiction,

14 Your Honor ordered there to be discovery to take place, we've

15 issued the discovery, we'd like to be able to go through with

16 it.  If we can obviate it through them agreeing to give it to

17 us, we'll take it.

18             THE COURT:  All right.

19             MR. RAO:  If I may?

20             THE COURT:  Go ahead.

21             MR. RAO:  We, of course, agree that Your Honor ordered

22 jurisdictional discovery, and our client complied with that

23 discovery to the extent even arguably relevant to proportional,

24 but we are where we are in terms of that discovery having been

25 provided.

```
 1              It does not provide a justification to continue down
 2     the path of jurisdictional discovery while --
 3              (Court reporter interruption.)
 4              MR. RAO:  Okay.  Sorry about that.
 5              The fact that we are where we are and that we provided
 6     some discovery responses, responses that as to my client we
 7     feel it conclusively demonstrates the absence of personal
 8     jurisdiction, that doesn't justify or excuse conducting further
 9     jurisdictional discovery as we're trying to find our way in the
10     dark as to what theory plaintiffs are alleging.  It's a moving
11     target.
12              THE COURT:  I understand.  All right.  I'll hear from
13     you.
14              MR. MAROUF:  Omar Marouf from Riker Danzig
15     representing Melissa.
16              And, Your Honor, it seems like the plaintiffs want
17     Rule 1 to apply only one way, which is more less expensive for
18     plaintiffs.  We -- as far as the last status conference, Your
19     Honor ordered interrogatories, and Mr. Parikh said can we also
20     ask for document demands, limited document demands.  And then
21     they went on to serve 24 document demands that were -- most of
22     them strictly go the merits.  And then on top of that, now they
23     want to file motions.  We haven't even had a chance for even a
24     meet-and-confer.
25              We received a generic deficiency letter addressed to
```

```
 1   all defendants addressing no issues, first time --
 2            THE COURT:  All right.  Let's just cut to the heart of
 3   this.  Obviously you should try to talk and work this out.  If
 4   you can't, we have to have a motion and you can raise all these
 5   arguments in your response.
 6            I can't decide this today.  I have a stack of
 7   responses.  You may think they're totally adequate, the other
 8   side doesn't.  You have a dispute, I can't do it here, sitting
 9   here.  You have to do a motion and then response.
10            MR. MAROUF:  I understand, Your Honor, and that's
11   fine.  But to Mr. Rao's point, they're using this process to
12   file more motions and try to get discovery when they haven't
13   even articulated that theory.
14            THE COURT:  Well, if you're right, then I won't permit
15   any more discovery.  Okay?
16            MR. MAROUF:  But it's also more expensive for our
17   clients.
18            THE COURT:  Well, I can't decide it today.  Otherwise,
19   that's the system.  Okay?  You're going to have to -- they're
20   going to file a motion to compel, and you're going to file a
21   response.  And if it's inappropriate, I won't allow any further
22   discovery.
23            That's the way -- I can't do anything else.  I am
24   sorry.  All right.
25            Anyone else wish to speak on this subject?
```

```
 1            All right.  Go ahead, quickly.
 2            MR. PALMER:  One very quick point, Your Honor, since I
 3  can tell you want to be done with this, but I think our
 4  complaint clearly does plead a Calder Effects Test basis for
 5  jurisdiction by the fact of pleading knowing disclosure of New
 6  Jersey information with notice that it will cause injury in New
 7  Jersey.  We don't have to use the words "Calder Effects Test"
 8  in the complaint to plead that.
 9            THE COURT:  Right.
10            MR. PALMER:  And the same reason, their argument that
11  all of this is actually just merits discovery is totally wrong.
12  Calder very much overlaps with merits discovery when you have
13  an intentional tort claim because the tort is the nexus with
14  the forum that creates jurisdiction, and that is all alleged in
15  the complaints.
16            Thank you very much, Your Honor.
17            THE COURT:  All right.  Thank you.
18            All right.  We turn to the next item, which is the --
19  I think there's six cases which have been filed recently, and
20  we keep getting more of these.  And obviously they're not part
21  of the appeal to the court of appeals, and the question is what
22  do we do about these?  Do we just stay them pending the
23  decision of the court of appeals because it may certainly
24  affect a lot that goes on here.
25            MR. PARIKH:  Thank you, Your Honor.  Rajiv Parikh for
```

1    the plaintiffs.

2         THE COURT:  You know, we keep getting more and more of

3    these and we're just going to get behind the eight ball.

4         MR. PARIKH:  So some of these, Your Honor, are just

5    cases where there was service that had to be done overseas and

6    it just took a long time, there are some that are newly filed

7    cases that were recently removed.  We have endeavored across

8    plaintiffs' counsel to speak with every one of those defense

9    counsel.  Some of them are lawyers like Mr. Van Nostrand and

10   Ms. Purcaro, who have other matters here so they understand the

11   procedure matters; there are other lawyers that have no other

12   Atlas cases.  We've spoken to all of them.

13        I think all of them have agreed that they would -- and

14   we would be okay with it, the following process:  One, that

15   they would file a letter, similar to other cases, that they

16   joined in the facial challenge, understanding that Your Honor

17   would adopt your prior decision and deny that motion.  They

18   would then go to the Third Circuit and seek to be added to the

19   appeal.

20        Then second, Your Honor, I think all --

21        THE COURT:  Now, that's not -- the case is going to be

22   argued July 8th.  How can they possibly join in?  Isn't it

23   better just to hold off and for me to then -- they file a

24   motion, I deny it.  It may all be moot.  If the court of

25   appeals upholds what I've done, then they can put it in an

1  answer or something.  Then they could take another appeal to

2  try to take an appeal to the court of appeals, and then they'd

3  ask for certification and I would probably deny it at that

4  point.

5          And to go through all of those steps -- and I would

6  hope the court of appeals would rule fairly soon, in a couple

7  months anyway, and then we'll see where we are.

8          MR. PARIKH:  So we're fine with whatever process

9  works.  What I would say, Your Honor, is what we had discussed

10 with them was kind of they were going to also join in this

11 12(b)(6) motion and then --

12          THE COURT:  I assume they're represented here today?

13          MR. PARIKH:  I believe they are, Your Honor.

14          And then I think the last piece is that what we

15 outlined to them is that to the extent they're going to

16 challenge personal jurisdiction, that we can serve them with

17 requests and just get that discovery moving so that we at least

18 have that moving.

19          So what I would say is if Your Honor is inclined to

20 stay the matters to some extent, that perhaps we could get some

21 of the low-hanging fruit out of the way in terms of personal

22 jurisdiction or other --

23          THE COURT:  Well, personal jurisdiction is certainly

24 not low-hanging fruit.

25          MR. PARIKH:  It may be for some of the defendants,

1    Your Honor.  So I'm happy to do whatever it is that --

2         THE COURT:  I want to hear from defense counsel on

3    this.  I know it's getting late, but it just seems to me that

4    if we start going through the process then and the

5    interrogatories and then I have to rule further -- what is your

6    thought?

7         MR. VAN NOSTRAND:  Your Honor, Aaron Van Nostrand.

8    For this part of the case I represented Brooks Integrated

9    Marketing, one of the new cases that was removed last week, I

10   believe.

11        Again, just like Mr. Parikh said, we're fine with

12   going with whatever procedure Your Honor desires.  We think it

13   would benefit my client and maybe some of the other removed

14   defendants, recently removed defendants, to try to join in to

15   the Third Circuit case right now, understanding that if that

16   effort is denied -- you know, whatever decision by the Third

17   Circuit would, I guess by definition, apply to our cases too.

18        On the other hand, if Your Honor would like to rather

19   stay my case -- I can't speak for everyone else, but stay my

20   case and then rule on -- that way we get the Third Circuit's

21   ruling, we get your ruling on the 12(b)(6) motion, we see how

22   the personal jurisdiction plays out with respect to the other

23   defendants who have filed 12(b)(2) motions, and then at that

24   point see how -- see where the cards fall and then decide what

25   to do with the case --

1           THE COURT:  Yes.  Because what I anticipate that maybe

2      sometime in early August to have further argument on the

3      12(b)(6) motions to which the Attorney General's Office will be

4      responding.  I have the briefing from everyone else.  I try to

5      rule on these issues as quickly as I can, and then -- now,

6      obviously they won't have had been participating, but it's just

7      going to get complicated because I want to move on the cases

8      that I have.  And if I start giving them the opportunity to

9      brief and so forth, then that's all going to be delayed.

10           MR. VAN NOSTRAND:  Right.  And I do anticipate there

11      may be more cases removed as well.

12           THE COURT:  Now, the one thing I'm concerned about is

13      if there's a subject matter jurisdiction issue, that I would

14      probably want to deal with first, obviously.  And there's one

15      case I know that I entered an order requiring the defendants to

16      disclose by affidavit the citizenship of the members of the

17      LLCs.  So that wasn't clear in the complaint.  So with that

18      exception, it just seems to me things are really going to get

19      out of hand if everyone is on a different timetable here.  And

20      it would be for a short period, it's not going to be

21      indefinite.

22           And I think the scene might be a little clearer after

23      the court of appeals rules unless I -- I have no idea how long

24      they'll take.  But in other words, if the constitutional issue

25      is decided, that may save everybody a lot of effort in my

1  denying motions to dismiss on facial challenge.  I mean, if

2  it's right on point.  I mean, obviously it won't be res

3  judicata as to your clients, but it sure as heck would be Third

4  Circuit precedent, which is just about the same thing.

5          MR. VAN NOSTRAND:  Like I said, for my client I have

6  no objection.  I don't know if anyone else wants to speak.

7          THE COURT:  I want to hear from all the -- go ahead.

8          MR. MACDONALD:  Good morning, Your Honor, John

9  MacDonald from Constangy, Brooks, Smith & Prophete.  I have one

10  of the six, in addition to several others here and in state

11  court as well.  My case is the one that you asked for the

12  affidavit on the LLC.

13          THE COURT:  Right.

14          MR. MACDONALD:  But, Judge, my understanding is that

15  since the new matter was not included in the Third Circuit

16  appeal, that we could not join the Third Circuit appeal.  We

17  could file an amicus brief, or something like that perhaps, but

18  we can't join.

19          That being said, more of the content is to have just a

20  general stay put in at this point.

21          THE COURT:  And I'll keep an eye on it.

22          Anyone else?

23          MR. MACDONALD:  Thanks, Judge.

24          MR. MANGAN:  Good afternoon, Your Honor, Kevin Mangan,

25  Womble Bond Dickinson, on behalf of Defendant PublicNSA.  This

```
 1   is one of the new cases.  We spoke about scheduling.  We're

 2   happy to do whatever the Court wants stayed, that portion.  We

 3   do intend to join in on the 12(b)(6), as well as 12(b)(2) on

 4   personal jurisdiction.  So --

 5              THE COURT:  But not filing additional briefs?

 6              MR. MANGAN:  We would file a supplemental on the

 7   12(b)(2) --

 8              THE COURT:  Well, it's getting a little late, you see,

 9   because then they serve interrogatories on you, then you would

10   be answering, and then we have that to deal with.  It just

11   seems to me the orderly process is to let's deal with the ones

12   that we have at the moment and then we'll see where we are.

13              MR. MANGAN:  So, Your Honor, my case would be stayed.

14              THE COURT:  Stayed until further order of the Court

15   and with the understanding of let's see what the court of

16   appeals does.  Because I assume if you had an opportunity,

17   you're going to challenge the constitutionality of the statute

18   also.

19              MR. MANGAN:  So I understand this, everything will be

20   stayed on my case until further --

21              THE COURT:  All right.  Anyone else?

22              MS. PURCARO:  Thank you, Your Honor, Kelly Purcaro.  I

23   have True Software and REDX, are the two new cases that I

24   represent.

25              THE COURT:  Right.
```

1          MS. PURCARO:  I think the stay probably makes the most

2    sense.  We would be seeking, at least in one case, for

3    supplemental briefing on the jurisdictional issues, and I think

4    a stay could avoid some duplicate efforts and things of that

5    nature.  Otherwise, we're going to be playing catchup.  I don't

6    have any other clients that have been in the jurisdictional

7    fight, so we would be starting with a supplemental brief and

8    then discovery and all that.  So I think a stay makes the most

9    sense.

10          THE COURT:  How about subject matter jurisdiction, is

11    there any -- I asked that one -- in one case for an affidavit

12    on subject matter jurisdiction.  How about --

13          MR. PARIKH:  I think all of these have full diversity,

14    so I don't think that would be an issue --

15          THE COURT:  So you're not going to --

16          MR. PARIKH:  Correct.  And if there is one --

17          THE COURT:  If there is one, let me know so I can deal

18    with that separately, subject matter jurisdiction on the ground

19    of lack of diversity.

20          MR. PARIKH:  The only one issue, Your Honor, with

21    respect to one of Ms. Purcaro's clients, they're based in

22    Europe and it took a long time to serve.  But I'll confer with

23    her, but to the extent there's a service issue related to The

24    Hague Convention, then that may be something that we can push

25    along now.  And if there's an issue, then perhaps we could just

1    write a letter to the Court asking for --

2              THE COURT:  Well, yeah.  Has your client been served?

3              MS. PURCARO:  No, but I can accept --

4              THE COURT:  You accepted service?

5              MS. PURCARO:  Yeah.  We emailed about that.

6              THE COURT:  I know The Hague Convention is complicated

7    and very involved and a lot of delays involved with that.

8              MR. PARIKH:  Yes.

9              THE COURT:  Well, thank you all very much.  We hope

10   you all have a good lunch.

11             THE COURTROOM DEPUTY:  All rise.

12             (Matter adjourned at 1:24 p.m.)

13

14             - - - - - - - - - - - - - - - -

15

16             I certify that the foregoing is a correct transcript

17   from the record of proceedings in the above-entitled matter.

18

19   */S/ Sharon Ricci, RMR, CRR*
     *Official Court Reporter*

20

21   *June 16, 2025*
         *Date*

22

23

24

25

*United States District Court*
*District of New Jersey*