# UNITED STATE DISTRICT COURT
## DISTRICT OF NEW JERSEY

ATLAS DATA PRIVACY
CORPORATION, *as assignee of individuals
who are Covered Persons,* et al.,
              Plaintiffs,

       v.

LABELS & LISTS, INC., et al,,

              Defendants.

Civil Action No. 1:24-cv-4174

---

## DEFENDANT'S BRIEF IN OPPOSITION
## TO PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

---

Ryan J. Cooper
Renier Pierantoni
**COOPER, LLC – COUNSELORS AT LAW**
108 N. Union Ave., Suite 4
Cranford, NJ 07016
ryan@cooperllc.com
renier@cooperllc.com
908.514.8830 x101

Misha Isaak (admitted *pro hac vice* )
James Kilcup (admitted *pro hac vice* )
Alexandra Giza (admitted *pro hac vice* )
**STOEL RIVES LLP**
760 SW Ninth Ave. Suite 3000
Portland, OR 97205
Telephone: (503) 224-3380
Email: misha.isaak@stoel.com

*Attorneys for Defendant Labels & Lists, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

I. INTRODUCTION ...................................................................................... 1

II. FACTUAL BACKGROUND ...................................................................... 2

III. LEGAL STANDARD ................................................................................ 3

IV. ARGUMENT ............................................................................................ 4

    A.    L2 Asserts a Facial Challenge of Daniel's Law for Preservation Purposes. ......... 4

    B.    Daniel's Law is Unconstitutional as Applied to L2. ............................................ 4

        1.    L2 Participates in Political Speech, Which Entitles It to Heightened Constitutional Protection. .......................................................... 6

        2.    L2 Has Stated a Claim That Daniel's Law Is Unconstitutional as Applied to L2. .................................................................. 8

        3.    Plaintiffs' Arguments in the Sterling Data Briefing Do Not Apply. ....... 10

    C.    The Court Need Not Order Discovery at This Stage. .......................................... 11

    D.    The Court Should Grant Leave to Amend. ......................................................... 12

V. CONCLUSION ......................................................................................... 12

151525487.4 0079755-00004

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1600 Walnut Corp. v. Cole Haan Co. Store*,
   530 F. Supp. 3d 555 (E.D. Pa. 2021) ........................................................................8

*Ameris Bank v. Lexington Ins. Co.*,
   No. CV413-241, 2016 WL 5496383 (S.D. Ga. Sept. 28, 2016) ................................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................3

*Atlas Data Priv. Corp. v. Sterling Data Co.*,
   1:25-cv-09963-HB, ECF No. 30 (Dec. 19, 2025) ........................................5, 10, 11

*Atlas Data Priv. Corp. v. We Inform, LLC*,
   758 F. Supp. 3d 322 (D.N.J. 2024) .....................................................................4, 10

*Atlas Data Privacy Corp. v. Sterling Data Co. LLC*,
   No. 1:25-cv-09963-HB (D.N.J.) ............................................................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................3

*Benezet Consulting LLC v. Sec'y Commonwealth of Pennsylvania*,
   26 F.4th 580 (3d Cir. 2022) ......................................................................................5

*Brayshaw v. City of Tallahassee, Fla.*,
   709 F. Supp. 2d 1244 (N.D. Fla. 2010)......................................................................7

*Bruni v. City of Pittsburgh*,
   941 F.3d 73 (3d Cir. 2019)......................................................................................10

*Citizens United v. Fed. Election Comm'n*,
   558 U.S. 310 (2010)...............................................................................................6, 8

*CNA v. United States*,
   535 F.3d 132 (3d Cir. 2008)......................................................................................9

*Cnty. of Hudson v. Janiszewski*,
   351 F. App'x 662 (3d Cir. 2009) ..............................................................................8

*Conley v. Dormire*,
   No. 07–4179, 2008 WL 141682 (W.D. Mo. Jan. 11, 2008) ....................................11

151525487.4 0079755-00004

# TABLE OF AUTHORITIES

(continued)

Page(s)

*Eu v. San Francisco Cnty. Democratic Cent. Comm.*,
  489 U.S. 214 (1989)................................................................................................12

*Famous v. Pollard*,
  No. 07-C-847, 2008 WL 444652 (E.D. Wis. Feb.15, 2008)....................................11

*Foglia v. Renal Ventures Mgmt., LLC*,
  754 F.3d 153 (3d Cir. 2014).....................................................................................3

*Free Speech Coal., Inc. v. Att'y Gen. of U.S.*,
  677 F.3d 519 (3d Cir. 2012)....................................................................................10

*Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*,
  721 F.3d 264 (4th Cir. 2013) ...................................................................................11

*Green Party of N.Y. State v. N.Y. State Bd. of Elections*,
  389 F.3d 411 (2d Cir. 2004)......................................................................................1

*McCullen v. Coakley*,
  573 U.S. 464 (2014)................................................................................................10

*Monitor Patriot Co. v. Roy*,
  401 U.S. 265 (1971)..................................................................................................6

*Morse v. Lower Merion Sch. Dist.*,
  132 F.3d 902 (3d Cir. 1997)......................................................................................8

*Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*,
  694 F.3d 340 (3d Cir. 2012)...................................................................................3, 4

*Publius v. Boyer-Vine*,
  237 F. Supp. 3d 997 (E.D. Cal. 2017)....................................................................6, 7

*Republican Party of Pennsylvania v. Cortes*,
  218 F. Supp. 3d 396 (E.D. Pa. 2016) ........................................................................6

*Richmond Med. Ctr. For Women v. Herring*,
  570 F.3d 165 (4th Cir. 2009) ...................................................................................11

*United States v. Marcavage*,
  609 F.3d 264 (3d Cir. 2010).......................................................................................9

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Statutes**

Daniel's Law .................................................................................................................. passim

**Rules**

Fed. R. Civ. P. 8(a)(2) ........................................................................................................8

Fed. R. Civ. P. 12 ............................................................................................................11

Fed. R. Civ. P. 12(b)(6) ...........................................................................................3, 4, 8, 9

Fed. R. Civ. P. 12(c) ..........................................................................................................5

Fed. R. Civ. P. 15(a)(2) ....................................................................................................12

Fed. R. Civ. P. 26 ............................................................................................................11

Fed. R. Civ. P. 26(b)(1) ....................................................................................................11

**Constitutional Provisions**

First Amendment of the U.S. Constitution .......................................................... passim

# I. INTRODUCTION

Labels & Lists ("L2") is a small, family-owned and operated business that has been in existence for over 30 years. Since its origins, L2 has been in the business of voter data. L2 gathers voter data from mainly public sources; compiles, normalizes, and enriches that data; and then licenses its voter data files to clients across the country. Despite its small size, L2's voter data is in high demand. L2's clients include members of Congress who use the L2 voter data for constituent services, political advocacy organizations that use the voter data for targeted advertising, and political campaigns that use L2's data for direct mail advertising, canvassing, and "Get Out The Vote" efforts. L2's clients include the New Jersey Office of the Governor and the New Jersey General Assembly.

L2's business, in short, is deeply intertwined with various political and advocacy activities. This speech receives maximum protection from state regulation under the First Amendment of the U.S. Constitution. *See, e.g.*, *Green Party of N.Y. State v. N.Y. State Bd. of Elections*, 389 F.3d 411, 420 (2d Cir. 2004) (recognizing that voter registration lists are used for "activities essential to the[] exercise of First Amendment rights").

L2 is a defendant in this suit because, as it does with the other 49 states, L2 collects the publicly available New Jersey voter file—which includes voter address and telephone information—and compiles and enriches that data. L2 renders this voter data accessible and usable for its clients. Among the information in the New Jersey voter file was the telephone number and address of certain judges, law enforcement officers, and other public officials ("covered persons") who allegedly—through Plaintiff Atlas Data Privacy Corporation ("Atlas")—requested that their home address or phone number ("covered data") not be disclosed or otherwise made available by L2. Plaintiffs allege—in conclusory manner—that L2 continued

to make their covered data available after the statutorily-provided 10-business-day window for compliance. Plaintiff Atlas has sued to recover a minimum of statutory damages ($1,000 per violation) on behalf of over 19,000 covered persons. For L2, the exposure presented by this lawsuit—at least $19 million, if not far more—constitutes an existential threat.

Faced with massive exposure, and the threat of still more statutory penalties, L2 removed the covered data from its system and stopped licensing that information to customers. As such, L2's constitutionally protected speech has been chilled. Accordingly, L2 has asserted counterclaims against Plaintiffs that Daniel's Law is unconstitutional on its face and as applied to L2. Now Plaintiffs move to dismiss these counterclaims, largely relying on argument from a different case, involving an inapplicable procedural posture. Because Plaintiffs have not shown why L2's counterclaims have failed to state a claim, Plaintiffs' motion to dismiss should be denied.

## II. FACTUAL BACKGROUND[1]

L2 is an industry leader in licensing voter data throughout the United States. L2's business primarily consists of gathering voter data from public sources; compiling, normalizing, and enriching that data; and then licensing its voter data files to clients across the country, including the Office of the New Jersey Governor and the New Jersey General Assembly. *See* Counterclaims ¶¶ 2, 29. L2's clients use the voter data for core political speech, including contacting constituents for campaigning, voter outreach, policy advocacy, fundraising, among other political-related purposes. *Id.* ¶ 29.

Atlas alleges that in late 2023 it sent a flood of 19,000 individual emails to L2's Gmail-

---

[1] L2 has omitted discussion of the background of Daniel's Law, which has been discussed at length in the briefing on Plaintiffs' Motion to Dismiss. *See* ECF No. 83-1, Ex. A at 1-3.

based email system, purportedly on behalf of covered persons who opted to not have their address and phone number disclosed by data brokers under the Act. *Id.* ¶ 30. The emails allegedly sent to L2 contained no information demonstrating persons were covered. *Id.* ¶ 31. After becoming aware of Atlas's allegations and receiving a list of persons who Atlas maintained had sent an optout email to L2, L2 quickly removed from its licensed data files the information of all relevant covered persons. *Id.* ¶ 32. As a result of L2 redacting information of covered persons, L2's customers—including political campaigns, government offices (such as the New Jersey Legislature), and news media organizations—do not have access to this information. Without this data, political campaigns and government offices cannot reach covered persons who requested redaction through Atlas by direct mail, door-knocking, and other traditional modes of voter engagement. *Id.* ¶ 33.

On March 25, 2024, Plaintiffs filed a Complaint, asserting that L2 violated Daniel's Law. L2 answered the Complaint timely on October 3, 2025, asserting that Daniel's Law is unconstitutional on its face and as applied to L2. On December 19, 2025, Plaintiffs moved to dismiss L2's counterclaims under Rule 12(b)(6).

### III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "does not need detailed factual allegations" to state a claim. *Twombly*, 550 U.S. at 555. When resolving a motion to dismiss, a court "must consider only those facts alleged in the complaint." *Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 350 (3d Cir. 2012) (citation omitted). The Court must also "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the

light most favorable to the nonmovant." *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014) (quotation marks and citations omitted). A Rule 12(b)(6) motion should be granted only "when it appears to a certainty that no relief can be granted under any set of facts which could be proved." *TriCenturion, Inc.*, 694 F.3d at 350 (citation omitted).

## IV. ARGUMENT

Plaintiffs argue that both L2's facial challenge and as-applied challenge of Daniel's Law fail to state a claim and should be dismissed. Plaintiffs' Motion to Dismiss, ECF 83 ("Motion") at 1-5. L2 recognizes that this Court has already determined that Daniel's Law is not facially unconstitutional and asserts a facial challenge of Daniel's Law for preservation purposes only. The Court need not revisit those issues today. However, Plaintiffs' arguments as to L2's as-applied challenge should be rejected.

**A.    L2 Asserts a Facial Challenge of Daniel's Law for Preservation Purposes.**

Plaintiffs argue that the Court has already decided that Daniel's Law is constitutional on its face, thus L2's related counterclaim should be dismissed. Motion at 3-4 (citing *Atlas Data Priv. Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322, 332-335 (D.N.J. 2024)). L2 acknowledges that the Court has already rejected arguments that Daniel's Law is facially unconstitutional and does not intend to re-litigate those issues. However, because the Third Circuit and New Jersey Supreme Court are now considering the facial constitutionality of Daniel's Law, L2 has pleaded a facial constitutional challenge of Daniel's Law to preserve its right to assert such counterclaim once those courts have rendered their decisions.

**B.    Daniel's Law is Unconstitutional as Applied to L2.**

Plaintiffs argue that L2's as-applied constitutional challenge should be dismissed for two reasons: (1) L2 does not engage in political speech, and (2) there is no factual record to plead an as-applied constitutional challenge. Motion at 4-5. But each argument fails. First, L2's business

directly facilitates the political advocacy of its clients, thus L2's speech is political and deserves

constitutional protection. And second, because L2 need not produce any evidence to state a claim

for its as-applied challenge, the allegations in the Counterclaims are sufficient to survive a

motion to dismiss.

Plaintiffs also cite to briefing from a different case to argue that the Court has already

resolved L2's as-applied challenge, and regardless, that Daniel's Law satisfies strict scrutiny.

Motion, Ex. A at 8-14.[2] Even if the Court were to consider these arguments, its previous order

never resolved whether Daniel's Law was constitutional as applied to L2, and, moreover, to

dismiss an as-applied challenge at the motion to dismiss stage is not appropriate under these

_____

[2] Plaintiffs largely rely on a brief filed in another case responding to the Sterling Data Defendant's Motion for Judgment on the Pleadings. *See* Motion at 4 (citing *Atlas Data Priv. Corp. v. Sterling Data Co.*, 1:25-cv-09963-HB, ECF No. 30 (Dec. 19, 2025)). However, the arguments in this brief are largely inapplicable for two primary reasons. First, unlike the defendant in *Sterling Data*, L2 has asserted counterclaims and supporting allegations, which must be viewed as true and in the light most favorable to L2, while the *Sterling Data* defendant instead moved for judgment on the pleadings under Rule 12(c). Second, Sterling Data as the moving party had the burden of persuasion in that brief, while here, Plaintiffs are the movant and have the burden of persuasion.

Moreover, as-applied challenges are specific to an individual. *See Benezet Consulting LLC v. Sec'y Commonwealth of Pennsylvania*, 26 F.4th 580, 585 (3d Cir. 2022) ("[A]n 'as applied' challenge is a claim that the operation of a statute is unconstitutional in a particular case[.]" (citation omitted)). Yet, lacking any analysis or authority, Plaintiffs argue that L2 is "similarly situated to the defendant in *Sterling Data*" because "[b]oth defendants are vendors for political organizations." Motion at 4. This perfunctory discussion is insufficient to analogize *Sterling Data* to this "particular case."

For these reasons, many of Plaintiffs' arguments in Exhibit A are wholly inapplicable. It is no surprise that many courts reject outright arguments contained in other filings that are incorporated by reference. *See, e.g.*, *Ameris Bank v. Lexington Ins. Co.*, No. CV413-241, 2016 WL 5496383, at *1 (S.D. Ga. Sept. 28, 2016) ("This Court does not accept piecemeal briefs that incorporate by reference arguments contained in other filings, leaving this Court with the dubious task of having to sift through filings and assemble a party's argument."). Here too, the Court should decline to consider Plaintiffs' half-hearted arguments incorporated from a different case.

151525487.4 0079755-00004

circumstances.

### 1.  L2 Participates in Political Speech, Which Entitles It to Heightened Constitutional Protection.

Laws that burden political speech are subject to strict scrutiny. *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010). Here, L2's business engages in political speech, which is inhibited by Daniel's Law.

To understand the form and context of the speech at issue, it is important to consider L2's clients and how they use L2's data. L2 licenses New Jersey voter information to clients including the Office of the New Jersey Governor and the New Jersey General Assembly. Counterclaims ¶ 29. These clients in turn use L2's voter data for campaigning, voter outreach, policy advocacy, fundraising, among other political-related purposes. *Id.* ¶ 30. Each activity represents core political speech by L2's clients. *See Republican Party of Pennsylvania v. Cortes*, 218 F. Supp. 3d 396, 414–15 (E.D. Pa. 2016) ("Core political speech is interactive communication concerning political change and includes, among other things, speech uttered during a campaign for political office, discussion of public issues and debate on the qualifications of candidates . . . [and] persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues." (citations and internal quotation marks omitted)); *see also Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971) (stating that the First Amendment "has its fullest and most urgent application" to speech uttered during a campaign for political office).

Plaintiffs do not dispute that L2's clients participate in political speech but instead argue that L2 itself does not directly engage in political speech. Motion at 4-5. However, courts commonly find this type of activity itself to be political speech.

In *Publius v. Boyer-Vine*, the plaintiff shared contact information on his blog of California legislature members who had voted in favor of certain gun control measures.

237 F. Supp. 3d 997, 1004 (E.D. Cal. 2017). The court found that sharing contact information of politicians to facilitate political protest was "core political speech" with First Amendment protection "at its zenith." *Id.* at 1014. It was irrelevant to the court's analysis whether the plaintiff himself had directly contacted the politicians. *See id.* Indeed, that *would* be irrelevant since one shares contact information of elected officials only to facilitate others' outreach to them, not to aid in one's own outreach.

Similarly, in *Brayshaw v. City of Tallahassee, Fla.*, the court considered whether a statute punishing an individual for publishing the address and telephone numbers of law enforcement officers was unconstitutional. 709 F. Supp. 2d 1244, 1247 (N.D. Fla. 2010). In determining that publishing the address and telephone number information was protected speech, the Court found that the statute burdened core political speech because the published information could be used to facilitate police accountability. *Id.* at 1249.

Here too, L2 licenses contact information of New Jersey voters to clients for political outreach. Accordingly, as in *Publius and Brayshaw*, the data L2 licenses directly facilitates political speech and warrants First Amendment protection.

Importantly, in Plaintiffs' view of things, it is not clear how individuals whose political speech is burdened by Daniel's Law could ever bring an as-applied challenge to the law. Take the example of a political campaign, which is the most typical L2 customer. The campaign—say, of a mayoral candidate in a New Jersey municipality—is not itself regulated by Daniel's Law. Nonetheless, the campaign cannot target law enforcement families with campaign flyers about public safety because its data vendor, L2, was required by Daniel's Law to scrub its datasets of information about those families. Though Daniel's Law operates to scuttle this core political speech, in Plaintiffs' view, no one can do anything about it because neither the campaign nor the

data provider have grounds for a constitutional challenge. This simply cannot be the law.

Fortunately, it isn't. Just as in precedent cases like *Publius and Brayshaw*, here, L2 as a party that facilitates the political speech of others may bring a First Amendment challenge.

### 2. L2 Has Stated a Claim That Daniel's Law Is Unconstitutional as Applied to L2.

Plaintiffs next argue that L2's as-applied challenge should be dismissed "because there is no factual record from which the Court may assess how the law actually applies to [L2]." Motion at 5. Plaintiffs apparently suggest that L2 cannot rely on the allegations in its own pleadings to support its counterclaims. *See id.* (discounting L2's allegations because they "are not included in the Complaint . . . nor are they subject to judicial notice"). But this argument is inconsistent with basic pleading standards.

Rule 8(a)(2) requires only that a pleading contain "a short and plain statement" to state a claim for relief. If a pleading fails to state a claim, a court may dismiss the claim under Rule 12(b)(6). But courts accept allegations as true and view them in the light most favorable to the pleader. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Further, when "deciding a motion to dismiss under Rule 12(b)(6), claims and counterclaims are treated the same, and therefore, subject to the same standard of review." *1600 Walnut Corp. v. Cole Haan Co. Store*, 530 F. Supp. 3d 555, 558 (E.D. Pa. 2021) (citation omitted). That is, courts accept "all factual allegations in the complaint, ***or in this case, the counterclaim***, as true." *Cnty. of Hudson v. Janiszewski*, 351 F. App'x 662, 667 (3d Cir. 2009) (brackets and citation omitted, emphasis added). Thus, the Court must look to L2's allegations in the Counterclaims, which are presumed true, to resolve Plaintiffs' motion to dismiss.

Because Daniel's Law infringes on L2's political speech, it must satisfy strict scrutiny. *See Citizens United*, 558 U.S. at 340. Strict scrutiny requires that the law  "(1) serve a

compelling governmental interest; (2) be narrowly tailored to achieve that interest; and (3) be the least restrictive means of advancing that interest." *United States v. Marcavage*, 609 F.3d 264, 286 (3d Cir. 2010) (citation omitted). Here, L2 has satisfied federal pleading standards for its as-applied challenge.

As noted previously, L2 licenses New Jersey voter data to its clients for political purposes. After learning that Atlas alleged to have sent a flood of 19,000 emails on behalf of covered persons opting not to have their covered data disclosed, L2 responded by redacting the information of each of these persons to avoid civil penalties. Counterclaims ¶ 18. Thus, L2 can no longer provide this information to its political clients, limiting their ability to engage in political outreach. *Id.* ¶ 33. And because L2's business directly facilitates political speech, the allegations viewed in the light most favorable to L2 show that Daniel's Law burdens L2's constitutional right to engage in political speech.[3]

Further, L2 has adequately alleged that Daniel's Law does not satisfy strict scrutiny. Although the state may have a compelling interest in protecting the safety of law enforcement officers and judges, restricting a subscription-based dataset available only to legitimate political campaigns, government offices, and other L2 customers is not narrowly tailored to that interest. Far from it. To be clear, members of the public do not have access to L2's data and cannot learn the phone numbers or home addresses of covered persons from L2. L2 makes its data available only to its customers, which L2 individually vets and which each pay a substantial subscription fee to license L2's data. Quintessential L2 customers are political campaigns and government

---

[3] To the extent that Plaintiffs are arguing that L2 must present evidence to survive a Rule 12(b)(6) motion, they offer no authority to support this argument. Indeed, courts may not look outside the pleadings to resolve a motion to dismiss. *See CNA v. United States*, 535 F.3d 132, 140 (3d Cir. 2008).

offices—including, for example, the Office of the Governor of New Jersey. These customers' access to L2's data poses no risk to the safety of covered persons and, therefore, the application of the restrictions of Daniel's Law to L2 cannot possibly be regarded as narrowly tailored.

Accordingly, the pleadings state a claim that Daniel's Law is unconstitutional as applied to L2.[4]

### 3. Plaintiffs' Arguments in the *Sterling Data* Briefing Do Not Apply.

Plaintiffs also incorporate arguments raised in response to a motion for judgment on the pleadings filed by a different defendant in a different case. Motion at 4 (citing *Atlas Data Privacy Corp. v. Sterling Data Co. LLC*, No. 1:25-cv-09963-HB (D.N.J.)). Although the Court need not consider these arguments, *see supra* at 5 n.2, regardless, these arguments fail.

First, Exhibit A argues that the Court has already resolved L2's as-applied challenge in its prior order. Motion, Ex. A at 8-11 (citing *Atlas Data Priv. Corp.*, 758 F. Supp. 3d at 334). But the cited brief merely regurgitates the Court's analysis of Daniel's Law under *Florida Star*, which concluded that the law is not facially unconstitutional. *Id.* That opinion expressly contemplated that parties might bring successful as-applied challenges to Daniel's Law, *see Atlas Data Priv. Corp.*, 758 F. Supp. 3d at 337 ("If any of these hypotheticals ever comes to pass, the defendants' remedy is to challenge Daniel's law as unconstitutional as applied."), and certainly did not examine whether Daniel's Law was unconstitutional *as applied to L2*.

Second, Exhibit A argues that Daniel's Law satisfies strict scrutiny. Motion, Ex. A at 11-14. But, typically, as-applied constitutional challenges are not properly evaluated at the motion to

---

[4] Even if the Court were to find that Daniel's Law was subject to intermediate scrutiny, the law would still be unconstitutional as applied to L2 because Daniel's Law does not "leave[] open ample alternative channels for communication of the information." *Bruni v. City of Pittsburgh*, 941 F.3d 73, 88 n.18 (3d Cir. 2019) (quoting *McCullen v. Coakley*, 573 U.S. 464, 477 (2014)).

dismiss stage. *See Free Speech Coal., Inc. v. Att'y Gen. of U.S.*, 677 F.3d 519, 533 (3d Cir. 2012) (vacating dismissal of as-applied challenge claim because the pleader "should be afforded the opportunity to conduct discovery and develop the record regarding whether the Statutes are narrowly tailored."); *see also Richmond Med. Ctr. For Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009) (explaining that as-applied challenges are "based on a developed factual record and the application of a statute to a specific person" and entail "case-by-case analyses"); *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 282 (4th Cir. 2013) ("[T]o properly employ an as-applied analysis, the court was obliged to first afford the [pleader] discovery." (citation omitted)).

In any event, as discussed in the preceding section, Daniel's Law obviously does not satisfy strict scrutiny as applied to L2. Accordingly, Plaintiffs' arguments in the *Sterling Data* briefing should be rejected.

**C.    The Court Need Not Order Discovery at This Stage.**

In the alternative, Plaintiffs argue that the Court should order discovery on L2's as-applied constitutional challenge. Motion at 5. But the standard rules of discovery and this Court's case management orders will govern discovery with respect to L2's counterclaims; it is not clear why the Court would issue any special discovery order in response to a Rule 12 motion. L2 does not dispute the parties' discovery obligations under Rule 26, nor has L2 filed for a protective order. Indeed, both Plaintiffs and L2 are entitled to any nonprivileged discovery that is relevant to pending claims and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). It is simply premature and unwarranted for the Court to order discovery at this juncture in response to a motion about sufficiency of the pleadings. *See Famous v. Pollard*, No. 07-C-847, 2008 WL 444652, at *1 (E.D. Wis. Feb.15, 2008) ("[T]his case has not entered the discovery phase thereby making the plaintiff's motion [to compel discovery] premature."); *Conley v. Dormire*, No. 07–

4179, 2008 WL 141682, at *3 (W.D. Mo. Jan. 11, 2008) ("Plaintiff's discovery requests . . . are also premature and are improperly filed with this court. Discovery is properly conducted after an answer has been filed[.]").

**D.    The Court Should Grant Leave to Amend.**

If the Court concludes that the as-applied counterclaim warrants dismissal, L2 respectfully requests leave to amend the counterclaim. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

## V. CONCLUSION

The Supreme Court has repeatedly said that "the First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office." *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989) (citation omitted). As applied to L2, Daniel's Law restricts and inhibits precisely this category of speech, which the First Amendment values most highly and protects most rigorously. Regardless of whether Daniel's Law may be constitutional on its face, its application to the context of political campaigns cannot be sustained. L2, accordingly, respectfully requests that the Court deny Plaintiffs' motion to dismiss L2's as-applied constitutional challenge.

DATED: January 9, 2026                    Respectfully submitted,

/s/Ryan J. Cooper                          /s/Misha Isaak
Ryan J. Cooper                             Misha Isaak (admitted pro hac vice)
Renier Pierantoni                          misha.isaak@stoel.com
**COOPER, LLC – COUNSELORS AT LAW**        James A. Kilcup (admitted pro hac vice)
108 N. Union Ave., Suite 4                 james.kilcup@stoel.com
Cranford, NJ 07016                         Alexandra Choi Giza (admitted pro hac vice)
ryan@cooperllc.com                         alexandra.giza@stoel.com
renier@cooperllc.com                       **STOEL RIVES LLP**
908.514.8830 x101                          760 SW Ninth Ave. Suite 3000
                                           Portland, OR 97205
*Attorneys for Defendant Labels & Lists,*  Telephone: (503) 224-3380
*Inc.*

151525487.4 0079755-00004

**Certificate of Service**

I hereby certify that on this date I caused a true and complete copy of the foregoing Defendant's Opposition to Plaintiffs' Motion to Dismiss Counterclaims to be electronically filed with the United States District Court for the District of New Jersey, and to be served upon all parties by means of the ECF filing system.

I further certify that the foregoing statement made by me is true. I am aware that if the foregoing statement made by me is willfully false, I am subject to punishment.

DATED: January 9, 2026

_/s/Ryan J. Cooper_
Ryan J. Cooper